IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| State of Ohio, | ) |
|     Plaintiff-Respondent | ) ) ) |
| vs. | ) Case No.: B 925607 ) |
| | ) JUDGE BETH MYERS |
| Michael Bies, | ) ) |
|     Defendant-Petitioner | ) |

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY
DEC 3 0 2003
GREGORY HARTMANN
COMMON PLEAS COURTS

---

**MICHAEL BIES' POST ORAL ARGUMENT MEMORANDUM**

---

During oral argument this Court raised issues regarding the appropriate manner in which to assess Michael's retardation. Although this Court did not request additional briefing, counsel for Michael Bies have conducted additional research to address the Court's concerns. Michael takes this extraordinary measure to submit this memorandum for the Court's consideration because the determination of Michael's mental retardation—and consequently Michael's eligibility for execution—involves a new area of litigation.

## I.   INTRODUCTION

On December 12, 2003, this Court entertained oral argument on Michael Bies' Motion for Summary Judgment. This Court must address two issues when ruling upon this Motion. The first is the effect of the appellate courts' findings on direct appeal that Michael Bies is mentally retarded. The second concerns the impact of the State's subsequent concessions during post-conviction proceedings that Michel is mentally retarded. The issues are ripe for decision because the State now seeks to disavow the findings of the appellate courts that it initially opposed and later embraced.

1



## II. THE RELEVANT POINT IN TIME TO ASSESS MICHAEL'S MENTAL RETARDATION IS THE DATE OF HIS TRIAL.

The Ohio Supreme Court in State v. Lott, 97 Ohio St. 3d 303, 779 N.E.2d 1011 (2002) did not expressly identify the relevant point in time that trial courts should utilize to make their mental retardation determinations. Arguably, three possibilities exist in the present case; 1) the time of trial and the offense, 2) the time of these post-conviction proceedings or 3) the time of execution. At oral argument Michael identified the first time period and the State chose the later time period.

In Atkins v. Virginia, 536 U.S. 304, 308-310, 122 S. Ct. 2242-2246 (2002) the petitioner's case had just completed the state court direct appeal process. The facts involved the petitioner's mental status at the time of trial. Therefore, the procedural posture of the Atkins case supports the conclusion that the time of trial is the relevant point in time to determine a capital defendant's mental retardation and thus his death eligibility.

Further, prior to its decision in Atkins—and in contradistinction to the State's position—the United States Supreme Court held that it would not address issues concerning a defendant's mental status at the time of his execution unless all of his appeals are exhausted, including state post-conviction and federal habeas. Stewart v. Martinez-Villareal, 523 U.S. 637, 644-646, 118 S. Ct. 1618, 1622 (1988).

In Lott, the Ohio Supreme Court designated post-conviction as the remedy death sentenced individuals should pursue who have claims of mental retardation and whose cases have proceeded beyond the trial stage. Lott, 97 Ohio St. 3d at 305, 779 N.E.2d at 1014. A defendant in post-conviction can only raise errors that occurred at the trial level. State v. Murnahan, 63 Ohio St. 3d 60, 65; 584 N.E.2d 1204, 1208 (1992). The Ohio Supreme Court's

choice of the post-conviction remedy supports the conclusion that the Court's mental retardation determination should focus on the time of Michael's trial

In addition, a defendant who challenges his mental status at the time of execution must pursue the procedures outlined in O.R.C. § 2949.28. Although that statute speaks in terms of insanity, the Ohio Supreme Court has interpreted the statute to include claims of mental retardation and schizophrenia that arise at the time of execution. State v. Scott, 92 Ohio St. 3d 1, 2-4, 748 N.E.2d 11, 12-14 (2001). The Ohio Supreme Court's decision in Scott further supports the conclusion that this Court's mental retardation determination should focus on the time of Michael's trial.

Consequently, the State's assertion that the relevant point in time to assess a defendant's mental retardation is at or near the time of execution is without merit. Further, it constitutes yet another abandonment of a prior position by the State. Hamilton County Prosecutor Michael Allen told the Cincinnati Enquirer on May 8, 2003, when discussing Tony Powell's case that the time for the mental retardation assessment is the time of trial; "the Supreme Court ruling [in Atkins] 'could complicate matters,' especially since it may be difficult to determine Powell's mental capacities sixteen years ago" at the time of his trial. [Exhibit A.]

Based on the above analysis, this Court should assess Michael's mental status in 1992 in order to determine Michael's mental retardation. Of most importance to the Court's determination is that three experts were appointed by this Court in 1992, and each of those experts concluded that Michael was then mentally retarded. There is no evidence in the record before this Court that the conclusions of the three experts are not reliable.

