"CRIME - STOPPERS"

DATE _5-18-9?_  TIME _1765_  CODE NUMBER _96X294_

* INFORMANTS NAME _McW_
* INFORMANTS ADDRESS _____
  INFORMANTS PHONE _____
  OFFICER RECEIVING CALL _T. OTTEN_
  INFORMATION RECEIVED _caller stated to check out_
  _the step brother of across Farm__

(*) indicates voluntary information - need not be given

001016


EXHIBIT 1



EXHIBIT 2

## INVESTIGATIVE SUMMARY

COMPLAINANT    AARON RAINES            OFFENSE    HOMICIDE

OFFENSE NUMBER _____ INVESTIGATORS    ARGO/LACKEY/SGT. JAY

===========================================================

SPEC. D. ARGO, P.O. D. LACKEY, SGT. J. JAY   6/3/92   1600 HOURS

This is Dan Argo, Darlene Lackey and Sgt. Jay. It's the 3rd, June the 3rd, it's 1605 hours. This is in reference to the Aaron Raines Homicide. Today we had Aaron's brother Dallas Hayes come in for a polygraph test. The test was administered this morning by Royce Winters. He proved to be, there's no doubt in Royce's mind that he was lying on all questions that had to do with Aaron's death. The test showed that he was untruthful. Royce tried to talk to him for awhile, he became very hostile going back, he would be hostile for awhile and then he's calm down then he'd be real hostile again. Darlene and I brought him up stairs. We talked to him for approximately four hours. He stuck by his story that he wasn't lying. Basically the only thing that he told us different was that on the day that Aaron disappeared that he wasn't watching him as close as he had told us originally. He stated basically between five o'clock, 1700 and 1900 hours on the 11th he didn't know where he was and that he came back home at about seven for dinner, left shortly after that and he didn't see him again until 2100 hours. But then he stuck to his story that he saw him across the street at the park. Then that he was listening at the --- commercial in the movie and then at about approximately 2130 hours he started to go out to look for him. We tried everything that we could think of but he

000417

Page 1

stuck by his story. He calmed down quite a bit and then he just went off a couple times on us. At this point we told him that we needed to know basically what he may be hiding. That something causing him to show up that he's not being truthful on this test. He tried to past it off on the business about not watching him but I don't believe that was enough to make him non truthful The other thing is that T.J.'s polygraph is scheduled for tomorrow morning. We got an parental permission signed by his dad and we're gonna pick him up between 10:30 and 11 tomorrow. That's about all we got right now. If by any chance Aaron would call, I'm sorry, by any chance Dallas would call tonight Ray, maybe he thought of something, you could get over there and talk to him. As of right now we had to let him go. He never changed his story. We had Bill Hillard re-check his palm prints and any other prints that were found in the scene or area and nothing was everything was negative. He was very adamant about the fact that he is, even two years ago when we was in the building, that he had never ever been in that basement. So at that point...
Did he stop by that point even when we told him we found his fingerprints down there and we were getting them checked. And we were gonna be able to prove that he was in the building and in that area. And he got real hostile. I think he started crying or cried for awhile. He was very adamant about the fact that his fingerprints couldn't be found in the basement of that apartment building because he'd never been in there. Did you mention the part about Darlene going up and looking at the shoes? No. Okay. We did Darlene took mom back home just to double check because I

000418

Page 2

don't believe that we've ever done it, went up and double checked at the house to make sure that Dallas doesn't have a pair of shoes that match the prints that were found on the body and in the area. So that was done and we really don't have any physical evidence to link Dallas to it. The only thing again like Dan was saying is that he was showing to be untruthful on all of the control questions on the polygraph. So it's gonna have to stand that way for the time being. He seems very adamant in his denial even when we told him we had the physical evidence. He explained the whole ball of wax to him. He's really adamant about that and right now we're just gonna have to let it go and until we can show otherwise if ever. I don't think we have anything else do we Danny? That's all. Okay that'll end it.

TMC
6/17/92

W/B ☑
PSI

HAMILTON COUNTY
COURT OF COMMON PLEAS

ENTERED
JUL 2 6 1995
IMAGE 36

THE STATE OF OHIO
vs.

