IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| State of Ohio, | ) |
|     Plaintiff-Respondent | ) ) ) |
| vs. | ) Case No.: B 925607 ) ) |
| Michael Bies, | ) ) |
|     Defendant-Petitioner | ) |

### MICHAEL BIES' MOTION FOR SUMMARY JUDGMENT AS TO THE THIRD CAUSE OF ACTION

Now comes Michael Bies, pursuant to Rule 56 of the Ohio Rules of Civil Procedure and O.R.C. § 2953.21(D), and moves this Court for an order that Michael Bies is mentally retarded and therefore cannot be executed. The reasons for this Motion are more fully set forth in the attached Memorandum of Law.

Respectfully submitted,

S. SCOTT HAYNES - 0059586
Hallowes, Allen & Haynes
1616 Brice Road
Reynoldsburg, Ohio 43068
Telephone: (64) 868-0009
Facsimile: (614) 868-0029

And

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Office of the Ohio Public Defender

FILED 2003 AUG 15 P 5:08
CLERK OF COURTS
CRIMINAL TRAFFIC DIV
HAMILTON COUNTY OHIO
CRIMINAL

EXHIBIT B

8 East Long Street, 11th Floor<br>
Columbus, Ohio 43215-2998<br>
Telephone: (614) 466-5394<br>
Facsimile: (614) 728-3670<br>
COUNSEL FOR PETITIONER

## MEMORANDUM OF LAW

### I. INTRODUCTION

This matter comes on before this Court after having completed three trips through the entire Ohio Court system (trial court, Hamilton County Court of Appeals and the Ohio Supreme Court). During the initial trip the appellate courts found Michael Bies to be mentally retarded. State v. Bies, No. C-920841, 1994 Ohio App. LEXIS 304 (Ham. App. March 30, 1994); [Motion Exhibit 1]; State v. Bies, 74 Ohio St. 3d 320, 327 (1996). During the post-conviction process, this Court also determined that Michael Bies is mentally retarded [Motion Exhibit 2]. The Hamilton County Prosecutor's Office has at least three times conceded in writing that Michael Bies is mentally retarded [Motion Exhibits 3, 4, 5].

The reason for all of these judicial findings and prosecutor's concessions is simple. The record as it exists before the Court permits but one conclusion: that Michael Bies is mentally retarded. For the reasons set forth herein the Court should reach the same conclusions all the courts did before it and determine that Michael Bies is mentally retarded and entitled to relief from his sentence of death.

### II. THE UNCONTROVERTED FACTS BEFORE THIS COURT

Michael Bies was born to Linda Bies and Michael Johnson. Linda almost miscarried with Michael at four and six months. At seven months Michael's father struck Linda in the stomach. At birth Michael was black from a lack of oxygen. [Motion Exhibit 6].

Michael was developmentally delayed. He did not learn to sit up until the age of one, he did not walk with proficiency at the age of two [Tr. 1096/97] and he was still not toilet trained at the age of three. [Tr. 1096.]

Michael was a very sickly child. At the age of two months he was hospitalized for pneumonia and dehydration [Tr. 1097]. At the age of one year he was again hospitalized for pneumonia [Tr. 1097]. When he was two he was back in the hospital for encephalitis or inflammation of the brain [Tr. 1097]. At the age of three he had a laceration on the head which his mother said that he received from falling off a dresser [Tr. 1097]. When he was five he was hospitalized for the measles. At the same age he burned himself on the stove or radiator but could not feel the pain. Still later that year he was placed in a psychiatric hospital for a suicide attempt [Tr. 1098]. At one point in his childhood he was struck by a bus.

Throughout his childhood Michael was confined and treated in psychiatric hospitals. [Defendant's Mitigation Exhibit 3, p 3] The school officials diagnosed Michael as suffering from learning disorders and they arranged for him to attend special education classes. However his performance in those classes was so abysmal that school officials placed him in a therapeutic school. [Defendant's Mitigation Exhibit 3, p. 3.]

At the age of fourteen the Social Security Administration diagnosed Michael as having mental retardation and determined that he was eligible to receive with monthly SSI payments. [Tr. 1107] He continued to receive these payments up until the time of his trial.

