COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

ENTERED &
SCANNED
APR 5 – 2004
IMAGE 137

| | | |
|---|---|---|
| STATE OF OHIO, | * | |
| Plaintiff | * | Case No. B9205607 |
| vs. | * | *DECISION* |
| MICHAEL BIES, | * | |
| Defendant. | * | |

This matter is before the Court on Petitioner's Motion for Summary Judgment on his third cause of action. Based upon the record in this case, and for the reasons discussed below, the Court finds that there are genuine issues of material fact and that the Court cannot say that Petitioner is entitled to judgment as a matter of law. Petitioner's Motion is therefore denied and this matter is set for further proceedings.

## INTRODUCTION

Petitioner has filed a Mental Retardation Petition seeking to have his death penalty sentence set aside. Under Count 3 of this Petition, Petitioner argues that he is mentally retarded and that his execution would therefore be in violation of the Eighth Amendment. The only issue before the Court at this time is whether Petitioner is entitled to summary judgment on this Count, or whether further proceedings are required. Petitioner argues that based on the existing record, the evidence is undisputed that he is mentally retarded and that he is entitled to judgment as a matter of law. The State argues that there are disputed facts and that it cannot be said as a matter of law that Petitioner is mentally retarded.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact that remain to be litigated and the moving party is entitled to judgment as a matter of law. Civ. R.

1


EXHIBIT C

56(C); Celotex Corp. v. Catrett (1986), 477 U.S. 317, 106 S. Ct. 2548. Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, if any, timely filed in the action and construed most strongly in favor of the non-moving party, show that there is no genuine issue as to any material fact. Civ. R. 56(C). The burden of establishing that the material facts are not in dispute, and that no genuine issue of fact exists, is on the party moving for summary judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. If the moving party asserts that there is an absence of evidence to establish an essential element of the nonmoving party's claim, the moving party cannot discharge this burden with a conclusory allegation, but must specifically point to some part of the record which affirmatively demonstrates this absence of evidence. Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

The Ohio Supreme Court has established three factors to be considered upon a motion for summary judgment. These three factors are:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that the conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

Bostic v. Connor (1988), 37 Ohio St. 3d 144, 146 N.E. 2d 881 (quoting Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64, 375 N.E. 2d 46).

Once a motion for summary judgment has been made and supported as provided in Civ. R. 56(C), the nonmoving party then has a reciprocal burden to set forth specific evidentiary facts showing the existence of a genuine issue for trial and cannot rest on the allegations or denials in the pleadings. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095.

ENTERED & SCANNED  APR 5 - 2004  IMAGE 138

## APPLICABLE LAW

There is no doubt that a mentally retarded person may not be executed. In <u>Atkins v. Virginia</u> (2002), 536 U.S. 304, the United States Supreme Court ruled the execution of mentally retarded defendants are "cruel and unusual punishments" prohibited by the Eighth Amendment. The Court observed:

> Because of their disabilities in areas of reasoning, judgment, and control of their impulses, however, they do not act with the level of moral culpability that characterizes the most serious adult criminal conduct. Moreover, their impairments can jeopardize the reliability and fairness of capital proceedings against mentally retarded defendants.

<u>Atkins v. Virginia</u>, 536 U.S. 306-307.

The Court recognized that both the American Association on Mental Retardation and the American Psychiatric Association had similar clinical definitions of mental retardation.

The Ohio Supreme Court in <u>State v. Lott</u> (2002), 97 Ohio St. 3d 303, has established the law and procedures governing claims of mental retardation in the Courts of Ohio. Specifically, the Court stated:

> Clinical definitions of mental retardation, cited with approval in *Atkins,* provide a standard for evaluating an individual's claim of mental retardation. Id. at fn. 3, citing definitions from the American Association of Mental Retardation and the American Psychiatric Association. These definitions require (1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18. Most state statutes prohibiting the execution of the mentally retarded require evidence that the individual has an IQ of 70 or below. See Ky.Rev.Stat. 532.130 and 532.140; Neb.Rev.Stat. 28-105.01(2); N.M.Stat. 31-20A-2.1; N.C.Stat. 15A-2005; S.D. Codified Laws 23A-27A-26.2; Tenn.Code 39-13-203(b); and Wash.Rev.Code 10.95.030(2). While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination of this issue. *Murphy v. State*, 54 P.3d at 568, 2002 OK CR 32, at ¶ 29. We hold that there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70.


ENTERED & SCANNED  APR 5 - 2004  IMAGE 139

Moreover, the Court is to decide whether Petitioner is mentally retarded using a preponderance of the evidence. Id. It is Petitioner's burden to establish. Id.

## ANALYSIS

In the present case, there are disputes of fact as to the IQ of Mr. Bies and as to the ultimate determination of whether he is or is not mentally retarded.

The first factor to be considered by this Court is whether Mr. Bies suffers from subaverage intelligence. IQ is one of the factors considered. Regarding Mr. Bies' IQ, there is conflicting evidence in the record. On the one hand, there is evidence indicating that Mr. Bies has an IQ below 70: 1) February 6, 1985, examination shows IQ of 50; 2) September 11, 1992 report regarding NGRI comments that Dr. Winters found an IQ of 68; and, 3) 1992 NGRI report finds full scale IQ of 68 with performance IQ at 67 and verbal IQ at 70.

