IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Michael Bies, | : | |
| Petitioner, | : | |
| | | Case No.: CV-1-00-682 |
| vs. | : | |
| | | District Judge Susan J. Dlott |
| Margaret Bagley, Warden, | : | Magistrate Judge Michael R. Merz |
| Respondent. | : | |

---

**PETITIONER MICHAEL BIES' MEMORANDUM IN SUPPORT OF THE NINETEENTH CLAIM FOR RELIEF, THE STATE OF OHIO IS PRECLUDED FROM RETRYING THE FACTUAL DETERMINATION THAT HE IS MENTALLY RETARDED**

---

**I.     INTRODUCTION.**

At the sentencing hearing, Dr. Donna Winters, who provided the only expert psychological testimony, concluded that Michael Bies was mild to borderline mentally retarded. Despite the trial court's appointment of three experts, the state did not call any witness to dispute her testimony. Her diagnosis of mental retardation was consistent with the diagnosis of one of the other court appointed experts. In both rounds of the direct appeal the parties actively litigated the issue of Michael Bies' mental retardation. In both rounds the Court found that the testimony of Dr. Winters was credible as her diagnosis of mental retardation. In state post-conviction, the prosecutor, after having lost the issue twice, conceded the issue of Michael Bies' retardation.

The state now wishes to re-litigate the mental retardation issue, which the state has already actively litigated and subsequently conceded. The state is precluded by the Fifth

Amendment from re-litigating issues that it has previously lost in a final judgment. The state is not permitted to get a "redo" until it prevails. It had its chance and lost. Finality, as well as Double Jeopardy, preludes the state from further re-litigating the mental retardation issue.

## II. THE STATE COURTS FOUND AND THE PROSECUTORS SUBSEQUENTLY CONCEDED THAT MICHAEL BIES IS MENTALLY RETARDED.

### *A. The Trial Evidence Supported The Finding That Michael Is Mentally Retarded.*

Trial counsel for Michael Bies filed a Not Guilty By Reason of Insanity plea and the trial court appointed three independent experts to evaluate Michael. [St. Ct. App. Vol. I, p. 19][1] Dr. Myron Fridman in his report stated: "Michael Bies is a marginally functioning, mildly mentally retarded man from a dysfunctional family background who has never fully achieved satisfactory life adjustment." [St. Ct. App. Vol. I, p. 340]. Dr. Donna Winter similarly concluded that Michael "appeared to function in the range of borderline mentally retarded." [Exhibit 2, p. 6]. Dr. Fridman observed that Michael's "thought processes [were] . . . at times somewhat illogical" [St. Ct. App. Vol. I, p. 339].

Dr. Winter, who worked for the Hamilton County Court Clinic, concluded in her sentencing report that "Mr. Bies doesn't think logically. He often contradicts himself and doesn't seem to grasp the total picture of his circumstances with anything but superficial understanding." [Exhibit 2, p. 6]. He is functionally illiterate [Id.]

Dr. Winter testified in the mitigation phase that Michael had an IQ of 68 and suffered from mild to borderline mental retardation. [Tr. 11054, 1117]. He was operating on the level of a third to sixth grader [Tr. 1117]; he suffered from brain damage which caused him to be learning impaired [Tr. 1117] and he was hearing voices. [Tr. 1100]. Michael, while awaiting

---

[1] On September 28, 2000, the Warden filed six volumes of the state court pleadings [Doc. No. 9]. Michael Bies references those volumes with the following citation: St. Ct. App. Vol. __, p. __. On July 14, 2005, the Warden filed an additional nine volumes of state court pleadings. Michael Bies references those volumes with the following citation: Supp. St. Ct. App. Vol. __, p. __.

2

trial, was more concerned about a pending theft charge in the State of Indiana than his capital case in the State of Ohio. [Tr. 1119].

Michael could not understand the proceedings at trial. [Tr. 1085]. He could not even tell the psychologist in what stage the trial had progressed. [Tr. 1118]. Michael sat and drew pictures throughout the proceedings. [Defendant's Mitigation Exhibit 1]. Dr. Winter described his drawings as very "primitive." [Tr. 1105]. Michael was unable to read this two paragraph statement to the jury. [Tr. 1088; Defendant's Mitigation, Exhibit 2].

