LEXSEE 1986 US. APP LEXIS 35145

**CLARENCE MOYER, JR., Petitioner-Appellant, v. RICHARD PETTY, Sheriff of Richland County Ohio, Attorney General of the State of Ohio, Respondents-Appellees**

No. 86-3243

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

811 F.2d 606; 1986 U.S. App. LEXIS 35145

December 23, 1986, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:**

On Appeal from the United States District Court for the Northern District of Ohio.

**LexisNexis(R) Headnotes**

**OPINION:**

Before: GUY, Circuit Judge, PECK, Senior Circuit Judge, and EDGAR, District Judge. n*

> n* Honorable R. Allan Edgar, United States District Court, Eastern District of Tennessee, sitting by designation.

PER CURIAM. Petitioner, Moyer, owner and operator of Moyer's Auto Wrecking was indicted in Summit County, Ohio, on eight counts of receiving stolen property (auto parts) from an individual named Cory Mathews. While awaiting trial, a second indictment was returned in Richland County charging Moyer with thirteen counts of receiving stolen property at his place of business from one Charles Long and others. Moyer was tried and acquitted of all counts in the first indictment in February of 1984. He then filed a motion to dismiss the Richland indictment before the trial [*2] court, claiming double jeopardy, which was overruled. In November of 1984, the state court of appeals affirmed the trial court's denial of the motion to dismiss and in March of 1985, the Ohio Supreme Court denied petitioner's motion for leave to appeal and dismissed the appeal. Moyer then sought habeas corpus relief pursuant to *28 U.S.C. § 2254* before the federal district court, which denied the petition. A timely appeal to this court followed. For the reasons set forth below, the decision of the district court is affirmed.

I.

At Moyer's trial on the first indictment, the state presented testimony by Cory Mathews regarding his delivery of stolen auto parts to defendant. Moyer then testified that he had indeed purchased the parts from Mathews and resold them. However, he testified that he had no knowledge that the parts were stolen and therefore lacked the requisite intent:

Q Are you testifying today that you had no intent to purchase stolen car parts from Cory Mathews?

A I had no intent of buying stolen parts

EXHIBIT A

Q But, you don't recall it so therefore if you did purchase from him it was an accident or a mistake. Is that what you are saying?

A [*3] If I bought them, it was an accident or a mistake.

Q So therefore, you never had any knowledge that you did this, correct?

A Not intentionally, no.

Q It was never your motive or scheme to make extra money by buying the stuff real cheap?

A No.

The prosecution received permission from the trial judge to present the testimony of Charles Long in rebuttal. Although Long's testimony related only to his dealings with defendant in Richland County, which is the subject of the Richland indictment, it was allowed in the Summit County case pursuant to Ohio R. Evid 404(B) n1 to show absence of mistake and to impeach defendant's credibility. n2 Long's testimony specifically attacked Moyer's statements that he had never purchased stolen parts, never primed over vehicle identification numbers on automobile engines, and never removed federal stickers. Long testified that he had delivered stolen engines to defendant and had discussed the fact that the stickers and numbers had been removed.

n1 Ohio R. Evid. 404(B), which is identical to *Fed. R. Evid. 404(b)*, is as follows:

RULE 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes

(B) Other crimes, wrongs or acts. Evidence whether crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for the other purposes, such as proof of motive, opportunity, extent, preparation, plan, knowledge, identity or absence of mistake or accident.

[*4]

n2 The conference with the trial judge regarding the admissibility of this testimony was as follows:

MR. SPIEGEL [counsel for defendant]: Your Honor, referring to 404(B) and 2945.59 in the Evidence Rules it says, in part, evidence of other crimes is not admissible to prove character. And it says it may be admitted for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. She is, I believe, trying to prove character here.

MS. POWERS [counsel for state]: Your Honor, it goes to prove motive. He was dealing out of his pocket. He never looks at the parts because he knows he can make some money on them. It sounds to me like it was his intent to buy stolen goods. I can clearly show that he knowingly received stolen property and that he knowingly issued phoney receipts and made sure VIN numbers were punched out and painted over. I can clearly show that he has told people to keep their mouth shut about this operation and this is someone who has known him for fifteen years.

