**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL BIES** | : | CASE NO.:  1:00CV682 |
| Petitioner, | : | JUDGE DLOTT |
| | : | MAGISTRATE JUDGE MERZ |
| v. | : | DEATH PENALTY CASE |
| **MARGARET BAGLEY,** Warden | : | |
| Respondent. | : | |

**RESPONDENT'S  MEMORANDUM IN OPPOSITION TO
PETITIONER'S  NINETEENTH CLAIM FOR RELIEF**

Respondent, Warden Margaret Bagley (hereinafter "Respondent"), opposes Petitioner, Michael Bies' (hereinafter "Bies"), nineteenth claim for relief. The reasons are set forth in the attached memorandum.

Respectfully submitted,

**JIM PETRO**
**Ohio Attorney General**

**CAROL A. ELLENSOHN (0074598)**
**CHARLES L. WILLE (0056444)**
Assistant Attorneys General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; Fax: (614)728-8600

**COUNSEL FOR RESPONDENT**

**MEMORANDUM IN OPPOSITION**

**I.    INTRODUCTION**

In 1992, Bies was tried, convicted and sentenced to death for the brutal murder of ten-year-old Aaron Raines in Hamilton County, Ohio.

On August 21, 2000, Bies filed a petition for a writ of habeas corpus with this Court. Doc. 7. On May 29, 2001, following completion of agreed-upon discovery and the filing of the state court record, Bies filed an amended petition. Doc. 22. On July 19, 2001, Bies filed a second amended petition. Doc. 26.

On June 20, 2002, the United States Supreme Court issued its decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that it is unconstitutional to execute the mentally retarded. On December 11, 2002, the Ohio Supreme Court issued a similar decision in *State v. Lott*, 97 Ohio St. 3d 303 (2002), establishing the law and procedures governing claims of mental retardation in the Courts of Ohio.

On December 26, 2002, Magistrate Judge Merz issued a Report and Recommendation ordering Bies to file a successive post-conviction petition pertaining to his unexhausted *Atkins* claim in the state court within thirty days. Doc. 53. On January 31, 2003, the District Court adopted Magistrate Judge Merz's Report and Recommendation. Doc. 57.

On May 2, 2003[1], Bies filed a successive post-conviction petition based on his *Atkins* claim in the state trial court. *See* Doc. 101, Supp. Apx., Vol. 8, pp. 15-28. Three months later, on August 15, 2003, Bies filed a motion for summary judgment as to his

---

[1] Although Bies' successive post-conviction petition pursuant to *Atkins v. Virginia* was file-stamped on May 1, 2003, the trial court docket sheet lists the file date as May 2, 2003.

third cause of action requesting the trial court find him mentally retarded. Doc. 101, Supp. Apx., Vol. 8, pp.181-194. On April 5, 2004, the state trial court denied Bies' motion for summary judgment holding that there were factual disputes as to Bies' IQ. Doc. 101, Supp. Apx., Vol. 9, pp. 69-71. On June 21, 2004, the state trial court denied Bies' renewed motion for summary judgment. Doc. 101, Supp. Apx., Vol. 9, 96.

On March 17, 2005, with his successive post-conviction petition still pending in the state trial court, Bies filed a motion to amend his petition for a writ of habeas corpus requesting to add a Double Jeopardy claim as his nineteenth claim for relief. Doc. 89. On April 11, 2005, this Court granted Bies' motion to amend his petition. Doc. 92. On April 18, 2005, Bies filed his third amended petition for a writ of habeas corpus. Doc. 93.

On June 10, 2005, Bies filed a motion to bifurcate his nineteenth claim for relief. Doc. 98. On September 2, 2005, this Court granted Bies' motion to bifurcate and issued a briefing schedule. Doc. 102.

On September 16, 2005, Bies filed his brief in support of his nineteenth claim for relief. Doc. 103. Respondent herein opposes Bies' nineteenth claim for relief.