III.   **THE <u>LOTT</u> STANDARDS FOR MENTAL RETARDATION WERE IN PLACE AT THE TIME OF MICHAEL'S TRIAL.**

In <u>Lott</u> the Ohio Supreme Court defined the relevant test for the determination of mental retardation: 1) significantly subaverage intellectual functioning, 2) significant limitations in two or more adaptive skills, and 3) onset before the age of eighteen. <u>Lott</u>, 97 Ohio St. 3d at 305; 779 N.E.2d at 1014. The State at the December 12, 2003, hearing argued that because the Ohio Supreme Court did not adopt this test for mental retardation until 2002, the experts appointed by this Court at the time of the 1992 trial could not have applied the correct test.

That argument is incorrect. The Ohio Supreme Court in <u>Lott</u> did not create the three part test out of whole cloth. Instead the Court adopted the definitions promulgated by the American Psychiatric Association and the American Association of Mental Retardation. <u>Lott</u>, 97 Ohio St. 3d at 305, 779 N.E.2d at 1014.

The American Psychiatric Association's definition of mental retardation at the time of Michael's trial was as follows: (1) significantly subaverage general intellectual functioning, accompanied by (2) significant deficits or impairments in adaptive functioning, with (3) onset before the age of 18. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (American Psychiatric Association, Third Edition Revised, 1987), p. 28. The American Association Of Mental Retardation had promulgated the same definition at the time of Michael's trial; 1) significantly subaverage intellectual functioning, 2) limitation in two or more adaptive skill areas, and 3) the onset before the age of eighteen. <u>Mental Retardation</u> (American Association on Mental Retardation, 1992) pp. 5-6. These are the same definitions that the Ohio Supreme Court adopted in <u>Lott</u>.

The State has not offered any proof that any of the three court appointed experts failed to apply the then prevailing (**and still prevailing**) definitions for mental retardation. For the State

4

to prevail, it would have been necessary for all three of the experts to have applied their "own" subjective definitions of mental retardation rather than apply the prevailing standards adopted by the professional psychological community.

### IV. MICHAEL'S IQ SCORE DURING THE POST-CONVICTION PROCEEDING IS NOT INCONSISTENT WITH A FINDING OF MENTAL RETARDATION.

During the state post-conviction proceedings Dr. Kristen Haskins administered the WAIS-R to Michael who scored a 73. The Court at oral argument raised the issue that this was above the cutoff score of 70 which the Ohio Supreme Court has identified for purposes of the rebuttable presumption of mental retardation.

At oral argument counsel for Michael correctly informed this Court that there is a margin of error of five points in IQ testing. In addition, this Court, during the post-conviction proceedings, cited to Michael's lower IQ score at the time of trial, as opposed to the post-conviction score [Exhibit B.]

### V. THE FINDINGS OF MENTAL RETARDATION MADE BY THIS COURT, THE HAMILTON COUNTY COURT OF APPEALS AND THE OHIO SUPREME COURT PRECLUDE RELITIGATION OF MICHAEL'S MENTAL RETARDATION.

At the December 12, 2003, oral argument the State repeatedly asserted that it had never previously contested Michael's mental retardation because it had no incentive to do so. Consequently, the State contends that this Court is not bound by the prior multiple judicial findings as to Michael's mental retardation. The State's statements are incorrect, both as to the relevant law and the facts.

The State's legal argument is flawed. The State was not required to actually litigate Michael's mental retardation in previous legal proceedings for it now be bound by the doctrine of collateral estoppel. The State has not and cannot offer any authority to support its assertion

that it is not so bound. Further, this Court can and should apply the doctrine of the law of the case in assessing the State's argument. The test for that doctrine is whether a party on appeal **could** have fully litigated an issue, not whether the party actually litigated the issue. State ex rel. Dannaher v. Crawford, 78 Ohio St. 3d 391, 394; 678 N.E.2d 549 (1997); Hubbard ex rel. Creed v. Sauline, 74 Ohio St. 3d 402, 404-405; 659 N.E.2d 781, 784 (1967).