Dallas Hayes
Defendant

CASE NO. B 9502257

ENTRY WITHDRAWING PLEA OF NOT GUILTY
AND ENTERING PLEA OF GUILTY

I, Dallas Hayes, Defendant in the above cause, hereby freely and voluntarily retract and withdraw my Plea of Not Guilty to the charge(s) in the Indictment entered herein on a former day of this Court and offer a Plea of Guilty to the following with the indicated maximum penalties:

| COUNT | CHARGE(S) & DEGREE | *DEFINITE TERM | INDETERMINATE TERM | | MAXIMUM FINE |
|---|---|---|---|---|---|
| | | | MINIMUM TERM | MAXIMUM TERM | |
| 1 | Gross Sexual Imposition | 1y - 1½ - 2y | | | $5000.00 |
| | | | | | $ |
| | | | | | $ |

I understand the nature of the charge(s) to which I plead Guilty, and whether or not I will be eligible for probation. I have been informed and understand the following: That my Plea of Guilty is a complete admission of my guilt of said charge(s) and a Waiver of any and all constitutional, statutory, and factual defenses to such charge(s) in this case; that upon acceptance of the Plea, the Judge may proceed with judgement and sentence; that I am waiving my constitutional rights to jury trial, to confront witnesses against me, to have compulsory process for obtaining witnesses in my favor and to require the State to prove my guilt beyond a reasonable doubt at a trial at which I cannot be compelled to testify against myself.

Are you a citizen of the United States of America? D.H. Yes ____ No (initial)
If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

I have not been forced or threatened in any way to cause me to sign and offer this Plea. I offer this Plea knowingly, intelligently, and voluntarily. I have consulted with my attorney and have his/her advice and counsel. I am satisfied with the legal representation and advice I have received from my Attorney.

Dallas Hayes
Defendant

I have explained to the Defendant prior to his/her signing this plea, the charge(s) in the information, the penalties therefore and his/her constitutional rights in this case. I represent that, in my opinion, the Defendant is competent to enter his/her Plea, and now does so knowingly, intelligently, and voluntarily.

Violation of Revised Code 2907.05

Attorney for Defendant

Dismiss Counts _____

* If Appli[cable]

EXHIBIT 3

# CPD - Personal Crimes Unit
# Case Information

**PCU CASE NO:** 19950414  **INVESTIGATOR:** MM

Previous PDU Case #:                         Offense #:
How Reported:   DHS/241-KIDS/Child Services    Type of Offense: Felonious Sexual Penetration
Address of Occurrence:   644 NEAVE ST
Beat:                    Neighborhood:
Date Occurred From:  2/18/1995        Time From:
Date Occurred To:                     Time To:
Date Entered:   3/2/1995
Case Notes:
Weapon:                                   Means:
Premise 1:                                Premise 2:
How Closed:                               Date Closed:  3/17/1995

### VICTIM INFORMATION

Name:   SANDRA BAKER
Sex: F      Race:  W           Age:  11              D.O.B.:  12/12/1984
SSN:              Phone Number:  ( ) 251-8053
Address:  644 NEAVE ST

### SUSPECT INFORMATION

Name:   DALLAS HAYES
Alias:                        How Related:
Sex:  M     Race:  W      Age:     22  D.O.B.:     1/7/1973
SSN:                   Phone:
Address:   713 NEAVE ST
Control #:

### INVESTIGATOR'S NOTES

Referrals:
CAC ☐

Tuesday, September 28, 2004

# CONFIDENTIAL



EXHIBIT 4

| PARENTAL INFORMATION - NAME, ADDRESS | SEX, RACE, AGE | SSN — CONTROL # | PHONE |
|---|---|---|---|
| FATHER: | 8/3/61 | | |
| MOTHER: Vivian Stimetz  644 Neave St. #2 (05) | F W 34 | 404 882185 | 251-80_ |
| GUARDIAN: | | | |

| SUSPECT(S) INFORMATION - (INCLUDE EMPLOYMENT OR SCHOOL ATTENDED) | | | |
|---|---|---|---|
| Dallas Hayes - Cousin  ~~(address unknown)~~  713 Neave St. | M W 22  NIF | — | 251-762_ |

PERSON NOTIFIED AT 241-KIDS / HUMAN SERVICES _____ TIME _____
PERSON NOTIFIED AT PERSONAL CRIMES _____ TIME _____
LOCATION OF CHILD(REN):   NOT FOUND ( )   LEFT WHERE FOUND ( )   241-KIDS ( )
TO HOSPITAL _____ REASON _____ BY _____
RELEASED TO _____ RELATIONSHIP _____
ADDRESS _____ PHONE _____ / _____