### B.   Petitioner's Capital Trial Proceedings.

After Michael's arrest in the present case, trial counsel filed a Not Guilty By Reason of Insanity plea and the trial court appointed three independent experts to evaluate Michael. Dr. Myron Fridman in his report stated: "Michael Bies is a marginally functioning, mildly mentally

3

retarded man from a dysfunctional family background who has never fully achieved satisfactory life adjustment" [Motion Exhibit 7 p.____]. Dr. Fridman observed that Michael's "thought processes [were] ... at times somewhat illogical" [Motion Exhibit 7, p. ____]. Dr. Donna Winter, who worked for the Hamilton County Court Clinic, concluded that Michael "appeared to function in the range of borderline mentally retarded [Defendant's Mitigation Exhibit 3, p. 6]. Dr. Winter concluded in her sentencing report that "Mr. Bies doesn't think logically. He often contradicts himself and doesn't seem to grasp the total picture of his circumstances with anything but superficial understanding" [Defendant's Mitigation Exhibit 3, p. 6].

Michael has an IQ of 68 and suffered from mild to borderline mental retardation [Tr. 11054, 1117]. He was functionally illiterate [Defendant's Mitigation Exhibit 3, p. 6]; he was operating on the level of a third to sixth grader [Tr. 1117]; he suffered from brain damage which caused him to be learning impaired [Tr. 1117] and he was hearing voices [Tr. 1100].

Michael could not understand the proceedings at trial [Tr. 1085]. He could not even tell the psychologist in what stage the trial had progressed [Tr. 1118]. He did not know what closing argument was [Tr. 1118]. Michael sat and drew pictures throughout the proceedings [Defendant's Mitigation Exhibit 1]. Dr. Winter described his drawings as very "primitive." [Tr. 1105] Michael while awaiting trial was more concerned about a pending theft charge in the State of Indiana than his capital case in the State of Ohio. [Tr. 1119].

During the mitigation hearing, Michael wrote a two paragraph statement for the jury. [Tr. 1088, Defendant's Mitigation Exhibit 2] Michael was unable to read this two paragraph statement to the jury [Tr. 1088].

During closing argument in the mitigation stage, defense counsel argued that the jury should not vote to execute Michael because he was operating at the level of a third grader

4

because of his low IQ. [Tr. 1157-1159, 1164, 1169] The trial prosecutor stated that Michael had an IQ of 68 and conceded that "Contrary to the closing argument by Mr. Deardorff, his IQ is not 63, it's 68. It's in the report if you'd like to see it. Michael Bies is not intelligent. I think that we can all accept that." [Tr. 1180]. The jury, after deliberating for almost ten hours, returned a verdict recommending that Michael be sentenced to death [Tr. 1205-1206, 1210].

After the death verdict, defense counsel Timothy Deardorff told the Cincinnati Enquirer that Bies could not comprehend his own trial [Motion Exhibit 8]. According to the Enquirer "His attorneys said he was more concerned with his legal fees than being condemned to die. He did not understand, Derdorff said, that his lawyers were court-appointed." [Id.]

### C.  The State Court Findings Of Mental Retardation

The Hamilton County Court of Appeals on Michael Bies' direct appeal of right to that Court determined that Michael Bies suffered from "mild mental retardation to borderline mental retardation." State v. Bies, No. C-920841, 1994 WL 102196 (Ham. App March 30, 1994), p. **10. [Motion Exhibit 1]. On direct appeal to the Ohio Supreme Court that Court concluded that Michael suffered from "mild to borderline mental retardation". State v. Bies, 658 N.E.2d 754, 761 (1992).

### III.  THE STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT.

Pursuant to Rule 56 of the Ohio Rules of Civil Procedure, Summary Judgment shall be rendered if: 1) no genuine issue as to any material fact remains to be litigated, 2) the moving party is entitled to judgment as a matter of law, and 3) that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Temple v. Wean United, Inc., 50 Ohio

5

St. 2d 317, 327 (1977); Zivich v. Mentor Stockard Club, Inc., 82 Ohio St. 3d 367, 369 (1998); Miller v. Athletic Co., 80 Ohio St. 3d 607, 617 (1998).

Summary judgment is appropriate when the non-moving party has failed to make a sufficient evidentiary showing to establish the existence of an element essential to his case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Wing v. Anchor Media, 59 Ohio St. 3d 108 (1991). When there is a "complete failure of proof concerning an essential element of the nonmoving party's case" summary judgment shall be granted. Crtesher v. Burt, 75 Ohio St. 3d 280, 288 (1996). See also Vahila v. Hall, 77 Ohio St. 3d 421 (1997).