On the other hand, there is evidence that Mr. Bies' IQ is over 70, thus giving rise to a rebuttable presumption that he is not mentally retarded. For example, Exhibit E to Petition to Vacate which shows an IQ of 74 in 1983. Moreover, in September 1996, Dr. Haskins found an IQ of 72. (Exhibit J to Appendix to Petition to Vacate filed September 20, 1996.)

The Court may not weigh the credibility of the evidence at the summary judgment stage. There is a genuine issue of material fact as to Mr. Bies' IQ and whether he is of subaverage intelligence precluding summary judgment.

Moreover, while the record contains evidence that Mr. Bies is mentally retarded, the Court is unable to determine whether the experts applied the test as laid out by the courts to determine this issue. Much of the language is conclusory. Moreover, the experts rendered

4


ENTERED & SCANNED
APR 5 - 2004
IMAGE 140

opinions prior to <u>Atkins</u> and <u>Lott</u>, and the Court cannot determine whether they engaged in the analysis now required.[1]

For example, in her September 11, 1992 NGRI report, Dr. Winters concludes that Mr. Bies is mildly mentally retarded. There is no analysis of this issue, however, and it was not the purpose for her examination. The April 8, 1993, examination from St. Elizabeth in Illinois concludes that Mr. Bies has below normal intelligence with possible mental retardation. There is no further analysis on this issue. The 1992 NGRI report states that Mr. Bies tests in the range of mild mental retardation, but also finds that he lives unassisted in the community and carries out activities of daily life fairly and independently. Again, the issue of mental retardation was not the purpose of the evaluation.

Defendant also argues that Court findings establish that Mr. Bies is mentally retarded. For example, the 1994 Court of Appeals decision (<u>State v. Bies</u> (Ohio App. 1st Dist. March 30, 1994), 1994 WL 102196) noted that Mr. Bies suffered "mild mental retardation to borderline mental retardation." It made no analysis of the issue under the legal standard of <u>Atkins</u> and <u>Lott</u>, which had yet to be decided. The Ohio Supreme Court made a similar conclusion. <u>State v. Bies</u> (1996), 658 N.E. 2d 754.

Further, this Court's predecessor did find in its Findings re: Petition to Vacate dated July 22, 1998, that Mr. Bies was mildly mentally retarded, with an IQ of about 69. The court went on to conclude that under the law at that time, a mildly mentally retarded person could be executed.

---

[1] Mr. Bies argues that the definitions for mental retardation by the American Psychiatric Association and the American Association of Mental Retardation are the same now as they were when the experts examined Mr. Bies. While this may be true, the three experts appointed in 1992, which Mr. Bies relies on, were appointed to determine NGRI, not mental retardation. Moreover, the statements regarding mental retardation are made in a conclusory manner without any analysis. See Exhibits 7 and 14 in support of Motion for Summary Judgment. Dr. Winter's opinion contains more of an analysis, but her opinion as to mental retardation appears to be based primarily on the IQ test. Despite Mr. Bies' statements to the contrary, Dr. Fuess makes no conclusion on mental retardation, simply stating that his intellectual abilities are estimated to fall within the borderline range.

5

ENTERED & SCANNED
APR 5 - 2004
IMAGE 141

Since this ruling, Atkins and Lott have been decided. These cases provide the test to determine whether someone is mentally retarded for purposes of the present analysis. There is no indication that the Court applied the analysis now required. Therefore, the Court cannot conclude as a matter of law that Mr. Bies is mentally retarded under the standards of Lott.

Finally, Mr. Bies argues that the State is precluded and estopped from now arguing that Mr. Bies is not mentally retarded, having previously conceded this issue. Because the issues were not identified and the analysis of Lott and Atkins had not yet been established by the Courts, the Court does not find that the State is precluded from arguing that Mr. Bies is not mentally retarded. Neither judicial estoppel nor law of the case apply under the unique facts of this case. New Hampshire v. Maine (2001), 532 U.S. 742, 121 S. Ct. 1808; Dannaher v. Crawford (1997), 78 Ohio St. 3d 391, 1997 Ohio 72, 678 N.E.2d 549; Hubbard v. Sauline (1996), 74 Ohio St. 3d 402, 1996 Ohio 174, 659 N.E.2d 781.

The Court recognizes that there is a serious issue as to Mr. Bies' mental status. The Court cannot reach a determination on this issue on the record before it as a matter of law. Thus, summary judgment is denied and the matter will continue for further proceedings

_____
Beth A. Myers, Judge



**ENTER**

APR 0 5 2004

**BETH A. MYERS, JUDGE**

Copies by fax to:

Mark Piepmeier
Assistant Hamilton County Prosecutor
Hamilton County Prosecutor's Office
230 E. 9th Street, Suite 4000
Cincinnati, OH 45202
FAX (513) 946-3100

*Counsel for Plaintiff*

S. Scott Haynes
Hallowes, Allen & Haynes
6445 East Livingston Avenue
Reynoldsburg, OH 43068
FAX (614) 868-0029

David H. Bodiker
Ohio Public Defender

Randall L. Porter
Assistant Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, OH 43215-2998
FAX (614) 728-3670

*Counsel for Defendant*



ENTERED & SCANNED
APR 5 - 2004
IMAGE 143