During closing argument in the mitigation phase, defense counsel argued that the jury should not vote to execute Michael because he was operating at the level of a third grader because of his low IQ. [Tr. 1157-1159, 1164, 1169]. The trial prosecutor conceded that Michael had an IQ of 68 and "that Michael Bies is not intelligent. I think that we can all accept that." [Tr. 1180]. The jury, after deliberating for almost ten hours, returned a verdict recommending that Michael be sentenced to death. [Tr. 1205-1206, 1210].

### B. All Three Levels of the State Courts Found that Michael Bies is Mentally Retarded.

On his direct appeal of right to the Hamilton County Court of Appeals, counsel for Michael Bies argued that there was insufficient evidence to support the jury's sentencing death recommendation. [St. Ct. App. Vol. II, p. 54-61]. Counsel referred to Michael's mental retardation, "During the penalty phase of the trial, a psychiatrist who had tested Bies noted that his score on an intelligence test was a mere 69, which meant that the Appellant was mildly to moderately retarded." [Id. at p. 55]. Counsel further argued that Michael's mental age (as a result of his mental retardation) precluded a sentence of death, "The Appellant was twenty years old at the time the incident occurred, but his mental age was that of, at best, a sixth-grader." [Id. at p. 57].

The prosecution contested Michael's mental retardation in its Merit Brief. [St. Ct. App. Vol. II, p. 139]. The state's argument, however was limited to two paragraphs given the uncontraverted record of Michael's mental retardation in the trial court. [Id.] Appellate counsel in their reply brief vehemently opposed the state's notion that Michael was not mentally retarded. [Id. at p. 185-186].

On March 30, 1994, the Hamilton County Court of Appeals decided Michael's direct appeal. State v. Bies, 1994 WL 102196 (Ham. App. March 30, 1994). [St. Ct. App., Vol. II, pp. 223-246]. That Court determined that Michael suffered from "mild mental retardation to borderline mental retardation." [Id. at p. 244.]

In the direct appeal of right to the Ohio Supreme Court, appellate counsel for Michael again argued that the weight of the evidence did not support the jury's death recommendation. [St. Ct. App., Vol. III, pp. 143-148]. Appellate counsel focused the argument upon Michael's mental retardation. [Id.] The state again disputed Michael's mental retardation. [Id. at pp. 276-277]. Appellate counsel, in the Reply Brief, again focused upon Michael's low intelligence. [Id. at pp. 316-317].

The Ohio Supreme Court, in affirming Michael's conviction and sentence recognized that "Dr. Winter found that Bies was mildly to borderline mentally retarded". State v. Bies, 74 Ohio St. 3d 320, 327 (1996). Based upon that testimony, the Ohio Supreme Court found that Michael suffered from "mild to borderline mental retardation." Id. at 328.

On September 20, 1996, Michael filed his initial post-conviction petition with the trial court. In his Fifth Claim for Relief he asserted that it would be unconstitutional to execute him because he was mentally retarded. [St. Ct. App. Vol. IV, pp. 18-20].

4

On July 22, 1998, the late Judge Robert S. Kraft issued his findings of facts, conclusions of law. [St. Ct. App. Vol. V, p. 472-485]. The Assistant Prosecutor assigned to the case wrote the Judge's findings for him. The Judge concluded, based upon the prosecutor's proposed findings, that:

> (1) The defendant is <u>shown by the record to be mildly mentally retarded with an IQ of about 69.</u>
>
> The Court makes the following Conclusion of Law:
>
> (1) As a matter of law, a mildly mentally retarded defendant may be punished by execution. <u>State v. Holloway</u>, 38 Ohio St. 3d 239 (1988). [emphasis added.]

[<u>Id.</u> at p. 480].

### C. *The Prosecutor Embraced the Findings that Michael is Mentally Retarded.*

On November 22, 1996, the State of Ohio filed its Motion for Judgment in the post-conviction proceeding. [St. Ct. App. Vol. V, pp. 373-391]. The state responded as follows to the Fifth Claim for Relief:

> Defendant's fifth claim for relief is that it is cruel and unusual punishment to execute a retarded person. The <u>record reveals defendant to be mildly mentally retarded</u> with an I.Q. of about 69. As a matter of law, such a person may be punished by execution. <u>State v. Holloway</u>, 38 Ohio St. 3d 239 ()1988). (emphasis added.)