MS. POWERS: This is in addition. No one ever told me the Defendant was going to testify and I didn't get upset about it. He denied everything so, you know, he is entitled to be breached on that. It goes to prove the Defendant's motive and monetary gain. I believe he stated himself, "I knew I could make some money on them, so I don't look at them."

[*5]

THE COURT: He said, "If I purchased them, I purchased them by mistake." She is trying to show absence of mistake. Overruled.

It is Long's testimony that forms the basis for Moyer's appeal. He contends that the testimony given by Long in the Summit County case is the

same as that which would be introduced to prove the charges contained in the Richland County indictment.

It is Long's testimony that forms the basis for Moyer's appeal. He contends that the testimony given by Long in the Summit County case is the same as that which would be introduced to prove the charged contained in the Richland County indictment. He further argues that the identical issue of his "guilty knowledge" will be central to the subsequent case and, since that issue has been decided favorably to him (as evidenced by his acquittal), relitigation of this issue violates the principle of collateral estoppel and should therefore be barred.

II.

Initially, we note that Moyer's petition for habeas relief was improperly brought under *28 U.S.C. § 2254*. That section applies only in post-trial situations to petitioners in custody "pursuant to the judgment of a state court." *28 U.S.C. § 2254* [*6] (b) (1982). However, Moyer is seeking pretrial relief. The magistrate to whom the district court referred this case proceeded to consider the petition pursuant to the provisions of *28 U.S.C. § 2241*(c)(3), n3 finding that justice required consideration of the petition solely on the ground that a claim of double jeopardy was asserted.

n3 § 2241. Power to grant writ

(c) The writ of habeas corpus shall not extend to a prisoner unless --

(3) He is in custody in violation of the Constitution or laws or treaties of the United States;

Petitioner's release on his own recognizance pending trial constitutes "custody" eligible for the protection of the writ of habeas corpus. *Delk v. Atkinson, 665 F.2d 90 (6th Cir. 1981)*.

We have acknowledged that the constitutional defense of double jeopardy represents an extraordinary circumstance warranting pretrial habeas review. *Gully v. Kunzman, 592 F.2d 283, 286 (6th Cir. 1979)*, cert. denied, *442 U.S. 924*, reh'g denied, *444 U.S. 889 (1979)*. Although petitioner's claim of collateral estoppel or issue preclusion does not technically involve [*7] a claim of double jeopardy, the Supreme Court has held that "this established rule of federal law [i.e., issue preclusion] is embodied in the fifth amendment guarantee against double jeopardy" as applied to the states through the fourteenth amendment in *Benton v. Maryland, 395 U.S. 784 (1969)*. *Ashe v. Swenson, 397 U.S. 436, 445 (1970)*. Therefore, Moyer's claim of issue preclusion is likewise cognizable under *28 U.S.C. § 2241*(c)(3), subject, of course, to the same constraints dictated by considerations of federalism as claims involving double jeopardy. *Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-91 (1973)*. Therefore, exhaustion of state remedies is a prerequisite to federal intervention under both sections 2254 and 2241. *Atkins v. Michigan, 644 F.2d 543, 546 (6th Cir. 1981)*. Since petitioner has exhausted hi state remedies with regard to his claims of issue preclusion, we find that federal review is appropriate despite the fact that he improperly categorized his claim as one for post-conviction relief. *Gully, 592 F.2d at 287*. Such review is necessary [*8] to fully satisfy the goal of the double jeopardy prohibition, which is avoidance of "the risk or hazard of trial conviction." *Price v. Georgia, 398 U.S. 323, 331 (1970)*. The Supreme Court has counseled that "if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge . . . must be reviewable before that subsequent exposure occurs." *Abney v. United States, 431 U.S. 651, 662 (1977)*. Since the identical policies animate a claim of issue preclusion, federal review is equally appropriate.

III.