**II.    ARGUMENT**

Contrary to Bies' allegations, the trial court did not decide the factual issue of whether Bies' is mentally retarded for the purposes of the Eighth Amendment ban, i.e., whether due to his level of intellectual and adaptive functioning, his execution would be cruel and unusual. Bies claims that since there is evidence in the record that his IQ is below 70, the State is now prevented from litigating his mental retardation claim based on double jeopardy and collateral estoppel. However, as the state trial court held in its April 5, 2004 denial of Bies' motion for summary judgment, "there are disputes of fact as

to the IQ of Mr. Bies and as to the ultimate determination of whether he is or is not mentally retarded." Doc. 101, Supp. Apx., Vol. 9, p. 69.

     **A.    Bies' Claim of Mental Retardation is Governed by the Principles Set Forth in *State v. Lott*.**

As noted above, Bies filed his successor petition for post-conviction relief in the Hamilton County Court of Common Pleas on May 2, 2003, based on the new federal right recognized by the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304 (2002). Consequently, this Court stayed Bies' habeas petition to allow him to litigate his mental retardation claim in the state courts.

The High Court held in *Atkins* that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. *Id*. at 321. However, the Court in *Atkins* did not establish procedures for determining whether an individual is "mentally retarded" for purposes of being ineligible for the death penalty. Rather, the Court left it to each individual state "to develop 'appropriate ways to enforce the constitutional restrictions' on executing the mentally retarded." *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002) (quoting *Atkins*, 536 U.S. at 317). Consequently, the Sixth Circuit held that "Ohio should have the opportunity to develop its own procedures" for resolving *Atkins* claims. *Hill*, 300 F.3d at 682.

The Ohio Supreme Court did just that in *State v. Lott*, 97 Ohio St.3d 303 (2002). The Court in *Lott* adopted the clinical definitions of mental retardation from the American Association of Mental Retardation (AAMR) and the American Psychiatric Association (APA), cited with approval by the United States Supreme Court in *Atkins*. *Id*. at 305. These definitions require the following for a mental retardation diagnosis:

        1.  significantly sub-average intellectual functioning,

4

    2. significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and

    3. onset before the age of 18.

*Id*.

The defendant bears the burden of establishing that he is mentally retarded by a preponderance of the evidence. *Id*. at 307. "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on [the] issue [of mental retardation]." *Id*. at 305. There is a rebuttable presumption that a defendant is not mentally retarded if he or she has an IQ score above 70. *Id*.

It is the trial court, not the jury, who decides the issue of mental retardation. *Id*. at 306. When presented with an *Atkins* claim, the trial court should conduct its own de novo review of the evidence in determining whether the defendant is mentally retarded. *Id*. *Lott* provided that, in deciding this issue, a trial court should rely on professional evaluations of a defendant's mental status, consider expert testimony and appoint experts, if necessary. *Id*.

    **B.    Bies Has Not Met His Burden under *Lott* for Establishing He is Mentally Retarded.**

Under *Lott,* three factors are required to establish a diagnosis of mental retardation. Bies has failed to meet any of the three factors.

    **1.    No conclusive evidence that Bies' suffers from significantly sub-average intelligence.**

An individual's intelligence or IQ is the first factor to be considered when determining mental retardation under *Lott*. In Bies' case, there is conflicting evidence in the record regarding his IQ. Doc. 101, Supp. Apx. Vol. 9, p. 69. There is evidence that indicates that "Bies has an IQ below 70: 1) February 6, 1985, examination shows IQ of

50 [Doc. 101, Supp. Apx., Vol. 8, p. 119]; 2) September 11, 1992 report regarding NGRI comments that Dr. Winters found an IQ of 68 [Doc. 101, Supp. Apx., Vol. 8, p. 101]; and 3) 1992 NGRI report finds full scale IQ of 68 with performance IQ at 67 and verbal IQ at 70 [Doc. 101, Supp. Apx., Vol. 8, p. 119]." *Id*.

However, there is also evidence that Bies has an IQ *above* 70: 1) October 14, 1980, examination shows IQ of 78 [Doc. 101, Supp. Apx. Vol. 3, p. 126]; 2) February 1984, examination shows IQ of 74 [Doc. 9, Apx., Vol. IV, p. 74]; 3) September 1996, Dr. Kristen Haskins' examination shows IQ of 72 [Doc. 9. Apx., Vol. V, p. 8]. *Id*. Thus, there is not conclusive evidence that Bies' suffers from significantly sub-average intelligence. In fact, Bies most recent examination in 1996 places his IQ above 70. Consequently, Bies would have the burden of overcoming the rebuttal presumption that he is not mental retarded since his IQ is above 70.