The State's assertions aside, there was a strong incentive for the State to actively contest Michael's mental retardation. Prior to Atkins, the Ohio Supreme Court had repeatedly recognized that mental retardation or below average intelligence is a mitigating factor worthy of weight and effect. State v. Rojas, 64 Ohio St. 3d 131, 143 (592 N.E.2d 1376, 1387 (1992); State v. Hill, 64 Ohio St. 3d 313, 335; 595 N.E.2d 884 (1992); State v. Green, 66 Ohio St. 3d 141, 153; 609 N.E.2d 1253, 1263 (1993); State v. Gumm, 73 Ohio St. 3d 413, 432; 653 N.E.2d 253, 270 (1995); State v. Bies, 74 Ohio St. 3d 320, 328; 658 N.E.2d 754, 761 (1996).

The State had a right to rebut any mitigating factors raised by the defendant. State v. Depew, 38 Ohio St. 3d 275, 286; 528 N.E.2d 542, 554 (1988); State v. Jalowiec, 91 Ohio St. 3d 220, 232; 744 N.E.2d 163, 177 (2001). This would have included the mitigating fact of mental retardation. While prior to Atkins the State did not need to necessarily rebut a claim of mental retardation to obtain a sentence of death, it certainly had an incentive to do so in order to prevail on the issue that the aggravating circumstances outweighed the mitigating factors by proof beyond a reasonable doubt. The fact of the matter, however, is that the State chose not to contest the issue of Michael's mental retardation. The State's reason for failing to do so is not relevant.

The State also incorrectly claimed at the oral argument that the State had never previously contested Michael's mental retardation. In the Hamilton County Court of Appeals, the State made the following argument in its merit brief:

6

> The evidence for all of these conclusions is found in the testimony of psychologist Donna Winter, who testified on behalf of the defendant at mitigation. However, the weight to be given this testimony is tempered by the actual facts presented at trial. Thus, though the defense team argued that Bies had the mind of a third grader, and thus should not be held accountable, the record is somewhat contrary.
> 
> The record shows that this defendant was married and divorced and had children. He went to the tenth grade in school. He could drive a car. He traveled about the Midwest [Hazard, Cincinnati, Chicago, Indiana, Lexington] and functioned well enough to do this on his own. The defendant was able to write out a statement and read it to the jury. The mental status exams revealed that he knew right from wrong and could conform his conduct to meet the law if he so desired. [T.p. 1138-1140]. Thus, the weight given to the testimony of Dr. Winter must be tempered with the actual knowledge of the defendant's actions.

[Exhibit C.]

The State made the same argument in the Ohio Supreme Court [Exhibit D]. The State on direct appeal made a genuine effort to contest Michael's claim of limited intellectual ability. The State's efforts were limited by the findings of all three court appointed experts that Michael was mentally retarded.

Now that the State is actively opposing the conclusion that Michael is mentally retarded, the State asserts the following argument:

> Bies was married at the age of 18 and the couple lived together for approximately 3 years [see Petitioner's Mental Retardation Petition Pursuant to Atkins v. Virginia, State v. Lott, and Ohio Revised Code section 2953.21, Exhibit 9]. He has two children by his wife and a third child by another woman. Bies has held several jobs. He has worked as a private security guard, an undercover security person at a night club, and he has done construction work [see Petitioner's Mental Retardation Petition Pursuant to Atkins v. Virginia, State v. Lott, and Ohio revised Code section 2953.21, Exhibit 2,3, and 9]. In Donna Winter's 1992 court report, she states that "[the defendant] goes about the community, unassisted. He carries out the activities of daily life fairly independently."
> 
> Bies is capable of personal activities of daily living such as eating, dressing, mobility and toileting. He is also capable of instrumental activities of daily living such as preparing meals, using the telephone, using transportation and doing housekeeping activities. In addition, he has been in relationships and even married once. He has fathered children. He has also held down several jobs. He is clearly able to take care of himself and has the skills necessary to function in

society. Bies does not suffer from any limitations regarding his adaptive behavior skills.

[State's Memorandum In Opposition to defendant's Motion for Summary Judgment, p. 4.]

This is very similar to the argument that the State made in the Hamilton County Court of Appeals and Ohio Supreme Court on direct appeal. [Exhibit B.] The similarities in the two arguments support the conclusion that the State did in fact contest Michael's mental retardation on direct appeal.

## VI. THE STATE SUBSEQUENTLY IN POST-CONVICTION EMBRACED MICHAEL'S MENTAL RETARDATION.

The prosecutor at oral argument before this Court did not even attempt to "explain away" the state's concessions of Michael's mental retardation throughout the post-conviction process. The prosecutor in post-conviction proceedings conceded Michael was mentally retarded in this Court, the Court of Appeals and the Ohio Supreme Court. It is one thing to say "we litigated and lost". It is a much different issue to say "we did not litigate and instead capitulated." In fact, in this Court the prosecutor embraced the Ohio Supreme Court finding of mental retardation drafting the following finding and conclusion which this Court adopted:

> (1) The defendant is **shown by the record to be mildly mentally retarded with an IQ of about 69**. (Emphasis added.)