FORM 506  Rev. 9/92
UNIT

## PERSONAL CRIMES COMPLAINT MEMORANDUM

CITY OF CINCINNATI — DIVISION OF POLICE

| LAST NAME OF VICTIM - FIRST NAME | | SEX, RACE, AGE | UNIT FILE NO. | RES. OF VICTIM (APT. # OR FLR) | (CITY/ST) |
|---|---|---|---|---|---|
| Baker Sandra | 12/12/84 | F W 11 | 95-0414 | 644 Neave St. #2 | (05) |

| REPORTED BY | SEX, RACE, AGE | TITLE OR RELATIONSHIP | ADDRESS OF PERSON REPORTING | PHONE |
|---|---|---|---|---|
| Tom Stevenson | M W - | DHS | | 946-21_ |

| SUSPECTED PHYSICAL ABUSE ( )   NEGLECT ( ) | RELATIONSHIP TO SUSPECT | VICTIM'S PHONE | OTHER PHONE |
|---|---|---|---|
| SUSPECTED SEXUAL ABUSE (X)  OTHER: | Cousin | 251-8053 | |

| ADDRESS OF OCCURRENCE | DIST. | OFFICER FIRST ON SCENE | ARREST Y/N  WARRANT Y/N |
|---|---|---|---|
| 644 Neave St. #2 | | | |

| DATE OF OCCURRENCE | TIME OF DAY | DATE RPT. REC'D | TIME REPT'D | REPORT RECEIVED BY | RANK | BADGE |
|---|---|---|---|---|---|---|
| 2/18/95 | — | 3/1/95 | 1040 | Annette Foster | CT2 | |

VICTIM'S SCHOOL AND GRADE — TYPE OF PREMISES WHERE OCCURRED: house
HOW COMMITTED — INFO REC'D:  BY PHONE (X)  IN PERSON ( )  OTHER:
WEAPON USED OR MEANS OF ATTACK — OFFICER ASSG'D INVEST: LT   PHOTOS Y/N  BY:
INJURIES RECEIVED — SUPERVISOR WHO OK'D REPORT

DETAILS OF COMPLAINT

While on a visit to victim's home, suspect began rubbing on victim, placed his hand down in her pants and inserted his finger into victim's vagina. Victim was seen at Children's Hospital. There was no physical evidence, exam was normal.

301 MADE Y/N    311A MADE Y/N    ADDITIONAL VICTIMS Y/N  (LIST ON 311A)

FUV

Arrest 95CRA7765  3/1/95

Rec'd 3/2

Called Tom Stevenson - Sandra seen @ Children's Hosp. and recanted allegation. She said cousin Michael told her to say this.

Set up ~~tentative~~ interview for 3/6 at ~~4pm~~ 5:30 pm

— Edith Raines another victim will resp. also

CENTRAL PSYCHIATRIC CLINIC
COMMUNITY DIAGNOSTIC AND TREATMENT CENTER

909 Sycamore - Third and Fourth Floors
Cincinnati, Ohio 45202
(513) 651-9300

May 2, 1995

The Honorable Thomas C. Nurre
Hamilton County Court of Common Pleas
Cincinnati, Ohio 45202

COMPETENCY

RE: DALLAS LUTHER HAYES
DOC.#: B95-2257

ATTENTION: THIS REPORT CONTAINS SENSITIVE AND CONFIDENTIAL INFORMATION. PURSUANT WITH OHIO ADMINISTRATIVE CODE 5122-29-07.3(C) [OHIO REVISED CODE 5119.0(G) (I), 5119.61(H)], THIS REPORT MAY NOT BE REVIEWED, RELEASED, DISTRIBUTED, OR COPIED WITHOUT THE REFERRING COURT'S SPECIFIC WRITTEN AUTHORIZATION.

Dear Judge Nurre:

This report is in response to your request for a psychological evaluation of Dallas Luther Hayes in reference to his Competence to Stand Trial, pursuant to Ohio Revised Code 2945.371. He has been charged with Felonious Sexual Penetration. The defendant was evaluated by the undersigned, David Chiappone, Ph.D., Clinical Psychologist, on April 28, 1995 for approximately one hour and ten minutes at the Hamilton County Justice Center (HCJC). This included administration of the Wechsler Adult Intelligence Scale-Revised (WAIS-R) Verbal Subscale. The defendant was also interviewed by Eleanor Maley, LISW, CCDC, Clinical Social Worker, on April 20, 1995 for approximately two hours at the HCJC. The nonconfidential nature of the evaluation was explained to Mr. Hayes prior to the sessions, and he indicated his understanding of such and signed a form to that effect. Collateral contacts were made by Ms. Maley with William Anderson, prosecutor; Derek Gustafson, defense attorney; Lisa Thomas, arresting officer; and Barbara Raines, the defendant's mother. What follows are my findings and recommendations.