In the present case the State has not cited to any judicial holding that concluded that Michael Bies is <u>not</u> mentally retarded. The State has not offered any affidavit or report of any experts that contradict mental retardation. The State has not even attempted to explain its prior numerous concessions that Michael Bies is mentally retarded.

O.R.C. § 2953.21(D) permits either party to a post-conviction action to file a motion for summary judgment. The Ohio Supreme Court has held that Ohio R. Civ. P. 56, and the cases interpreting the rule are applicable to summary judgment motions filed pursuant to O.R.C. § 2953.21(D). State v. Milanovich, 42 Ohio St. 2d 46, 51 (1975). Trial courts must strictly adhere to the provisions of Ohio R. Civ. P. 56 when deciding summary judgment motions in post-conviction cases:

> In post-conviction cases, only careful adherence to the provisions of Civ. R. 56 can assure that the rights and obligations of both parties are fairly treated and respected.

[Id. at 52.]

It is anticipated that the State, in its response may cite to State v. Calhoun, 86 Ohio St. 3d 279 (1999). In Calhoun, the Ohio Supreme Court addressed the issue of the manner in which

6

trial courts were to consider affidavits that petitioners submitted in post-conviction proceedings. Michael Bies, in this motion, relies primarily upon prior findings of this Court, the Hamilton County Court of Appeals and the Ohio Supreme Court; repeated concessions made by the Hamilton County Prosecutor's Office; and the findings made by the experts appointed by this Court. Consequently Calhoun is not applicable to this pleading.

### III. THE RECORD PERMITS ONLY ONE CONCLUSION, MICHAEL BIES IS MENTALLY RETARDED.

In Atkins v. Virginia, 536 U.S. 304 (2002), the United States Supreme Court ruled the execution of mentally retarded defendants are "cruel and unusual punishments" prohibited by the Eighth Amendment. The Court observed:

> Because of their disabilities in areas of reasoning, judgment, and control of their impulses, however, they do not act with the level of moral culpability that characterizes the most serious adult criminal conduct. Moreover, their impairments can jeopardize the reliability and fairness of capital proceedings against mentally retarded defendants.

Atkins v. Virginia, 536 U.S. 306-307.

In Atkins, the United States Supreme Court cited to the definition adopted by the American Association of Mental Retardation ("AAMR") in 1992 and to the definition adopted by the American Psychiatric Association ("APA") in the DSM-IV. See Atkins, 536 U.S. at 309, n.3. The AAMR has now further refined its 1992 definition. Mental Retardation: Definition, Classification, and Systems of Supports 1 (Ruth Luckasson ed., 10th ed. 2002) (hereafter "Mental Retardation (2002)").

The Ohio Supreme Court has adopted the tests identified by the United States Supreme Court in Atkins;

> Clinical definitions of mental retardation, cited with approval in *Atkins*, provide a standard for evaluating an individual's claim of mental retardation. Id. at fn.3, citing definitions from the American Association of Mental Retardation and the

7

> American Association of Mental Retardation and the American Psychiatric Association. These definitions require (1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18. Most state statutes prohibiting the execution of the mentally retarded require evidence that the individual has an IQ of 70 or below.

State v. Lott, 97 Ohio St. 3d 303, 305 (1992).

A defendant, pursuant to all of the above tests, to be declared mentally retarded, must 1) have subaverage intelligence, 2) suffer from significantly impaired adaptive skills and 3) have the mental disability manifest itself before the age of eighteen. Michael Bies meets all three criteria with respect to any of the definitions.

## A.    Michael Bies Suffers from Subaverage Intelligence

The AAMR pursuant to the most recently revised definition defines significant limitation in intelligence functioning as "approximately two standard deviations below the mean, considering the SEM [Standard Error Measurement] for the specific assessments instrument used and the instrument's strengths and limitations." Mental Retardation (2002) at p. 58. The Supreme Court in Atkins noted that "an IQ between 70 and 75" is "typically considered the cutoff IQ score for the intellectual functioning prong of the mental retardation definition." 536 U.S. at 309 n.5. All of Michael Bies' IQ scores are below 75.

On April 8, 1983 Consultative Examinations Inc. of Chicago, Illinois examined Michael. [Motion Exhibit 9.] Dr. Rodriguez, M.D. noted that Michael's "intelligence estimated to be below normal, possibly mentally retarded." [Id. at p. 2.] The Medical Doctor's report reflects the following:

> When asked what he had for breakfast, he said "Anything and everything." Immediate recall was good but he was unable to establish his own birth date.
>
> He said the President of the U.S. is Ronald Reagan. He was unable to mention any previous Presidents. He said the Mayor of Chicago now is Washington.