[<u>Id.</u> at p. 388].[2]

In Michael Bies' post-conviction appeal to the First District Court of Appeals, the prosecution again conceded Michael's mental retardation:

> Defendant's fifth claim for relief is that it is cruel and unusual punishment to execute a retarded person. <u>The record reveals defendant to be mildly mentally retarded with an I.Q. of about 69</u>. As a matter of law, such a person may be punished by execution. <u>State v. Holloway</u>, 38 Ohio St. 3d 239, 527 N.E.2d 831 (1988). [emphasis added.]

[St. Ct. App. Vol. VI, p. 140].

---

[2] The State misconstrued the record. Michael Bies had an IQ of 68, not 69 [Tr. 1104, 1117].

5

In the post-conviction proceedings in the Ohio Supreme Court, the state, in its Memorandum In Response, again conceded Michael's mental retardation.

> Defendant's fifth claim for relief is that it is cruel and unusual punishment to execute a retarded person. <u>The record reveals defendant to be mildly mentally retarded with an I.Q. of about 69</u>. As a matter of law, such a person may be punished by execution. <u>State v. Holloway</u>, 38 Ohio St. 3d 239, 527 N.E.2d 831 (1988). [emphasis added.]

[<u>Id.</u> at p. 310].

## III. COLLATERAL ESTOPPEL PRECLUDES THE STATE FROM LITIGATING ISSUES DETERMINED IN PRIOR PROCEEDINGS.

Michael Bies moved the trial court for summary judgment on his mental retardation claim. [Sup. St. Ct. App. Vol. VIII, pp. 181-194] Part of the motion was premised on the Double Jeopardy Clause of the Fifth Amendment. [<u>Id.</u> at pp. 192-3]. The trial court denied the Motion. [Sup. St. Ct. App. Vol. IX, pp. 66-72]. Michael Bies, relying exclusively on the Fifth Amendment, moved the trial court for reconsideration. [<u>Id.</u> at pp. 80-85]. The court denied that motion. [<u>Id.</u> at pp. 96-97.] This Court has determined that collateral estoppel issue is exhausted. [Doc. 102, p. 3].

### *1. The Double Jeopardy Clause Applies to State Capital Sentencing Proceedings.*

The Double Jeopardy Clause of the Fifth Amendment states, "nor shall any person be subject for the same offense to twice be put in jeopardy of life or limb." The clause protects an accused against multiple prosecutions or sentences for the same offense. <u>Jones v. Thomas</u>, 491 U.S. 376, 381 (1989). The underlying theory is that the state, with all of its resources and power should not be allowed to make repeated attempts to convict an individual for the same offense "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibilities that even though innocent, he may be found guilty." <u>Green v. United States</u>, 355 U.S. 184, 187-188 (1957). The

clause is applicable to the individual states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969).

The Double Jeopardy Clause applies to sentencing proceedings in capital cases. Bullington v. Missouri, 451 U.S. 430, 445 (1981), Arizona v. Rumsey, 467 U.S. 203, 211 (1984). The "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" faced by a defendant at a capital sentencing hearing is at least the equivalent to that faced by a defendant in a non-capital criminal trial. Bullington, 451 U.S. at 445. In addition, there is risk, if the state could subject a defendant to repeated capital sentencing hearings for the same offense, that the state with its superior resources, would wear down a defendant, thereby leading to an inappropriate death sentence.

### 2. *The Double Jeopardy Clause Includes Collateral Estoppel.*

Principles of collateral are embodied in the Double Jeopardy Clause. Ashe v. Swenson, 397 U.S. 436, 445 (1970); United States v. Jenkins, 902 F.2d 459, 462 (6th Cir. 1990). When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be re-litigated by the same parties. Ashe, 397 U.S. at 443; Dowling v. United States, 493 U.S. 342, 348 (1996); United States v. Uselton, 927 F.2d 905, 907 (6th Cir. 1991).

In Ashe, the defendant was charged with six counts of robbery and one count of car theft arising from the robbery of six persons playing poker. Ashe initially went to trial for the robbery of one of the poker players. The sole issue at trial was whether Ashe had committed the robbery. He was found not guilty. Shortly thereafter the prosecution brought Ashe to trial again for the robbery of another of the poker players. The state buttressed its identification evidence at the second trial and Ashe was convicted. Id. at 438.