Two separate theories are encompassed in Moyer's claim of issue preclusion. First, he contends that the issue of his "guilty knowledge," i.e., knowledge or reason to believe that parts he purchased were stolen, in his transactions with Charles Long which are the substance of the pending Richland County indictment was placed before the jury in the first trial when Long testified. Therefore, he argues, since the state placed petitioner's knowledge in the Long transactions in issue, and since the jury acquitted him, they necessarily believed that he did not know that the Long [*9] transactions involved stolen property.

Second, Moyer contends that, since both indictments relate to his method of operating his salvage business, and since that business constitutes a single course of conduct on his part, his acquittal in the Summit County case should stand as an acquittal of all allegations that he operated his business by knowingly receiving stolen automobile parts. He claims that the focus should not be on his individual transactions with Long or Mathews, but on his "continuing mental state" in issue by supplementing Mathew's testimony with that of Long. He asserts, therefore, that although the two indictments contain separate and distinct individual transactions, only one mental state was considered by the jury -- his guilty knowledge as to both the Summit and Richland County indictments. We deal with petitioner's allegations seriatim.

A. The Intent Issue

In constitutionalizing the doctrine of issue preclusion as encompassed within the double jeopardy clause of the fifth amendment, the Supreme Court held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same [*10] parties in any future lawsuit." *Ashe v. Swenson, 397 U.S. 436, 443 (1970).* In assessing claims of issue preclusion in those cases where acquittal was based upon a jury's general verdict, as in the case at bar, the Court specified that a reviewing court must

"examine the record of a prior proceedings, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."

*Id. at 444* (quoting *Sealfon v. United States, 332 U.S. 575, 579 (1948)).* In making this inquiry, it is important to note that issue preclusion can exist only as to those precise factual determinations which were previously litigated and essential to the judgment. n4 Once petitioner establishes a non-frivolous double jeopardy claim, the burden of proof shifts to the government to show it is not attempting to prosecute the same offense. n5 *United States v. Jabara, 644 F.2d 574, 576-77 (6th Cir. 1981).* [*11]

> n4 See generally Vestal, Issue Preclusion and Criminal Prosecutions, *65 Iowa L. Rev. 281 (1980).*
>
> n5 For a discussion of burden of proof problems in double jeopardy and issue preclusion cases, see Note The Burden of Proof in Double Jeopardy Claims, *82 Mich. L. Rev. 365 (1983).*

The test set forth by the Supreme Court in Ashe requires us to determine

1) the precise issue or issues which petitioner claims have been decided and which he now seeks to foreclose form consideration in the subsequent prosecution, and

2) whether a rational jury could have grounded its verdict upon an issue other than that which petitioner proffers.

At Moyer's trial, he was charged under *Ohio Rev. Code § 2913.51(A)* with

1) receiving property of another (from Cory Mathews)

2) knowing or having reasonable cause to believe

3) the property was stolen.

During trial, Moyer freely admitted to having purchased the auto parts ni question from Mathews, and Mathews testified that the parts sold to Moyer had, in fact, been stolen. Therefore, the only contested element of the crime charged was Moyer's knowledge and inferentially his intent [*12] to purchase stolen parts. Moyer argues that, as a result of the introduction of Long's testimony, the scope of the issue of his intent expanded to include not only his knowledge in the Summit County case but also the matters involved in the Richland County indictment. Therefore, he claims that the jury's acquittal necessarily decided the issue of his intent to purchase stolen parts from Long as well as Mathews; since the only disputed issue in the subsequent indictment will be that of his knowledge that the parts

he purchased from Long were stolen, he seeks to foreclose that issue and thereby bar the Richland County prosecution.

While Moyer's state of mind was clearly the central issue in his trial, Long's testimony was offered solely to rebut his denial of guilty knowledge and to show absence of mistake. While we acknowledge that the jury may well have rejected Long's testimony in acquitting Moyer, his guilt or innocence of the crimes alleged by Long was not before the jury nor was the jury required to decide that issue. Only Moyer's knowledge with regard to the parts purchased from mathews was before the jury and his acquittal may have been based on their decision that Mathews' [*13] testimony was not credible. Petitioner's state of mind with regard to his transactions with Long was not an "ultimate fact" required to be determined by the jury trying the charges in the SUmmit County indictment; therefore, issue preclusion cannot properly be invoked against the state as to the charges contained in the Richland County indictment.