Moreover, all of Bies' testing was done prior to *Atkins* and *Lott*, so it is unclear what standards the experts used to determine his mental intelligence. Doc. 101, Supp. Apx. Vol. 9, pp. 69-70. In addition, much of Bies' earlier testing was done to determine insanity and not mental retardation. *Id*., p. 70.

### 2. Bies does not suffer from significant limitations in regards to his adaptive skills.

Adaptive skills is another factor to be considered when determining mental retardation. Under *Lott*, Bies would have to have significant limitations in two or more adaptive skills, such as, communication, self-care, and self-direction. However, as the trial court found in its first post-conviction decision, Bies "is capable [and has] of living and functioning on his own." Doc. 9, Apx. Vol V, p. 437.

6

For example, Bies was married at the age of 18 and the couple lived together for approximately 3 years. Doc. 101, Supp. Apx., Vol. 8, p.132. He has three children: two children by his wife and a third child by another women. *Id.* p. 34. Bies has held several jobs. *Id.*, p. 132. He has worked as a private security guard, an undercover security person at a night club, as well as, worked in construction. *Id.*

Moreover, in Dr. Winter's 1992 NGRI Report, she states that Bies "goes about the community unassisted. He carries out the activities of daily life fairly independently." Id., p. 36. Thus, he is able to take of himself and has the skills necessary to function in society. Consequently, Bies does not suffer from significant limitations in regards to his adaptive skills.

### 3. No conclusive evidence that Bies' suffered from significantly sub-average intelligence before the age of 18.

Finally, onset before the age of 18 is the last factor to be considered when determining mental retardation under *Lott*. Again, in Bies' case, there is conflicting evidence regarding his IQ before the age of 18.

For example, Bies' February 6, 1985 examination at age 12 shows an IQ of 50 [Doc. 101, Supp. Apx., Vol. 8, p. 119], while his October 14, 1980 examination at age 8 shows an IQ of 78 [Doc. 101, Supp. Apx. Vol. 3, p. 126] and his February 1984 examination at age 11 shows an IQ of 74 [Doc. 9, Apx., Vol. IV, p. 74]. Hence, there is no conclusive evidence of Bies' IQ before the age of 18. Therefore, Bies cannot establish that he was mentally retarded before the age of 18.

Consequently, since Bies has failed to meet any of the three required factors under *Lott*: significant sub-average intelligence, significant limitation in two or more adaptive

skills and onset before the age of 18, he has failed to establish a diagnosis of mental retardation.

### C. BIES' MENTAL RETARDATION CLAIM IS UNEXHAUSTED

Federal habeas is not a *de novo* appeal where new claims are brought freely for the first time. A federal habeas petitioner must first fairly present his federal constitutional claims to the highest state court for resolution before turning to the federal courts for relief. *Ex Parte Hawk*, 321 U.S. 114, 116-117 (1944); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

The process of presenting a constitutional claim to the state's highest court is called exhaustion. Exhaustion is a quasi-jurisdictional requirement that promotes the appropriate exercise of federal power. *See Granberry v. Greer*, 481 U.S. 129, 131 (1987); *Strickland v. Washington*, 466 U.S. 668, 684 (1984). Exhaustion is required if a state supreme court provides an opportunity to review the claim on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

The exhaustion requirement is satisfied if it is clear that claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 160-161 (1996). Before the AEDPA, a petition containing unexhausted claims had to be dismissed by the District Court absent exceptional or unusual circumstances. *O'Guinn v. Dutton*, 88 F.3d 1409, 1412-13 (6th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1084 (1997); *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Neal v. Gramley*, 99 F.3d 841, 846 (7th Cir. 1996), *cert. denied*, 118 S. Ct. 104 (1997); *Victor v. Hopkins*, 90 F.3d 276, 282 (8th Cir. 1996). A petitioner bears the burden of showing that he has exhausted his claims. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

Under the AEDPA, if a court finds that a claim is unexhausted, it cannot grant relief. 28 U.S.C. §2254(b)(2). *See also*, *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998), *cert. denied*, 120 S. Ct. 224 (1999); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1845 (1998); *Hoxie v. Kerby*, 108 F.3d 1239, 1242-42 (10th Cir.), *cert. denied*, 118 S. Ct. 126 (1997).