The Court makes the following Conclusion of Law:

> (1) **As a matter of law, a mildly mentally retarded defendant may be punished by execution.** State v. Holloway, 38 Ohio St. 3d 239 (1988). (Emphasis added.)

[Exhibit B.]

As a result of these repeated concessions, the Hamilton County Prosecutor's Office is now judicially estopped from asserting that Michael is not mentally retarded. New Hampshire v. Main, 532 U.S. 742, 749-759; 121 S. Ct. 1808, 1814-15 (2001); Reynolds v. Commission of

8

Internal Revenue Service, 861 F.2d 469, 472 (6th Cir. 1998) (citations omitted); Fish v. Lake City Board of Commissioners, 13 Ohio St. 2d 99, 102; 234 N.E.2d 590, 592 (1968); Scioto Memorial Hosp. Assoc. v. Price Waterhouse, 74 Ohio St. 3d 474, 481-482; 659 N.E.2d 1268 (1995) (Douglas concurring in part and dissenting in part).

Likewise any change in the prosecutor's position as to Michael's mental retardation, if adopted by this Court, will result in a due process violation. Smith v. Groose, 205 F.3d 1045, 1050-1052 (8th Cir. 2000); Thompson v. Calderon, 120 F.3d 1045 (9th Cir. 1997) (vacated on other grounds), 523 U.S. 538, 118 S. Ct. 1489 (1998); Drake v. Kemp, 762 F.2d 1449, 1479 (11th Cir. 1985) (en banc) (Clark concurring).

Accordingly, this Court should hold that the State can no longer contest Michael's mental retardation.

VII. **THE STATEMENTS OF MICHAEL TO THE INVESTIGATING OFFICERS AND THE NEWS REPORTER DO NOT UNDERMINE THE REPEATED FINDINGS THE COURT APPOINTED EXPERTS, THE COURTS AND CONCESSIONS OF THE HAMILTON COUNTY PROSECUTOR'S OFFICE THAT MICHAEL IS MENTALLY RETARDED.**

On December 1, 2003, the State filed the following documents for the Court's consideration: 1) Transcript of the investigating officers' first interrogation of Michael on July 28, 1992, at 6:48 p.m.; 2) Transcript of the investigating officer's second interrogation of Michael on July 28, 1992, at 8:55 p.m.; 3) Taped interview of Michael on July 29, 1992, made during a videotaped walk through the scene; 4) Taped interview of a telephone call between reporter Deborah Dixon and Michael; and 5) Michael's web page at ohiodeathrow.com web site. The State at oral argument asserted that these records demonstrate that Michael is not mentally retarded.

Prior to Michael's capital trial the State submitted to the Hamilton County Court Clinic the transcript of both of Michael's July 28, 1992, statements to the police, the videotape of the walk through the crime scene, and seventeen other pages of the police files. [Exhibit E.] Thus almost all of the evidence that the State now wants this Court to consider as evidence that Michael is not retarded was already presented to, and considered by, Dr. Winters when she determined that Michael was mentally retarded 1992.

## VIII.  CONCLUSION

Michael has demonstrated that he is entitled to summary judgment pursuant to Ohio Civ.R. 56. This Court should make the requisite findings pursuant to 1) double jeopardy/collateral estoppel; 2) law of the case; 3) judicial estoppel and 4) the Due Process Clauses of the Fifth and Fourteenth Amendments .

Respectfully submitted,

_____
S. SCOTT HAYNES  0059586
Hallowes, Allen & Haynes
6445 East Livingston Avenue
Reynoldsburg, Ohio 43068
Telephone: (64) 868-0009
Facsimile: (614) 868-0029

And

DAVID H. BODIKER - 0016590
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

8 East Long Street, 11th Floor
Columbus, Ohio 43215-2998
Telephone: (614) 466-5394
Facsimile: (614) 728-3670

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **MICHAEL BIES' POST ORAL ARGUMENT MEMORANDUM** was sent by regular U.S. Mail to Mark E. Peipmeier, Assistant Hamilton County Prosecuting attorney, Hamilton County Prosecutor's Office, 230 E. 9th Street, Suite 4000, Cincinnati, Ohio 45202, on this 29st day of December, 2003.

_____
RANDALL L. PORTER - 0005835
Assistant State Public Defender
COUNSEL FOR DEFENDANT

#190985