In the interview, Mr. Hayes presented as a smallish, stockily built, caucasian male with short hair. He had a scar on his right temporal area, claiming he injured it when he was a child but did not have to get stitches. He spoke very easily and freely. He was fully oriented and could be relevant and coherent. His thoughts were logical, clear, goal-directed and organized. Based on his use

EXHIBIT 5

RE:   DALLAS LUTHER HAYES

of words, verbal abstractions and ability to interact, Mr. Hayes impressed as being of limited intelligence but his testing indicated he was in the borderline range. That is, Mr. Hayes was able to attend and concentrate and communicate as needed in the evaluation. He did not appear to be suffering from any hallucinations, delusions, or other symptoms of a major mood or thought disorder.

   Regarding the question of Competence, Mr. Hayes was able to state what his charge was and knew what the words meant. He generally understands the court scenario. He had some difficulty with pleas, but they were explained to him and he could incorporate the information. Probation was described as, "it's like...let you go home and free as long as you don't get into any more trouble or bring you back and you do the rest of your time." Parole was described as, "like an out date...get out early." The defense attorney's task was described as, "he's a man...I don't know his name...I haven't seen him much...talk to the judge in my behalf...get me out." The prosecutor's role was described as, "trying to put me in." The judge's role was described as, "listen to people and tell what he thinks...decide if you can go home or not. The jury's role was described as, "sit there and listen and say guilty or not guilty." Guilty was described as, "admit to the crime." Not Guilty was described as, "opposite of that...of admitting to it." By this Mr. Hayes was indicating that Not Guilty was the opposite of Guilty. No Contest was described as, "the lady mentioned it and I forgot it...admit to it...and the judge decides." Not Guilty by Reason of Insanity was described as, "sick...head sick...mentally ill...don't know right from wrong." Plea Bargaining was described as, "throw some deal at you and you agree...get charged lower as you can."

   Mr. Hayes does not have any charges as a juvenile or as an adult. He was born in Frankfort, Kentucky and raised in Cincinnati. He was basically raised with two brothers and three sisters, some of whom were step-siblings. His one brother was seriously injured in an automobile accident and was in the hospital for a extended amount of time, during which Mr. Hayes spent time in the hospital with him, and soon after that this brother was murdered. At that point, Mr. Hayes dropped out of school. He dropped out of school because "my family needed me." He reported eleven grades of education and special education. Mr. Hayes reported being raised by mother and step-father. He reported never meeting his biological father until the defendant was eighteen. The defendant indicated he has little use for his biological father. He reported that his mother and step-father also separated when the defendant was about twelve years old. He was visited regularly after the separation by the step-father. Mr. Hayes denied ever being abused as a child.

- 2 -

RE:  DALLAS LUTHER HAYES

He has no military history. Work is sporadic at best, last job being last summer as a lifeguard. He has worked for CCY in the summer. He basically has lived with his mother his entire life. Mr. Hayes has never been married and has no children. He claimed he has had several girlfriends. He reported that he makes friends everywhere he goes.

Mr. Hayes reported generally intact health. After his brother was murdered, the defendant met with a church counselor for several years and "she taught me how to deal with my emotions." He has had no other psychiatric treatment and has never received psychiatric medication. He admitted that in the past he used to drink alcohol, especially after his brother's death with his last alcoholic consumption about a year and a half ago. In the past he has tried marijuana, but never used it regularly with the last usage being about a year and a half ago. He denied using any other substances.

Collateral contact with Barbara Rains, the defendant's mother, reveals that she had her son evaluated at age eleven and he was not considered mentally retarded. She described him as being slow and in special education, but no one had ever told her that he was retarded. She added that he was turned down for Supplemental Security Income. Ms. Rains is not aware if the defendant uses alcohol or drugs.

Administration of the Wechsler Adult Intelligence Scale-Revised (WAIS-R) Verbal Subscales resulted in a Verbal Intelligence of 75 which places him in the borderline range of intelligence, at approximately the fifth percentile of the general population. Mr. Hayes is not retarded although he is limited in intellect. He is capable of understanding his and others actions. He has a slightly below average memory and could remember five digits forward and four digits backward. There was some noticeable scatter in the subtests, suggesting that if he would have been a bit more diligent in academics his IQ may have been a bit higher. Nonetheless, he is capable of understanding what others say to him, albeit at times in a concrete and simplistic fashion.