8

> When asked what is the Capitol of the U.S., he said "I don't know." When asked to name U.S. cities, he said "Chicago, New York and Illinois." When asked to subtract 7 from 100, he said "I don't know no more."
>
> When asked what he would do if there were a fire in a movie theatre, he said "I don't know what I would do." When asked what he would to if he found a stamped, addressed and sealed envelope, he said "I don't know." When asked about the difference between a river and a lake, he said "I don't know that either." When asked how oranges and apples are alike he said "They are not." He was unable to interpret proverbs.

[Id. at p. 3.]

On November 29, 1984 Judith Grace administered the Wide Range Achievement Test to Michael. [Motion Exhibit 10.] He was twelve years of age and he should have been in the Seventh Grade at the time. Michael was instead performing at the following grade levels: word recognition 3.0; Spelling 2.1; math 3.0, vocabulary 1.2 and comprehension 1.5 [Id.] The evaluator described Michael:

> Michael completed testing in one session. He scored many years below grade level in all areas. On the spelling he only spelled "cat" and "run" correctly. He made three errors on the coding section. On the Word section he only read "milk", "city," "in," and "tree," correctly. Michael seems to understand adding with regrouping although he made a computational error. He cannot subtract when regrouping is required. He does not seem able to multiply or divide.
>
> Michael was given the Gates-Level A, which is geared for first graders.

[Id.]

On February 6, 1985, Registered Psychologist Eileen Meyer, M.A. administered additional psychological testing to Michael. [Motion Exhibit 11.] Michael had a full scale performance IQ of 50. [Id. at p. 2.] On the same date he scored a 42 on the Peabody Picture Vocabulary Test which placed him in the lowest one percent of the population. [Id.]

9

Ultimately the Social Service Administration determined that Michael was eligible for Social Security as a result of his mental retardation which would have included a finding of below average intelligence. [Motion Exhibits 12 and 13.]

In September 1992, Dr. Winter, who was appointed by this Court, administered the Wechsler Adult Intelligence Scale (WAIS-R) to Michael Bies. He had a full scale IQ of 68 [Motion Exhibit 14].

Throughout his educational history, school officials placed Michael Bies in special education and therapeutic classes. [Motion Exhibits 7 and 14] These placements were consistent with him having subaverage intelligence.

**B.  Michael Bies Suffers from Significant Limitations With Respect to his Adaptive Skills.**

Adaptive behavior is the component of the mental retardation definition that requires that the intellectual impairment produce real-world disabling effects on the person's life.

The AAMR has divided adaptive skills into three areas or domains; 1) conceptual, 2) social, and 3) practical. For each of the three domains the AAMR has identified representative skills. (Mental Retardation (2002), p. 82.) It is sufficient for the definition of mental retardation that an individual suffers from significant limitations with respect to one of the three domains. [Id. at pp. 76].

Michael Bies suffers from significant limitations with respect to the conceptual domain. He has deficient language and reading skills. At the age of twelve he had a vocabulary of 1.2 grade level. He had a vocabulary raw score of 17 and a scale score of 2 in 1985 [Motion Exhibit 9]. At trial Dr. Winters testified that Michael was functioning on the level of a third to sixth grader [Tr. 1117]. When the officer arrested Michael he could not even spell the name of the school that he attended [Defendant's Motion to Suppress, Exhibit 5, p. 2]. Michael's reading

ability is even more impaired. At the age of twelve he was reading at the grade level of 1.5 [Motion Exhibit 10]. Three months later he was reading on the level of a fourth grader [Motion Exhibit 11, p. 2] He was functionally illiterate at the time of trial [Defendant's Sentence, Exhibit 3, page 6]. Michael was not able to read a two paragraph statement to the jury [Tr. 1088].

Michael also had subaverage adaptive skills in the social domain. Michael has few interpersonal skills. His mother described him as very difficult to control [Defendant's Sentencing Exhibit 3, p. 3] Dr. Winters found him very compulsive [Id. at p. 4]. Dr. Feus concluded that Michael Bies "has had difficulty maintaining meaningful relationships. [Motion Exhibit 7, p. 4]. Dr. Winters reports that Michael is naive as reflected in the account that he gives of events [Motion Exhibit 14, p. 2]. Michael has a long history of not following rules. His mother could not get him to follow rules within the family [Defendant's Sentencing Exhibit 3, p.2]. He refused to attend school regularly and when he did attend he disrupted the class [Id. at p. 3]. Michael has repeatedly failed to comply with society's rules. He had a prior arrest for carrying a concealed weapon and at the time of his trial he had a pending charge of receiving stolen property. [Id. at p. 4].