The Supreme Court looked to the evidence, the charge, and the jury instructions at Ashe's first trial and concluded that the doctrine of collateral estoppel barred Ashe's trial for the robbery of any of the other poker players. This Court concluded, "Once the jury had determined upon conflicting testimony that there was a least a reasonable doubt that the petitioner was one of the robbers, *the state could not present the same or different identification evidence* in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing." Id. at 446. (emphasis added)

### 3.   *Michael Bies is Entitled to Relief Under the Ashe Factors.*

To prevail upon a defense of collateral estoppel, Michael Bies must demonstrate that 1) his mental retardation was a material fact in the state court litigation; 2) that the issue was determined in his favor by a valid and final judgment, and 3) the same parties are attempting to relitigate the same fact. Ashe, 397 U.S. at 443. While Michael Bies has the burden of proof to prove the applicability of the doctrine, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Ashe at 444. The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Seilfon v. United States, 332 U.S. 575, 579 (1948).

Normally a court, in determining a collateral estoppel issue, must examine the facts adduced and the jury instructions to determine if a particular fact was a disputed, material issue in the prior litigation. Seilfon v. United States, 332 at 579. In some cases that can be a tedious process. That fortunately is not the scenario in the present case. On direct appeal, in both the Hamilton County Court of Appeals and the Ohio Supreme Court, counsel argued that Michael Bies should not be sentenced to death because he was mentally retarded. [St. Ct. App. Vol. II,

pp. 55, 57, 185-6: Vol. III, pp. 143-148, 316-17]. The state, in both courts argued that Michael Bies' was not mentally retarded, citing to what little evidence in the record supported its claim. [St. Ct. App. Vol. II, pp. 139: Vol. III, pp. 276-77]. Thus the mental retardation issue was clearly a material and disputed issue on direct appeal.

The issue of which facts were ultimately determined in prior litigation can also be a vexing issue, especially in the case of general verdicts. *See* Dowling v. United States, 493 U.S. 342, 352 (1990). Schiro v. Farley, 510 U.S. 222, 233-236 (1994). Again, this is "easy" issue in the present case. Both the Court of Appeals and the Ohio Supreme Court made specific findings as to Michael Bies' mental retardation [St. Ct. App. Vol. II, p. 244, State v. Bies, 74 Ohio St. 3d 320, 327-8 (1996)]. In the subsequent post-conviction litigation, the prosecutor accepted these appellate findings. [St. Ct. App. Vol. V, pp. 388; Vol. VI, pp. 140, 310].

The fact that two of the three mental retardation findings were made by the state appellate courts, as opposed to trial courts makes no difference. State appellate court fact findings, for the most part, have the same effect for federal habeas purpose as do state trial court findings. Cabana v. Bullock, 474 U.S. 376, 387 (1986). For purposes of Double Jeopardy analysis, appellate court findings are treated the same as trial court findings. Burks v. United States, 437 U.S. 1, 16 (1978).

The final part of the Ashe test is also easily met. The state has conceded that it is attempting to retry the prior state court findings of mental retardation. [St. Ct. App. Vol. VIII, p. 374]. It has requested another hearing, to "once and for all" determine Michael Bies mental

9

retardation pursuant to the test announced in State v. Lott, 97 Ohio St. 3d 303 (2002).[3] The state's argument must be rejected because "where the Double Jeopardy Clause is applicable, its sweep is absolute. There are no 'equities' to be balanced, for the clause has declared a constitutional policy, based on grounds which are not open to judicial examination." Burks, 437 U.S. at 11 n.6.

    4.    *The Granting of Relief Is Consistent with the Theories Underlying the Fifth Amendment.*

The Double Jeopardy Clause precludes the government from forcing a defendant to again face the "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" of a second capital sentencing hearing for the same offense. Bullington, 451 U.S. at 445-46. Given his long history of significant and debilitating mental illnesses, Michael Bies is especially in need of the protections afforded by the Double Jeopardy Clause. He, even more than the average person, lacks the internal resources to protect his person from the embarrassment, expense, ordeal, anxiety and insecurity of a second capital sentencing hearing, albeit even a limited hearing. See Atkins v. Virginia, 536 U.S. 335, 320-21 (2002) ("lesser ability of mentally retarded defendants to make a persuasive showing of mitigation" and "may be less able to give meaningful assistance to their counsel…").