B. The "Same Offense" Issue

Moyer's contention here is that his business transactions constitute a single, continuing course of conduct and, since his acquittal resulted in a finding of lack of guilty knowledge in his business dealings in general, the state should be barred form reprosecuting him in another county.

ONe of the primary guarantees of the double jeopardy clause is that of barring a state, a single sovereign, from making repeated attempts to convict an individual in different courts for acts which constitute the "same offense." *Waller v. Florida, 397 U.S. 387 (1970).* n6 A single course of conduct occurs when the incidents were part of the same criminal episode. *Dombkowski v. Johnson, 488 F.2d 68 (6th Cir. 1973).* Thus, the Ohio courts have held that a single course of criminal conduct [*14] exists in the crime of receiving stolen property when the "defendant had no knowledge of the number of thefts and received the property in a single continuous transaction from the same source at the same time." *State v. Sanders, 59 Ohio App. 2d 187, 192-93, 392 N.E.2d 1297, 1301-02 (Ct. App. 1978)* (emphasis added).

n6 For a thorough review of double jeopardy offense-defining tests, see Note, Twice in Jeopardy, *75 Yale L. J. 262 (1965).*

Petitioner relies heavily on the case of *United States v. Robinson, 588 F.2d 1041 (5th Cir.), cert. denied sub nom. Miller v. United States, 440 U.S. 982 (1979),* as support for his theory. Robinson involved an illegal gambling business prosecuted by the government under *18 U.S.C. § 1955,* which required that the business be in operation for a period in excess of thirty days or have a gross revenue of $2,000.00 in any single day and involve five or more persons in the operation of the business. The government sought conviction of the same individuals based on their gambling activities in the Dallas-Fort Worth area after they had been convicted [*15] on charges relating to interdependent operations in Amarillo, Texas. See *United States v. Clements, 588 F.2d 1030 (5th Cir.), cert. denied sub nom. Miller v. United States, 440 U.S. 982 (1979).* In barring the second prosecution, the court specifically noted that, in obtaining the first conviction, the government had relied on the entire network of operations, including the Dallas-Fort Worth area, in aggregating the requisite number of participants under the statute. *Robinson, 588 F.2d at 1044.* Therefore, the court found that the second prosecution involved the same continuing course of criminal activity of which defendants had already been found guilty. Id. n7 Reasoning by analogy, Moyer contends that his earlier acquittal has, in effect, immunized his business from further prosecution for receipt of stolen property, even though received from a separate individual.

n7 In so holding, the court pointed out that

[w]here the evidence shows a substantial linkage between two independent operations, the Government may treat the operations as one business for purposes of *18 U.S.C.A. § 1955.* If it chooses to do so, it may include all persons involved in the interrelated operations to arrive at the prerequisite five. It may not, however, without more treat the same persons as being involved in separate businesses in another prosecution to avoid double jeopardy.

[*16]

*Robinson*, 588 F.2d at 1044.

We find petitioner's reliance upon Robinson to be misplaced. That case is readily distinguishable in that it clearly involved a network of illegal operations being conducted from various cities. In the first prosecution, the government had chosen to aggregate these various operations to satisfy the requisites of the applicable statute. However, Moyer's business is conducted from one location, although he deals with suppliers from different areas of the state. It defies logic to say that because one is determined to be free of guilt for transactions with one individual occurring during one six month period, this automatically translates to a finding of innocence in the conduct of his business for the foreseeable future. We agree with the magistrate who, in rejecting Moyer's argument, explained that the evidence presented in his first trial could not have established one transaction with a single source, since each indictment covered transactions with only one source. Furthermore, the two indictments cover different time periods (with a slight overlap of two weeks), and it was clear that Mathews and Long transacted their business [*17] independently with Moyer. Clearly, petitioner's status as owner and operator of a business cannot insulate him from prosecutions involving factually distinct business transactions. Neither can a verdict as to his state of mind in his dealings with one individual shield him as to transactions with others through the assertion that all his business dealings in the course of operating his single business constitute the "same transaction."

AFFIRMED.