Pursuant to the exhaustion requirement, this Court ordered Bies to file a successive post-conviction petition in state court to exhaust his mental retardation claim. Docs. 53 & 57. As noted above, Bies filed his successive post-conviction petition in the state trial court. *See* Doc. 101, Supp. Apx., Vol. 8, pp. 15-28. Nevertheless, Bies has failed to meet the exhaustion requirement because his successive post-conviction petition is still pending in the state trial court.

  **D.** **Bies' Mental Retardation Claim Is Not Precluded By Double Jeopardy or Collateral Estoppel**

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. The Supreme Court of the United States has held that it protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See Monge v. California*, 524 U.S. 721, 727-728 (1998), citing *North Carolina v. Pearce,* 395 U.S. 711 (1969). Collateral estoppel in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *See Harris v.*

9

*Washington*, 404 U.S. 55, 56-57 (1971), citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) and *Benton v. Maryland,* 395 U.S. 784 (1969).

Bies claims that the Double Jeopardy Clause bars the state from determining, in a subsequent proceeding, whether his death sentence is precluded by the Eighth Amendment, due to his alleged mental retardation. The State is not endeavoring to try Bies for the same offense after acquittal or conviction or to impose multiple criminal punishments for the same offense. Bies was not acquitted of capital murder, and it is Bies, and not the State, who seeks a new punishment determination. Further, Bies cannot again be sentenced to death unless his previously adjudged death sentence is vacated, based upon a ground that permits re-sentencing as a way of curing any constitutional error found. Moreover, "lack of mental retardation" is not an element of aggravated murder in Ohio. *See State v. Lott*, 97 Ohio St. 3d 303 (2002) (whether execution is precluded because the defendant is mentally retarded is a question for the trial judge and not the jury).

For identical reasons, collateral estoppel plainly is inapplicable. Whether Bies is mentally retarded, as defined for the purposes of the Eighth Amendment, is not "an issue of ultimate fact [that] has once been determined by a valid and final judgment." *Washington v. Harris*, 404 U.S. at 56-57. Quite obviously, no such determination could have been made before the Supreme Court of the United States held that mental retardation is a bar to execution under the Eighth Amendment, and before the Supreme Court of Ohio determined the definition of mental retardation for the purposes of the Eighth Amendment. And, as lack of mental retardation is not an element of aggravated

10

murder, it is not an "ultimate" fact as defined for the purposes of the Double Jeopardy Clause.

Consequently, the State cannot be barred by double jeopardy or collateral estoppel from litigating Bies' mental retardation claim under a new standard of law. As the trial court correctly pointed out, "the issues were not identified and the analysis of *Lott* and *Atkins* had not yet been established by the Courts" at the time of Bies' prior IQ testing. Doc. 101, Supp. Apx. Vol. 9, p. 71.

## IV. CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court *deny* Bies' nineteenth claim for relief.

Respectfully submitted,

**JIM PETRO**
**Ohio Attorney General**

s/Carol A. Ellensohn
**CAROL A. ELLENSOHN (0074598)**
**CHARLES L. WILLE (0056444)**
Assistant Attorneys General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; Fax: (614) 728-8600

**COUNSEL FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing, *Respondent's Memorandum in Opposition to Petitioner's Nineteenth Claim for Relief*, was filed electronically, this *30th* day of *September, 2005*. Notice of this filing will be sent to all parties including: S. Scott Haynes, Hallowes, Allen and Haynes, 6445 East Livingston Avenue, Reynoldsburg, Ohio, 43068 and Randall Porter, Ohio Public Defender's Office, 8 East Long Street, Columbus, Ohio 43215, by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

    s/Carol A. Ellensohn
**CAROL A. ELLENSOHN (0074598)**
Assistant Attorney General