Summary and Conclusions

Dallas Luther Hayes is a twenty-two year old, single, Caucasian male of borderline intellect who has obtained eleven grades of special education. He has never emancipated from home and work history has been sporadic. He has never married and has no children. He has had some counseling in the aftermath of his brother being murdered. Substance use does not appear to be an issue currently.

RE: DALLAS LUTHER HAYES

Regarding the question of Competence, Mr. Hayes understands what his current charge is and can appreciate further incarceration if convicted. He can describe his acts relevant to the allegations. He understands the nature and objectives of the proceedings against him. He is capable of counseling with an attorney for his own defense. However, it should be kept in mind that Mr. Hayes is of borderline intellect and at times information may have to be explained to him in a simplistic, basic fashion. In my opinion Mr. Hayes is COMPETENT to stand trial.

Thank you for this referral to the Community Diagnostic and Treatment Center. If I may be of further assistance, please feel free to contact me at 352-1342.

Respectfully submitted,

*David Chiappone* /vle

David Chiappone, Ph.D.
Clinical Psychologist

DC/vle
4/28/95

- 4 -

CENTRAL PSYCHIATRIC CLINIC
COMMUNITY DIAGNOSTIC AND TREATMENT CENTER

909 Sycamore - Third and Fourth Floors
Cincinnati, Ohio  45202
(513) 651-9300

May 2, 1995

The Honorable Thomas C. Nurre
Hamilton County Court of Common Pleas
Cincinnati, Ohio  45202

        N.G.R.I.

        RE: DALLAS LUTHER HAYES
        DOC.#: B95-2257

ATTENTION: THIS REPORT CONTAINS SENSITIVE AND CONFIDENTIAL INFORMATION. PURSUANT WITH OHIO ADMINISTRATIVE CODE 5122-29-07.3(C) [OHIO REVISED CODE 5119.0(G) (I), 5119.61(M)], THIS REPORT MAY NOT BE REVIEWED, RELEASED, DISTRIBUTED, OR COPIED WITHOUT THE REFERRING COURT'S SPECIFIC WRITTEN AUTHORIZATION.

Dear Judge Nurre:

  This report is in response to your request for a psychological evaluation of Dallas Luther Hayes in reference to his mental state at the time of an alleged incident, pursuant to Ohio Revised Code 2945.39 and as defined in Ohio Revised Code 2901.01 (N). He has been charged with Felonious Sexual Penetration. The defendant was evaluated by the undersigned, David Chiappone, Ph.D., Clinical Psychologist, on April 28, 1995 for approximately one hour and ten minutes at the Hamilton County Justice Center (HCJC). This included administration of the Wechsler Adult Intelligence Scale-Revised (WAIS-R) Verbal Subscale. The defendant was also interviewed by Eleanor Maley, LISW, CCDC, Clinical Social Worker, on April 20, 1995 for approximately two hours at the HCJC. The nonconfidential nature of the evaluation was explained to Mr. Hayes prior to the sessions, and he indicated his understanding of such and signed a form to that effect. Collateral contacts were made by Ms. Maley with William Anderson, prosecutor; Derek Gustafson, defense attorney; Lisa Thomas, arresting officer; and Barbara Raines, the defendant's mother. What follows are my findings and recommendations.

  In the interview, Mr. Hayes presented as a smallish, stockily built, Caucasian male with short hair. He had a scar on his right temporal area, claiming he injured it when he was a child but did not have to get stitches. He spoke very easily and freely. He was fully oriented and could be relevant and coherent. His thoughts

EXHIBIT 6

RE: DALLAS LUTHER HAYES

were logical, clear, goal-directed and organized. Based on his use of words, verbal abstractions and ability to interact, Mr. Hayes impressed as being of limited intelligence but his testing indicated he was in the borderline range. That is, Mr. Hayes was able to attend and concentrate and communicate as needed in the evaluation. He did not appear to be suffering from any hallucinations, delusions, or other symptoms of a major mood or thought disorder.