Michael's adaptive skills are also impaired with respect to the practical domain. According to Dr. Winters Michael "has no employment history to speak of". [Defendant's Mitigation Exhibit 3, p. 4]. He has had a string of jobs, the longest lasted six months [Motion Exhibit 16, p. 3]. He does not maintain a safe environment. He is a constant threat to both himself and others around him. [Defendant's Sentencing, Exhibit 3, pp. 2, and 5, Motion Exhibit 16, p. 3].

C.  **Michael Bies' Mental Retardation Originated Before The Age of Eighteen.**

Michael Bies was diagnosed with mental retardation before the age of eighteen. [Motion Exhibits 10, 12, and 13]. His intelligence has been identified as subaverage before the age of eighteen. [Exhibits 12, and 13]. His behavior prior to the age of eighteen demonstrated that he had significant limitations on his adaptive skills. [Exhibits 7, 14, Mitigation Exhibit 3].

IV.  **The State Is Precluded From Relitigating The Findings Of All The Courts And Its Own Concessions That Michael Bies Is Mentally Retarded.**

This Court during the post-conviction process determined that Michael Bies is mentally retarded [Motion Exhibit 2,]. The Hamilton County Court of Appeals during the direct appeal found that Michael Bies is mentally retarded. State v. Bies, No. C-92-0841, 1994 Ohio App. LEXIS 1304 (Ham. Apps. March 30, 1994), [Motion Exhibit 1]. The Ohio Supreme Court likewise on direct appeal found that Michael Bies is mentally retarded. State v. Bies, 74 Ohio St. 3d 320, 327 (1996).

During the trial of this case, the Hamilton County Prosecutor did not dispute that Michael Bies is mentally retarded. The trial prosecutor told the jury that "Contrary to the closing argument by Mr. Deardorff, his IQ is not 63, it's 68. It's in the report if you'd like to see it. Michael Bies is not intelligent. I think that we can all accept that." [Tr 1180]. During the post-conviction proceedings in the Hamilton County Court of Appeals and in the Ohio Supreme Court, the Hamilton County Prosecutor conceded Michael's mental retardation. [Motion Exhibits 3-5]

When an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties even on a future lawsuit. Ashe v. Swenson, 397 U.S. 436, 445 (1970); United States v. Patterson, 827 F.2d 184, 187 (7th Cir. 1987). The doctrine of collateral estoppal is part of the Double Jeopardy Clause of the Fifth

Amendment. Ashe v. Swenson, 397 U.S. at 445. That doctrine precludes the prosecutor from relitigating the findings of the Hamilton County Court of Appeals and the Ohio Supreme Court that Michael Bies is mentally retarded.

## IV.  Conclusion

Wherefore pursuant to O.R.C. § 2953.21(D) and Ohio Civil Rule 56, the Court should enter a judgment that Michael Bies is mentally retarded. Such a finding is warranted by the prior findings of this Court, the Court of Appeals and the Ohio Supreme Court; the concessions of the Hamilton County Prosecutor's Office in all three courts, the conclusions of the experts appointed by this Court and the testimony of one of those experts in the mitigation phase.

Respectfully submitted,

S. SCOTT HAYNES / 0059586
Hallowes, Allen & Haynes
1616 Brice Road
Reynoldsburg, Ohio 43068
Telephone: (64) 868-0009
Facsimile: (614) 868-0029

And

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215-2998
Telephone: (614) 466-5394
Facsimile: (614) 728-3670
COUNSEL FOR PETITIONER

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **MICHAEL BIES' MOTION FOR SUMMARY JUDGMENT AS TO THE THIRD CAUSE OF ACTION** was sent by regular U.S. Mail to James Michael Keeling, Assistant Hamilton County Prosecuting Attorney, Hamilton County Prosecutor's Office, 230 E. 9th Street, Suite 4000, Cincinnati, Ohio 45202 on this 15th day of August, 2003.

_____
S. SCOTT HAYNES
COUNSEL FOR PETITIONER