---

[3] The state offered no evidence that the test adopted by the Ohio Supreme Court in Lott, to determine mental retardation was somehow a new or different test from the test employed by the psychological examiners at Michael's trial. In fact the tests were the same. The state courts presently apply the following test: 1) significantly subaverage intellectual functioning, 2) significant limitations in two or more adaptive skills, and 3) onset before the age of eighteen. State v. Lott, 97 Ohio St. 3d 303, 305 (2002). At the time of Michael's trial the American Psychiatric Association's definition of mental retardation was as follows: 1) significantly subaverage general intellectual functioning, accompanied by 2) significant deficits or impairments in adaptive functioning, with 3) onset before the age of 18. Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, Third Edition Revised, 1987), p. 28. At that time the American Association Of Mental Retardation had promulgated the same definition for mental retardation; 1) significantly subaverage intellectual functioning, 2) limitation in two or more adaptive skill areas, and 3) the onset before the age of eighteen. Mental Retardation (American Association on Mental Retardation, 1992) pp. 5-6.

The Double Jeopardy Clause forbids a second trial "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Burks, 437 U.S. at 11. The trial court appointed three psychological experts to evaluate Michael Bies. [St. Ct. App. Vol. I, p. 19]. The prosecution could have called any of these three experts at the first sentencing hearing, but it did not. The state now wants additional experts appointed and an opportunity, if it so chooses, to call these experts at a another evidentiary hearing. This Double Jeopardy Clause was enacted for specific purpose of precluding the state from conducing the successive prosecutions which it is attempting in the present case. The Double Jeopardy "would be negated" if the state was afforded "an opportunity for the proverbial 'second bite at the apple'" in the present case. Burks, 437 U.S. at 17.

The prejudice that would inure to Michael Bies from a successive sentencing hearing would not be limited to the embarrassment, expense, ordeal, anxiety and insecurity associated with a second hearing after the issue had already been decided in his favor. At issue at the successive hearing would be his intellectual functioning at the time of his trial in 1992. A death row inmate's level of functioning often rises after an extended period of imprisonment. Neither the state nor trial court have suggested the manner in which a new team of mental health professionals could work backwards to assess Michael's level of functioning thirteen years ago. A new team of mental health professionals would not more accurately assess his level of functioning than the court appointed experts, who actually conducted the relevant testing at the time of his trial. It cannot reasonably be expected that the experts, who were appointed at the time of trial could with sufficient clarity thirteen years later recall their evaluations and interviews of Michael Bies to be able to adequately and competently testify. All of this will

work to the disadvantage of Michael Bies because he has the burden to demonstrate his level of impairment at the time of his trial thirteen years earlier. State v. Lott, 97 Ohio St. 3d at 307.

There is an "unacceptable high risk" that there will be "an erroneously imposed death sentence" if the state were to have a second bite of the apple to prove that Michael Bies was not mentally retarded at the time of his trial. Bullington, 451 U.S. at 445-46.[4]

**IV.   THIS COURT SHOULD APPLY DE NOVO REVIEW OF THE COLLATERAL ESTOPPEL CLAIM.**

Four circuits that have addressed the issue have determined that a federal court, when addressing a pretrial double claim jeopardy, should apply de novo review pursuant to 28 U.S.C. 2241. Benson v. Superior Court of Massachusetts, 663 F. 2d 335, 358 (1st Cir., 1981); Stringer v. Williams, 161 F. 3d 259, 262 (5th Cir. 1998); Jordan v. McCaughtry, 251 F. 3d 596, 597 (7th Cir., 2001); Stow v. Murashige, 389 F. 3d 880, 886 (9th Cir. 2004). The Sixth Circuit has reached the same conclusion, *albeit* in an unreported opinion. Moyer v. Petty, 811 F.2d 606, 1986 U.S. App. LEXIS 35145 (6th Cir. Dec. 23, 1986), p. *7. ("Therefore, Moyer's claim of issue preclusion is likewise cognizable under 28 U.S.C. 2241(c)(3).") [Exhibit A attached hereto]. Thus this Court should apply *de novo* review pursuant to all of the above authority.