Regarding the current charge, Mr. Hayes detailed the following account. Initially, Mr. Hayes quickly stated, "I never had sex with somebody." When asked more specifics about his acts relevant to the allegations he indicated that approximately a month and a half ago, he was with his three cousins, including the victim Sandra who is approximately eight or nine years old. The three cousins stayed over his mother's house where he lives. Mr. Hayes reported "I touched Sandra's private parts." He claimed that he and the victim were alone in the home in his room watching TV and drinking hot chocolate. They were watching a movie. Mr. Hayes denied any use of force or threat. He denied that he told the victim not to tell anyone. He denied that he was taking any medication at the time. He denied that any was prescribed. He denied use of any drug or alcohol. He denied that any psychotic symptomatology such as hallucinations or delusions were operative at the time or involved with his actions. When asked to explain why he engaged in the act, he simply stated, "don't know." He adamantly denied that he penetrated the victim, saying that he just touched her.

Mr. Hayes does not have any charges as a juvenile or as an adult. He was born in Frankfort, Kentucky and raised in Cincinnati. He was basically raised with two brothers and three sisters, some of whom were step-siblings. His one brother was seriously injured in an automobile accident and was in the hospital for an extended amount of time, during which Mr. Hayes spent time in the hospital with him, and soon after that this brother was murdered. At that point, Mr. Hayes dropped out of school. He dropped out of school because "my family needed me." He reported eleven grades of education and special education. Mr. Hayes reported being raised by mother and step-father. He reported never meeting his biological father until the defendant was eighteen. The defendant indicated he has little use for his biological father. He reported that his mother and step-father also separated when the defendant was about twelve years old. He was visited regularly after the separation by step-father. Mr. Hayes denied ever being abused as a child.

He has no military history. Work is sporadic at best, last job being last summer as a lifeguard. He has worked for CCY in the

- 2 -

RE: DALLAS LUTHER HAYES

summer. He basically has lived with his mother his entire life. Mr. Hayes has never been married and has no children. He claimed he has had several girlfriends. He reported that he makes friends everywhere he goes.

Mr. Hayes reported generally intact health. After his brother was murdered, the defendant met with a church counselor for several years and "she taught me how to deal with my emotions." He has had no other psychiatric treatment and has never received psychiatric medication. He admitted that in the past he used to drink alcohol, especially after his brother's death with his last alcohol consumption about a year and a half ago. In the past he has tried marijuana, but never used it regularly with the last usage being about a year and a half ago. He denied using any other substances.

Collateral contact with Barbara Rains, the defendant's mother, reveals that she had her son evaluated at age eleven and he was not considered mentally retarded. She described him as being slow and in special education, but no one had ever told her that he was retarded. She added that he was turned down for Supplemental Security Income. Ms. Rains is not aware if the defendant uses alcohol or drugs.

Administration of the Wechsler Adult Intelligence Scale-Revised (WAIS-R) Verbal Subscales resulted in a Verbal Intelligence of 75 which places him in the borderline range of intelligence, at approximately the fifth percentile of the general population. Mr. Hayes is not retarded although he is limited in intellect. He is capable of understanding his and others actions. He has a slightly below average memory and could remember five digits forward and four digits backward. There was some noticeable scatter in the subtests, suggesting that if he would have been a bit more diligent in academics his IQ may have been a bit higher. Nonetheless, he is capable of understanding what others say to him, albeit at times in a concrete and simplistic fashion.

Collateral contact with Lisa Thomas, arresting officer of the Cincinnati Personal Crime Unit, revealed that the defendant and the victim were at the defendant's home where the alleged charge occurred. Ms. Thomas indicated that she noted that the defendant seemed "slow," but she had the defendant read the rights statement and he initialed every line indicating he understood. There was no indication or report of alcohol or drug usage at the time of police questioning.

RE: DALLAS LUTHER HAYES

Summary and Conclusions

Dallas Luther Hayes is a twenty-two year old, single, Caucasian male of borderline intellect who has obtained eleven grades of special education. He has never emancipated from home and work history has been sporadic. He has never married and has no children. He has had some counseling in the aftermath of his brother being murdered. Substance use does not appear to be an issue currently.

In conclusion, it is this examiner's opinion that at the time of the alleged offense Mr. Dallas Hayes did not suffer from a severe mental disease of the mind, but has a severe mental defect. That defect is borderline intellectual ability. However, this intellectual ability does not preclude his ability to assess the situation realistically and is capable of knowing the wrongfulness of his acts. Therefore, it is this examiner's opinion that Mr. Hayes does not meet the insanity criteria.

Thank you for this referral to the Community Diagnostic and Treatment Center. If I may be of further assistance, please feel free to contact me at 352-1342.

Respectfully submitted,

David Chiappone, Ph.D.
Clinical Psychologist

DC/vle
4/28/95

- 4 -