**V.   THE COURT SHOULD GRANT HABEAS RELIEF REGARDLESS OF THE STANDARD IT APPLIES.**

The trial court refused to grant summary judgment because there was conflicting evidence (Michael's I.Q. scores ranged from 50 to 74), and there was no indication in the record concerning the method(s) the court appointed experts employed in 1992 to determine that

---

[4] The conclusion that a successive sentencing proceeding will result in fundamental unfairness is best demonstrated by the fact that Michael Bies, at the proposed hearing, will bear the burden of proof, even though all three of the prior state court mental retardation findings were in his favor.

Michael Bies was mentally retarded. [Supp. St. Ct. Apx. Vol. IX, pp 69-71].[5] The trial court erred when it evaluated the quantity and quality of the evidence when determining if the prior mental retardation findings were binding.

A prior court's judgment which qualifies as jeopardy, does not lose that effect "no matter how erroneous its decision." Burks, 437 U.S. at 16. In Ashe, the Court found collateral estoppel barred the successive prosecution even though the eyewitness "testimony was substantial stronger on the issue of the petitioner's identity" at the second trial. Id. at 439-440.

The Double Jeopardy Clause applies even if there is new evidence which the prosecution was precluded from submitting at the first trial. Harris v. Washington, 404 U.S. 55 (1971). In Harris, there were three victims and the petitioner was tried initially as to only one of the victims. The jury found him not guilty and the prosecution attempted to try him as to the other two victims. The state appellate court refused to bar the second trial because certain evidence, excluded at the first trial, "would clearly be admissible in the second trial" which would permit "complete" litigation of the petitioner's guilt. Id. at 56. The United States Supreme Court found that collateral estoppel barred the second prosecution, "the state concedes that the ultimate issue of identity was decided by the jury in the first trial. That being so, the constitutional guarantee applies, irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the state in bringing successive prosecutions." Id.

---

[5] The trial court not only erred in considering the evidence, but also reached the wrong conclusion concerning the evidence. The test to determine mental retardation was the same in 1992 as it is in 2005. *See* Note 2. The state produced no evidence, at trial or in the mental retardation proceedings, which indicated that any of the experts had failed to perform their evaluations consistent with the then and still same psychological standards. A diagnosis of mental retardation made during the course of competency or insanity evaluations are the same as that diagnosis for any other purpose. All three experts were appointed by the trial court. There is no reason to believe that the trial judge in 1992 appointed in Michael Bies' capital case three experts all of whom were not well versed as to the applicable definition and testing for purposes of mental retardation. The successor trial judge, in the mental retardation proceedings, had no basis for its speculation that the experts may have performed incompetently.

Thus the trial court's decision on the collateral estoppel claim was contrary to clearly established federal law. Its reliance upon the fact that Michael Bies had a wide range of IQ scores (all of which were in the mental retardation range, when the standard error of measurement is considered) and that the record did not contain the testing methods of the experts was in error. Those facts were constitutionally irrelevant. The test was not whether the jury and appellate court considered all of the evidence, but whether Michael's mental retardation was a material fact which had been determined by a valid and final judgment in the prior litigation. In the alternative, the state court decision concerning Michael Bies' Double Jeopardy claim was an unreasonable application of clearly established federal law.

## VI.   CONCLUSION

All the state courts that considered the issue found that Michael Bies to be mild to borderline mentally retarded. These findings were made after three experts, who were selected by the trial court, evaluated him. The appellate findings were made after briefing by both of the parties on the issue. The post-conviction finding was made after the prosecutor conceded the issue.

For the reasons contained herein, and any other reason apparent on the face of the record, the Court should preclude the state from contesting his mental retardation.

                              Respectfully submitted,

                              s/ S. Scott Haynes
                              S. SCOTT HAYNES - 0059586
                              Hallowes, Allen & Haynes
                              6445 E. Livingston Avenue
                              Reynoldsburg, Ohio 43068
                              Telephone: (614) 868-0009
                              Facsimile:  (614) 868-0029

And

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215-2998
Telephone: (614) 466-5394
Facsimile: (614) 728-3670

COUNSEL FOR MICHAEL BIES

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2005, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

    s/ S. Scott Haynes_____
    S. SCOTT HAYNES

    COUNSEL FOR MICHAEL BIES

224031