**STATE OF OHIO, Plaintiff-Appellee v. GREGORY LOTT, Defendant-Appellant**

**No. 54537**

**Court of Appeals of Ohio, Eighth Appellate District, Cuyahoga County**

*1989 Ohio App. LEXIS 969*

**March 16, 1989, Decided**

**PRIOR HISTORY:**

[*1]

CHARACTER OF PROCEEDING: Criminal appeal from Common Pleas Court, Nos. CR-211002, 211261, and CR-212720.

**DISPOSITION:**

JUDGMENT: Affirmed in part as modified, reversed in part and remanded.

**LexisNexis(R) Headnotes**

**COUNSEL:**

John T. Corrigan, Esq., Cuyahoga County Prosecutor, Carmen M. Marino, Esq., David J. Briggs, Esq., Assistant Prosecuting Attorneys, Cleveland, OH, For Plaintiff-Appellee

Patricia M. Walsh, Esq., David L. Doughten, Esq., Walsh & Doughten, Inc., L.P.A., Cleveland, OH, For Defendant-Appellant

**JUDGES:**

DAVID T. MATIA, JUDGE, ANN McMANAMON, C.J., AND NAHRA, J., CONCUR.

**OPINIONBY:**

MATIA

**OPINION:**

JOURNAL ENTRY AND OPINION

DAVID T. MATIA, J.:

I. SYNOPSIS

The defendant-appellant, Gregory Lott, appeals his conviction for the aggravated murder and other crimes perpetrated against John McGrath.

II. THE FACTS

A. CIRCA 1983

On August 6, August 23, and August 24, 1983, the home of John McGrath, which was located at 14809 Ardenall, East Cleveland, Ohio, was burglarized. Upon responding to the reports of these burglaries, the two investigators of the East Cleveland police department devised a plan in an attempt to obtain the

EXHIBIT
A

1989 Ohio App. LEXIS 969, *

gerprints of the burglar who had broken into John McGrath's home. This plan involved the placement of a quarter under a clean [*2] drinking glass, which was devoid of any fingerprints, on the dining room table located in John McGrath's home.

Approximately eight days later, on September 7, 1983, the home of John McGrath was once again burglarized for a fourth time. The burglar lifted the glass covering the quarter off of the dining room table and left his fingerprints upon the drinking glass. Several latent fingerprints were recovered from the drinking glass. However, the fingerprints did not match any existing fingerprints on file of criminals or suspects known by the police at that time.

## B. CIRCA 1986

### 1. THE LAST DAY JOHN MCGRATH WAS SEEN ALIVE

On Saturday, July 12, 1986, John McGrath visited the Severance branch of Horizon Savings and Loan wherein he negotiated a check in the amount of $ 21.00. Patricia Hill, the head teller of the Severence branch of Horizon Savings and Loan, testified that John McGrath appeared to be in good health and spirits on that date.

### 2. THE THIRD DAY THEREAFTER

On Monday, July 14, 1986, at approximately 9:00 A.M., Diedra Coleman, who resided at 1700 Hillview Road, Cleveland, Ohio, observed the appellant operating a black two-door Ford Escort near her home. Diedra Coleman continued [*3] to observe the appellant sitting in the black automobile and then exited her home in an attempt to gain a better view of the appellant's face. Upon taking a walk with her five-year-old son and dog, Diedra Coleman managed to directly view the appellant's face as he was seated in the black automobile. Thereafter, Diedra Coleman contacted the Cleveland police and provided a description of the automobile which the appellant was driving and its

license plate, Ohio license plate 928-GUP. The car was subsequently discovered to belong to John McGrath.

Later on that Monday, July 14, 1986, the appellant left Diedra Coleman's neighborhood at approximately 11:20 a.m. but returned at 11:50 a.m. Diedra Coleman then observed the appellant exit the black automobile and enter the yard of a neighbor, Esther Turk. Upon seeing appellant enter Turk's yard, Diedra Coleman immediately telephoned the police. She then observed the appellant running from Turk's backyard. Subsequently, Diedra Coleman, a retired artist, provided a drawing or sketch of the appellant to the police and subsequently was able to positively identify the appellant through a photograph identification process.

At approximately 2:10 p.m. [*4] on the afternoon of that same day, Monday, July 14, 1986, Diedra Coleman again provided the license plate number of the black Ford Escort to the Cleveland police who in turn determined that the license plate number of Ohio 928-GUP was registered to John McGrath. That afternoon, the Cleveland police attempted to contact John McGrath concerning his automobile by visiting the McGrath home. However, on that afternoon, Monday, July 14, 1986, no one at the McGrath home answered the Cleveland Police officers' efforts to gain entrance to the McGrath home.

### 3. THE FOURTH DAY THEREAFTER

On the next day, Tuesday, July 15, 1986, the Cleveland police contacted the East Cleveland police department with information concerning the operation of John McGrath's motor vehicle by the appellant and the failure of John McGrath to answer his door on the previous day.

On the next day, Tuesday, July 15, 1986, two police officers of the East Cleveland police department received a radio communication from the East Cleveland police department to

check the McGrath home and determine whether John McGrath was at home and his condition. Again the police officers failed to obtain a response at the front door. The police [*5] officers discovered that the rear door to the McGrath home was open. Upon entering the home through the rear door, the police officers discovered that the kitchen and adjoining rooms had been ransacked. Further exploration of the home by the police officers at that time resulted in the discovery of John McGrath lying face down, bloody, but alive, conscious and burned extensively about the body on the floor of the front bedroom. Additionally, the police officers discovered an uncapped bottle of lamp oil laying on the bed, a piece of blue telephone cord lying near John McGrath, a broken basement window, and a heavily damaged kitchen-basement door inside the kitchen.

Upon conducting an investigation for fingerprints and/or other evidence, it was discovered that the appellant's fingerprints were imprinted on the dresser located in the bedroom where John McGrath was found. The appellant's fingerprints were also discovered upon a church envelope which was found on the kitchen table. Latent shoeprints, found in the bedroom where John McGrath was discovered, were determined to match the soles of tennis shoes confiscated from the appellant upon his arrest on July 30, 1986. Comparison of the [*6] fingerprints found on the bedroom dresser and the church envelope found on the kitchen table also coincided with the latent fingerprints recovered from the drinking glass as found in the home of John McGrath three years earlier in 1983.

Thereafter on that same day, Tuesday, July 15, 1986, upon discovery of his serious condition and burns, John McGrath was transported by ambulance to Huron Road Hospital. After initial treatment at Huron Road Hospital, John McGrath was transferred to the burn unit of Cleveland Metropolitan Hospital on the same day Tuesday, July 15, 1986, where eight days later on Wednesday, July 23, 1986, he expired as a result of bronchopneumonia.

The Cuyahoga County Coroner ruled that the death of John McGrath was caused by bronchopneumonia which was precipitated by first, second, and third degree burns. In addition, the Cuyahoga County Coroner ruled that John McGrath's death was a homicide.

On July 30, 1986, the appellant was arrested by the Cleveland police while operating his own automobile in the city of Cleveland. A routine inventory search of the appellant's motor vehicle resulted in the seizure of one pair of red and black jogging pants and one pair of red [*7] and black tennis shoes.

III. THE INDICTMENTS

The appellant was thrice indicted.

A. THE FIRST INDICTMENT - CR-211002

On August 8, 1986, the appellant was first indicted by the grand jury of Cuyahoga County in CR-211002 for the offenses of:

1) Count One aggravated burglary of Rosa Augustine's occupied structure in violation of R.C. 2911.11 with an aggravated felony specification and a violence specification;

2) Count Two aggravated robbery of Rosa Augustine in violation of R.C. 2911.01 with an aggravated felony specification and a violence specification;

3) Count Three felonious assault of Rosa Augustine in violation of R.C. 2903.11 with an aggravated felony specification and a violence specification;

4) Count Four kidnapping of Rosa Augustine in violation of R.C. 2905.01 with a felony specification and a violence specification;

5) Count Five aggravated murder of John McGrath in violation of R.C. 2903.01 with a

felony murder specification which enumerated the felonies of kidnapping, aggravated robbery, and aggravated burglary, and an aggravated felony specification;

6) Count Six aggravated burglary of John McGrath's occupied structure in violation of R.C. 2911.11 with an [*8] aggravated felony specification and a violence specification;

7) Count Seven aggravated robbery of John McGrath in violation of R.C. 2911.01 with an aggravated felony specification and a violence specification;

8) Count Eight kidnapping of John McGrath in violation of R.C. 2905.01 with an aggravated felony specification and a violence specification; and

9) Count Nine aggravated arson by creating a substantial risk of serious physical harm to John McGrath in violation of R.C. 2909.02 with an aggravated felony specification and a violence specification.

On August 12, 1986, the appellant was arraigned in CR-211002 wherein a plea of not guilty was entered to the indictment. In addition, the appellant was found to be indigent and counsel was immediately appointed to represent him.

B. THE SECOND INDICTMENT - CR-211261

On September 5, 1986, the appellant was indicted by the grand jury of Cuyahoga County for a second time in CR-211261 for the offense of:

1) Count One aggravated burglary of John McGrath's occupied structure in violation of R.C. 2911.11;

2) Count Two petty theft of property from John McGrath in violation of R.C. 2913.02;

3) Count Three aggravated burglary of [*9] Roy Pool's occupied structure in violation of R.C. 2911.11 with an aggravated felony specification;

4) Count Four felonious assault of Roy Pool in violation of R.C. 2903.11 with an aggravated felony specification and a violence specification;

5) Count Five aggravated robbery of Julia Pool in violation of R.C. 2911.01 with an aggravated felony specification and a violence specification;

6) Count Six aggravated burglary of Esther Turk's occupied structure in violation of R.C. 2911.11 with an aggravated felony specification;

7) Count Seven aggravated robbery of Esther Turk in violation of R.C. 2911.01 with an aggravated felony specification and two violence specifications;

8) Count Eight aggravated burglary of Jean Mangino's occupied structure in violation of R.C. 2911.11 with an aggravated felony specification;

9) Count Nine aggravated robbery of Jean Mangino in violation of R.C. 2911.01 with an aggravated felony specification;

10) Count Ten kidnapping of Jean Mangino in violation of R.C. 2905.01 with an aggravated felony specification;

11) Count Eleven gross sexual imposition upon Jean Mangino in violation of R.C. 2907.05 with a violence specification; and

12) Count [*10] Twelve aggravated robbery of Jean Mangino in violation of R.C. 2911.01 with an aggravated felony specification.

On September. 22, 1986, the appellant was arraigned in CR-211261 wherein a plea of not guilty was entered to the indictment. Again, the appellant was also found to be indigent and counsel was immediately appointed to represent him.

## C. THE THIRD INDICTMENT - CR-212720

Finally, on October 17, 1986, the appellant was indicted by the grand jury of Cuyahoga County in a third case, CR-212720, for one count of aggravated arson, which involved John McGrath, in violation of *R.C. 2909.02* with both an aggravated felony specification and an aggravated felony specification, On October 21, 1986, the appellant was arraigned in CR-212720 wherein a plea of not guilty was entered to the indictment.

As in CR-211022 and CR-211261, the appellant was found to be indigent in CR-212720 and counsel was appointed to represent the appellant.

## IV. THE SEVERANCE OF COUNTS FOR TRIAL

Prior to trial, a motion for severance was made by the state of Ohio with regard to the counts of CR-211022, CR-211261, and CR-212720. The trial court granted the motion for severance and trial proceeded with regard to counts [*11] five, six, seven and eight of CR-211022; counts one and two of CR-211261; and the one count of CR-212720.

## V. THE 'GUILT OR INNOCENCE' TRIAL

On June 23, 1987, the appellant waived his right to a trial before a jury and on July 13, 1987, trial was commenced before a three judge panel.

Pursuant to the granting of the motion for severance, offenses relating only to John McGrath were tried before the three judge panel. All other severed offenses still remain pending and await trial.

## VI. THE VERDICTS AND *CRIM. R. 29* COURT DISMISSAL OF COUNT 8 OF THE KIDNAPPING OF JOHN MC GRATH (CR-211022) BY THE THREE JUDGE PANEL

On July 17, 1987, the three judge panel returned the following verdicts:

CR-211022:

1) Count Five guilty of the aggravated murder of John McGrath, the felony murder specification, and the aggravated felony specification;

2) Count Six guilty of the aggravated burglary of John McGrath's occupied structure, the aggravated felony specification, and the violence specification;

3) Count Seven guilty of the aggravated robbery of John Mc Grath, the aggravated felony specification, and the violence specification;

4) Count Eight dismissed the charge of kidnapping of John McGrath [*12] at trial pursuant to appellant's *Crim. R. 29(A)* motion for acquittal.

CR-211261:

1) Count One guilty of the aggravated burglary of John McGrath's occupied structure; and

2) Count Two guilty of petty theft from John McGrath.

CR-212720:

1) Count One guilty of aggravated arson by creating a substantial risk of serious physical harm to John McGrath, the aggravated felony specification, and the violence specification.

Pursuant to a *Crim. R. 29* motion Count Eight of CR-21102 was dismissed.

## VII. THE MITIGATION HEARING

1989 Ohio App. LEXIS 969, *

On July 27, 1987, a mitigation hearing was conducted before the three judge panel and on July 29, 1987, the court found that the state had proved beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and hence the imposition of the death sentence was mandated.

## VIII. THE SENTENCES

Thereafter, the appellant was sentenced as follows:

CR-211002:

1) Count Five aggravated murder; sentenced to death for the aggravated murder of John McGrath;

2) Count Six aggravated burglary with specifications; incarceration within the Chillicothe Correctional Institute, Chillicothe, Ohio for a term of 15 years to 25 [*13] years with a fine of $ 10,000; and

3) Count Seven aggravated robbery with specifications; incarceration within the Chillicothe Correctional Institute, Chillicothe, Ohio for a term of 15 years to 25 years with a fine of $ 10,000.

CR-211261:

1) Count One aggravated burglary; incarceration within the Chillicothe Correctional Institute, Chillicothe, Ohio for a term of 15 years to 25 years with a fine of $ 10,000; and

2) Count Two petty theft; incarceration within the Chillicothe Correctional Institute, Chillicothe, Ohio for a term of 6 months and a fine of $ 1,000.

CR-212720:

1) Count One aggravated arson with specifications; incarceration within the Chillicothe Correctional Institute, Chillicothe Ohio for a term of 15 years to 25 years with a fine of $ 10,000.

All sentences of incarceration were ordered to be served consecutively.

## IX. THE TIMELY APPEAL

Defendant-appellant, Gregory Lott, appeals from his conviction by a three judge panel for the offenses of:

1. aggravated murder with a felony murder specification;

2. aggravated burglary, with both an aggravated felony specification and a violence specification;

3. aggravated robbery, with both a felony specification [*14] and violence specification;

4. aggravated burglary, petty theft, and aggravated arson with both a felony specification and a violence specification.

The appellant further appeals his sentence of 15 to 25 years for the offense of aggravated burglary (CR-21161) and his sentence of death.

## X. ASSIGNMENT OF ERROR NO. I

The appellant's initial assignment of error:

"THE TRIAL COURT ERRED BY PERMITTING THE JOINDER OF 1983 AGGRAVATED BURGLARY AND THEFT CHARGES WITH 1986 AGGRAVATED MURDER, AGGRAVATED ARSON, KIDNAPPING, AGGRAVATED ROBBERY AND AGGRAVATED BURGLARY CHARGES AND THEREBY VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW."

A. THE FIRST ISSUE RAISED BY ASSIGNMENT OF ERROR NO. I: PREJUDICIAL JOINDER - OTHER ACTS

Appellant's Assignment of Error No. I raises the issue of whether the joinder of various counts from the several indictments in this case was prejudicial. We think not.

The appellant argues that the trial court erred in allowing the joinder for trial of the 1983 aggravated burglary and petty theft charges and the more grievous crimes of the 1986 aggravated murder, aggravated arson, aggravated burglary, aggravated robbery, and kidnapping.

To support this assignment of [*15] error the appellant first argues that had not the charges relating to the years 1983 and 1986 been joined for trial, that the evidence of the 1983 aggravated burglary and petty theft charges would not have been admissible as "other acts" at the trial of the charges relating to 1986. In the second issue argued re prejudicial joinder, herein below, The appellant also argues that the evidence as relating to the offenses of 1983 and 1986 were 'accumulated' by the trier of fact (a three judge panel) to arrive at a verdict of guilty with regard to the principal offense of aggravated murder.

B. THE LAW RE PREJUDICIAL JOINDER

*Crim. R. 8(A)*, which deals with the joinder of offenses, states:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." (Emphasis added.)

In addition, *Crim. R. 14*, which deals with [*16] relief from prejudicial joinder, held:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendant which the state intends to introduce in evidence at the trial.

"When two or more persons are jointly indicted for a capital offense, each of such persons shall be tried separately, unless the court orders the defendants to be tried jointly, upon application by the prosecuting attorney or one or more of the defendants, and for good cause shown."

The Supreme Court of Ohio, in *State v. Torres (1981), 66 Ohio St. 2d 340, at 342,* with regard to the issue of prejudicial joinder, determined:

"The principal question is whether defendant Paul Torres was prejudiced, [*17] as he claims and as the Court of Appeals agreed, by the refusal of the trial court to grant him separate trials of the two indictments, under *Crim. R. 14*. He implicitly concedes that the trial court could in the first instance join the two indictments for trial under *Crim. R. 13* because the charges could have been originally joined in one indictment under *Crim. R. 8(A)* as offenses of the same or similar character or offenses based on two transactions connected together. As we stated in *State v. Thomas (1980), 61 Ohio St. 2d 223, 225,* joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and

minimizing the possibility of incongruous results in successive trials before different juries. The defendant, however, alleges that the joinder in his case was prejudicial, under *Crim. R. 14*, and that he should have had two separate trials.

"A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his rights were prejudiced. *State v. Roberts (1980), 62 Ohio St. 2d 170, 175; State* [*18] *v. Thomas, supra, at 225.* He must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial. *Opper v. United States (1954), 348 U.S. 84, 95;* Wright, Federal Practice and Procedure 468, Section 227. More specifically, he has the burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." (Footnotes omitted).

Thus, in order to substantiate a claim of prejudicial joinder, the appellant must affirmatively demonstrate that his rights were prejudiced and that the trial court abused its discretion in refusing to segregate the charged offenses for purposes of trial.

The appellant's initial claim of prejudice with regard to the issue of misjoinder, involves the argument that evidence of the 1983 offenses of aggravated burglary and petty theft, as "other acts," would not have been admissible at the trial of the 1986 offenses if joinder of the 1983 and 1986 offenses had not been permitted by the trial court.

*Evid. R. 404(B),* which deals with other crimes, wrongs or acts, provides that:

"Evidence of other crimes, wrongs, or acts is [*19] not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident."

*Evid. R. 404(B)* prohibits the introduction of evidence of "other acts" of the defendant at trial in order to prove that the defendant possessed a proclivity for criminal activity and that the defendant acted in conformity with said proclivity.

The Supreme Court of Ohio, with regard to the application of *Evid. R. 404(B),* held in *State v. Mann (1985), 19 Ohio St. 3d 34, at 36,* that:

"Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts. *Evid. R. 404(B); State v. Adams (1978), 53 Ohio St. 2d 223 [7 O.O.3d 393],* paragraph three of the syllabus, vacated in part on other grounds (1978), *439 U.S. 811.* As we observed in *State v. Lytle (1976), 48 Ohio St. 2d 391 [2 O.O.3d* [*20] *495],* at 401-402, vacated in part on other grounds (1978), *438 U.S. 910:*

"'Generally, the prosecution is forbidden to introduce initially evidence of the accused's bad character, unless and until the accused gives evidence of his good character. Although character is not irrelevant, the danger of prejudice outweighs the probative value of such evidence. The danger of prejudice is at its highest when character is shown by other criminal acts, and hence the rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show a probability that the individual committed the crime on trial because he is a man of criminal character. * * *'

"*Evid. R. 404(B)* specifically allows for admission of such evidence for certain other purposes, 'such as proof of motive opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Cf. *State v.*

*Curry (1975), 43 Ohio St. 2d 66* (to demonstrate similar scheme, plan or system and to prove identity). As such, other-act evidence '* * * is admissible, not because it shows that the defendant is crime prone, or even [*21] that he has committed an offense similar to the one in question, but in spite of such facts. * * *' *State v. Burson (1974), 38 Ohio St. 2d 157, 158 [67 O.O.2d 174]*." (Footnote omitted.)

However, as stated in Mann, evidence of "other acts" of the defendant may be used to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

It would have been permissible to allow testimony at trial with regard to the 1983 offenses if the 1983 and 1986 offenses had been severed for trial. Such evidence was relevant to the issues of the appellant's intent, purpose, opportunity and identity. Cf. *State v. Snowden (1976), 49 Ohio App 2d 7; State v. Burson (1974), 38 Ohio St. 2d 157;* State v. Canitia (January 19, 1984), Cuyahoga App. No. 46946, unreported.

Thus there was no violation of *Evidence Rule 404(B)* and this aspect of Assignment of Error No. I is not well taken.

## C. THE SECOND ISSUE RAISED BY ASSIGNMENT OF ERROR NO. I PREJUDICIAL JOINDER: ACCUMULATION OF EVIDENCE

The appellant's second claim of prejudice through the cumulation of evidence to support a conviction on the offense of aggravated [*22] murder must fail. Separate and distinct evidence was presented by the state with regard to 1983 offenses of aggravated burglary and petty theft and the 1986 offenses of aggravated murder, aggravated burglary, aggravated robbery, and aggravated arson. Evidence with regard to the offenses of 1983 involved basically the plan devised by the East Cleveland police to place a quarter under a drinking glass, anticipation of its removal by the thief, and discovery of the

appellant's fingerprints upon the drinking glass. The evidence was uncomplicated and bore directly only upon the 1983 offenses of aggravated burglary and petty theft. There was no danger of transmuting this evidence supporting a conviction of the 1986 offenses of aggravated murder, aggravated burglary, aggravated robbery, and aggravated arson particularly in light of trial before a three judge panel. Cf. *State v. Post (1987), 32 Ohio St. 3d 380; State v. White (1968), 15 Ohio St. 2d 146.*

## D. APPELLANT'S WAIVER OF ERROR AT TRIAL

A review of the transcript further, revealed that the appellant raised no objection to the joinder of the charges relating to the years of 1983 and 1986 at trial and thus the alleged [*23] error of joinder is waived. *State v. Williams (1977), 51 Ohio St. 2d 112.*

## E. OUR CONCLUSION AS TO BOTH ISSUES RAISED BY ASSIGNMENT OF ERROR NO. I: PREJUDICIAL JOINDER

Based upon the proper and non-prejudicial joinder of the 1983 and 1986 offenses for trial, the permissibility of introducing evidence of the 1983 offenses as "other acts" at the trial of the 1986 offenses, the non-accumulation of evidence argued, the defendant's waiver of this point by reason of failing to object at trial, and the failure to demonstrate any prejudicial effect of joinder or abuse of discretion on the part of the trial court, the appellant's first assignment of error is not well taken.

## XI. ASSIGNMENT OF ERROR NO. II

The appellant's second assignment of error is that:

"THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING IRRELEVANT AND PREJUDICIAL EVIDENCE AND THEREBY VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW."

1989 Ohio App. LEXIS 969, *

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. II: PLAIN ERROR BY ADMITTING IRRELEVANT AND PREJUDICIAL EVIDENCE

The issue raised by appellant's Assignment of Error No. II is whether the admission of certain 'irrelevant and prejudicial' evidence was plain error. We disagree. **[*24]**

The appellant argues that the trial court committed plain error by allowing the admission of evidence at trial with regard to a bottle of lamp oil and a phone cord. The appellant argues that this evidence was irrelevant to the offenses tried.

## B. THE LAW RE PLAIN ERROR: *CRIM. R. 52(B)*, GENERALLY

*Crim. R. 52(B)*, deals with plain error and provides:

"(B) Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The Supreme Court of Ohio, in *State v. Long (1978), 53 Ohio St. 2d 91, at 97*, with regard to the application of the plain error doctrine, held:

"* * * Notice of plain error under *Crim. R. 52(B)* is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. The record in the instant cause does not meet the above criteria and does not contain a plain error or defect within the meaning of *Crim. R. 52(B)*. See, also, *State v. Williams (1977), 51 Ohio St. 2d 112, 364 N.E. 2d 1364*."

As stated by the Hamilton County Court of Appeals in *State v. Craft (1977), 52 Ohio App. 2d 1, at 7*:

"* * * [P]lain error may **[*25]** be identified as obvious error prejudicial to a defendant,

neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects 'the fairness, integrity or public reputation of judicial proceedings,' *United States v. Atkinson (1936), 297 U.S. 157, at 160.* The interest to be advanced is 'the rule of law.' This is a government of laws and not of men, even judges."

## C. THE EVIDENCE OBJECTED TO BUT ADMITTED INTO EVIDENCE: THE LAMP OIL, BOTTLE AND PHONE CORD

In the case sub judice, an examination of the record reveals that no error existed with regard to the admission of the lamp oil bottle and the phone cord notwithstanding the appellant's claim of plain error.

*Evid. R. 401*, which defines relevant evidence, provides:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence **[*26]** to the determination of the action more probable or less probable than it would be without the evidence."

In addition, *Evid. R. 403(A)* and (B), which deals with the exclusion of relevant evidence, provides that:

"(A) Exclusion mandatory.

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

## D. ANALYSIS

Herein, the admission of the bottle of lamp oil and the telephone cord were not prejudicial to the appellant nor was such evidence irrelevant. Cf. *State v. Mann, supra; State v. Maurer (1984), 15 Ohio St. 3d 239; Brown v. Cleveland (1981), 66 Ohio St. 2d 93.*

The bottle of lamp oil and the phone cord were relevant and logically connected to proof of the offenses of aggravated murder, aggravated arson, and kidnapping. Relevancy of said evidence was established through: 1) the bottle of lamp oil and the telephone cord being [*27] found in the immediate vicinity of John McGrath; 2) the telephone cord being found within one foot of John McGrath; 3) the bottle of lamp oil was found uncapped and the cap was found on John McGrath's bed; and 4) evidence of a fire was discovered in John McGrath's bedroom.

Notwithstanding the relevancy of the bottle of lamp oil and the telephone cord, the appellant has failed to establish how his defense was materially prejudiced by the admission of said evidence. Cf. *State v. Martin (1985), 19 Ohio St. 3d 122; State v. Hymore (1967), 9 Ohio St. 2d 122.* In addition, error, if any, was harmless beyond a reasonable doubt.

## E. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. II: PLAIN ERROR

The appellant's second assignment of error is not well taken.

### XII. ASSIGNMENT OF ERROR NO. III

The appellant's third assignment of error:

"THE PROSECUTOR'S COMMENTS ABOUT THE CONTENTS OF APPELLANT'S STATEMENT TO THE POLICE WHICH HAD BEEN SUPPRESSED CONSTITUTED MISCONDUCT AND DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW, AGAINST SELF-INCRIMINATION AND TO COUNSEL."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. III: PROSECUTORIAL MISCONDUCT BY REASON OF AN IMPROPER IN-TRIAL [*28] STATEMENT

Assignments of Error No. III raises the issue of prosecutorial misconduct by way of the prosecutor's comments about the appellant's statement to the police. If there was error, it was harmless.

## B. STANDARD OF REVIEW FOR PROSECUTORIAL MISCONDUCT

The Supreme Court of Ohio, with regard to prosecutorial misconduct, held in *State v. Maurer, supra.*

"Ohio courts, have suggested that the effect of counsel's misconduct 'must be considered in the light of the whole case.' See, e.g., *Mikula v. Balogh (1965), 9 Ohio App. 2d 250, 258 [38 O.O.2d 311].* And where misconduct of counsel '"* * * is of such a prejudicial character that the prejudice resulting therefrom cannot be eliminated or cured by prompt withdrawal, and admonition, and instructions from the court to the jury to disregard it, a new trial should be granted, or the judgment reversed, notwithstanding cautions, admonition, and instructions by the trial."' *Book v. Erskine & Sons, Inc. (1951), 154 Ohio St. 391, 401 [43 O.O. 334].*

"In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. *State [*29] v. Papp (1978), 64 Ohio App. 2d 203, 211 [18 O.O. 3d*

157]; *State v. Wade (1978), 53 Ohio St. 2d 182, 186 [7 O.O. 3d 362]; State v. DeNicola (1955), 163 Ohio St. 140, 148 [56 O.O. 185]; Scott v. State (1923), 107 Ohio St. 475, 490-491.* This, then, is the point at which we begin in our analysis of this issue." (Emphasis added).

The Supreme Court of Ohio, also established in *State v. Smith (1984), 14 Ohio St. 3d 13,* that a two-step process must be applied to claims of prosecutorial misconduct. The court held that:

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. United States v. Dorr, supra, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger v. United States, supra, at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or the guilt of the accused. *State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility.* Moreover, **[*30]** the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and '* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *' EC 7-37." *State v. Smith, supra, at 14.*

The prosecutor's conduct must be so egregious in the context of the entire trial that it renders the trial fundamentally unfair. See *Donnelly v. DeChristoforo (1974), 416 U.S. 637.*

## C.  ERROR  III:  THE  SPECIFIC PROSECUTORIAL MISCONDUCT

The appellant in his third assignment of error argues that the prosecutor improperly made comments concerning the contents of an oral statement which had been suppressed by the trial court.

On August 12, 1986, the appellant made an oral statement to the police without counsel present. At trial, the appellant's motion to suppress his oral statement was granted by the trial court. Subsequent to the suppression of the oral statement, the prosecutor moved to amend the aggravated murder indictment in order to delete the aggravating specification of kidnapping. It is during the prosecutor's argument for amendment of the indictment that the alleged misconduct occurred. **[*31]** The appellant argues that the motion to amend was but a thinly veiled attempt to improperly place before the trial court the contents of the suppressed oral statement.

## D.  THE  PROSECUTOR'S  VERBATIM OBJECTIONABLE STATEMENT

The prosecutor, during his argument of the motion to amend, stated that:

"I would ask that the specification in the count of the aggravated murder regarding the count, the location of the kidnapping in the third sentence, the third line, "committing or attempting to commit kidnapping," the charge of kidnapping in this case I'm going to ask the Court to amend and delete, but that section of the specification, felony murder, I would like to have that amended to delete the term "kidnapping," because the kidnapping specification in the aggravated murder count was based to a considerable degree on the defendant's statement as to what he did when he was there."

"If we can't do that, it is going to damage the State's case where I don't think we can prove it.

"If the Court will allow us to amend that to delete the word kidnapping, thereby leaving the felony specification with just aggravated robbery and aggravated burglary the State will be able to proceed on that. **[*32]**

"We are sort of talking in the dark because the Court hadn't had the opportunity to read the defendant's statement, but I asure the Court on

my word that Paragraphs 4, 5, 6, tell what was done to restrain his freedom. (Tr. 663, 664). (Emphasis added).

Thus, it is claimed the prosecutor attempted to show that the appellant had indeed restrained the victim.

### E. THE CASE LAW

Clearly, a prosecutor may not refer to matters excluded by order of the court. Cf. State v. Smith, supra; *State v. Liberatore (1982), 69 Ohio St. 2d 583.*

Although the remarks of the prosecutor with regard to the contents of the appellant's oral statement were improper, this court cannot find that the appellant was prejudiced by the prosecutor's statement especially in light of a trial before a three judge panel. Cf. *State v. Post, supra.* It is also clear beyond a reasonable doubt that the trial court would have found the appellant guilty of the offenses of aggravated murder, aggravated burglary, aggravated robbery, and aggravated arson had there been no statement by the prosecutor with regard to the restraint of the victim by the appellant.

Further, the offense of kidnapping, to which the [*33] improper statement was obviously directed, was dismissed by the three judge panel pursuant to the appellant's *Crim. R. 29(A)* motion for acquittal.

### F. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. III: RE PROSECUTORIAL MISCONDUCT DURING TRIAL ARGUMENT

The prosecutor's motion statements were improper and might have resulted in prejudicial error had the appellant been tried before a jury. However, since the appellant was tried before a three judge panel, this assignment of error is not well taken.

### XIII. ASSIGNMENT OF ERROR NO. IV

The appellant's fourth assignment of error:

"PROSECUTORIAL    MISCONDUCT DURING  GUILT  PHASE  CLOSING ARGUMENTS DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW."

### A. THE ISSUE RAISED BY ASSIGNMENT OF  NO.  IV:  PROSECUTORIAL MISCONDUCT  DURING  CLOSING ARGUMENT

The appellant in Assignment of Error No. IV argues that the prosecutor during closing arguments of the guilt phase improperly referred to matters outside the record and appealed to the passions and prejudices of the trier of fact. Further, the appellant argues that the prosecutor made unfair or derogatory personal remarks concerning appellant's counsel.

The alleged improper matters outside the record [*34] referred to by the prosecutor involved the theory of how the victim sustained his burns which in turn was based upon excluded hearsay as contained in the portions of the victim's medical records which were not admitted into evidence by the court. This assignment of error is not well taken.

### B.    PROSECUTOR'S    VERBATIM OBJECTIONABLE STATEMENT DURING CLOSING ARGUMENT RE UNADMITTED MEDICAL RECORDS

The appellant, in support of his argument of improper argument and emotional inflammation, cited the following statements of the prosecutor:

"MR. MARINO: In answering that I take into consideration everything the State has presented in this case, including the medical records which were used by the doctors to treat him; that this man was tied up and burned." (Tr. 786).

"No one believes that the man stumbled and fell. How do you think the doctor knew how to treat him?" (Tr. 791).

"MR. MARINO: It certainly is not. I'm telling you that the man was tied up and burned to death and the spot in which you find the burned substance, the cloth and the paper, is the spot that he was lying when the substance was poured on him and ignited." (Tr. 791, 792).

"JUDGE McGRATH: Not equally consistent [*35]  that he could have rolled over in the initial burning?

"MR. MARINO: Reasonably consistent? Absolutely not. Not with what we know about the case.

     "In the record he says that he was tied up and burned by somebody. That is how the doctors know how to treat him.

     "If he fell down, he might have tripped over something and broken his leg and agonized whether or not be (sic) broke his leg. They treated him this way because they knew at the time they brought him into the hospital that somebody tied him and burned him. (Tr. 791, 792).

"JUDGE KILCOYNE: Mr. Marino, who submitted the information to the doctor that he was tied up and burned? Mr. McGrath?

"MR. MARINO: I would imagine some of it would have been from Mr. McGrath and some from the police and the people who talked to Mr. McGrath." (Tr. 792, 793).

     "I suggest to this Court that there are few cases that have been presented in this county that are more pernicious and evil than this one.

"MR. GIULIANI: Objection.

"JUDGE McGRATH: Sustained.

"MR. MARINO: In support of that I would suggest the Court consider how a person of this age and innocence comes to meet his death with little or no protection from society. Repeated [*36] burglaries of an innocent man, unprotected by the people he pays to protect him." (Tr. 778, 779).

     Applying the two-step analysis of State v. Smith, supra and the holding of *State v. Maurer, supra* to the closing argument of the prosecutor, we find that the attempts of the prosecutor to inject hearsay evidence into the trial and his emotional appeal were improper. However, the appellant was tried before a three judge panel which specifically stated in its finding of guilt that any hearsay evidence as contained in the medical records of the victim was excluded in consideration of the appellant's guilt. Also note that there was no objection by counsel at trial.

     The Supreme Court of Ohio, with regard to the introduction of improper testimony or evidence during a bench trial, held in *State v. Post, supra, at 384,* that:

     "We further stated that this court indulges '* * * in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.' Id. at 151, 44 O.O.2d 136, 239 N.E. 2d 70. see *United States v. Impson* [*37]  *(C.A. 5, 1977), 562 F.2d 970, 971* certiorari denied (1978), *434 U.S. 1050; United States, ex rel. Placek, v. Illinois (C.A. 7, 1976), 546 F.2d 1298, 1304-1305; United States v. Hughes (C.A. 5, 1976), 542 F.2d 246, 248.* See, also, *United States v. Busch (C.A. 10, 1985), 758 F.2d 1394, 1398; United v. Greathouse (C.A. 7, 1973), 484 F.2d 805, 807;* McCormick, Evidence (3 Ed. Cleary Ed. 1984) 153, Section 60; 1 Wigmore, Eivdence (Tillers Rev. 1983) 212-216, Section 4d.1. See, generally, Note, Improper Evidence in NonJury Trials: Basis for Reversal? (1965), *79 Harv. L. Rev. 407.*

"In the case at bar, the three-judge panel noted in its written opinion that they heard the statement of Helen Vantz's son on behalf of the family. It was further noted that '* * * [i]n their deliberations, pursuant to *O.R.C. 2929.04(B)* the panel considered and weighed against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character and background of the offender, and particularly the factors stressed by defense counsel * * *.' (Emphasis added.) No reference was made to use of the victim impact evidence **[*38]** in the weighing process.

"Absent an indication that the panel was influenced by or considered the victim impact evidence in arriving at its sentencing decision, the admission of the victim impact statement as well as permitting the victim's son to address the court at the mitigation hearing did not constitute prejudicial error."

Herein, the record fails to show that the three judge panel considered the hearsay contained in the victim's medical reports which the prosecutor attempted to introduce at trial or that the panel was emotionally influenced by the prosecutor's comments. Therefore, the appellant was not materially prejudiced by the prosecutor's improper statements. It must be presumed that the panel rejected any hearsay.

## C.    THE    OBJECTIONABLE PROSECUTORIAL    STATEMENTS    RE DEFENSE COUNSEL

The appellant's argument of prosecutorial misconduct by way of derogatory personal references made to appellant's counsel during closing argument must also fail. The Supreme Court of Ohio with regard to a prosecutor's attack upon the ability and integrity of defense counsel, held in *State v. Williams (1988), 38 Ohio St. 3d 346, at 351,* that:

"In his third proposition of law, appellant **[*39]** maintains he was denied a fair trial when the prosecutor attacked the ability and integrity of his defense counsel. The record discloses that both counsel deliberately went out of their way to impugn each other's character, ethics and integrity. It is the opinion of this court that appellant was not materially prejudiced by this conduct. Furthermore, we believe that neither party should benefit from such objectionable and reprehensible behavior. We therefore overruled this proposition of law."

The remarks of the prosecutor as directed towards appellant's counsel did not rise to the level as found in State v. Williams, supra. Additionally, the appellant has failed to demonstrate how he was materially prejudiced by the prosecutor's remarks as directed toward appellant's counsel.

## D. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. IV: RE PROSECUTORIAL MISCONDUCT RE DEFENSE COUNSEL

The failure of the appellant to demonstrate how he was prejudiced before a three judge panel by the prosecutor's statements regarding the hearsay medical reports and derogation of defense counsel during closing argument of the guilty phase results in the appellant's fourth assignment of error not being well **[*40]** taken.

## IV. ASSIGNMENT OF ERROR NO. V

The appellant's fifth assignment of error:

"THE    TRIAL    COURT    ERRED    BY RENDERING    A    VERDICT    OF    GUILTY UPON    AND    CONSIDERING    A SPECIFICATION    FOR    A    PRIOR CONVICTION    WHEN    SUCH SPECIFICATION    CONSTITUTED SURPLUSAGE IN THE INDICTMENT FOR AGGRAVATED MURDER AND THEREBY VIOLATED    APPELLANT'S    RIGHTS AGAINST    CRUEL    AND    UNUSUAL PUNISHMENT AND TO DUE PROCESS OF LAW."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. V: THE CLAIM THAT THE SPECIFICATION OF A PRIOR CONVICTION WAS SURPLUSAGE

This assignment of error raises the issue of the inclusion of a specification for a prior conviction in the indictment and is not well taken.

The appellant argues that the inclusion of a specification in the indictment for a prior conviction was a violation of R.C. 2929.04; criteria for imposing death or imprisonment for a capital case. The appellant further argues that the aggravated felony specification was used by the trial court to support a penalty of death. This assignment of error is not well taken.

## B. THE CASE LAW RE THE SPECIFICATION OF A NONSTATUTORY AGGRAVATING CIRCUMSTANCE

This court, with regard to the inclusion of a specification other than an aggravated circumstance [*41] specification pursuant to R.C. 2929.04 in an aggravated murder indictment, held:

" R.C. 2929.02 defines, inter alia, the penalties for aggravated murder, which include the death penalty and life imprisonment with the possibility of parole in either ten or thirty years. Since the jury could have recommended a life sentence for Fort, the inclusion of the gun specification in the indictment was proper.

"Fort also argues that since a firearm specification is not listed as an aggravating factor in R.C. 2929.04(B) it was error for the jury to consider the specification. He posits that the inclusion of the gun specification during the guilt phase misled the jury into believing there existed an additional aggravating factor in support of the death penalty.

"In State v. Johnson (1986), 24 Ohio St. 3d 87, 94, the supreme court found it 'error to submit the non-statutory aggravating factor [gun specification] to the jury for its considera-

tion in the penalty phase of the trial.' The court expressed concern that the inclusion of such evidence 'impermissibly tips the scales in favor of death * * *.' Id.

"In contrast to the Johnson facts the trial court did not submit the gun [*42] specifications to the jury during the penalty phase of Fort's trial. Further, in its instructions to the jury during the guilt phase, the court explained that the gun specification was not a capital specification under the aggravated murder statute but a separate matter for their consideration. The jury forms also did not list the firearm charge as an aggravated murder specification. Nothing in the record indicates the jury was misled during the penalty phase of the trial. Thus, we reject the defendant's argument and overrule this assignment of error. State v. Fort (February 4, 1988), Cuyahoga App. No. 52929, unreported, at 30.

In the case sub judice, the aggravated felony specification of a prior offense was included in the aggravated murder indictment solely for purposes of sentencing. Had the appellant been found guilty of a lesser included offense such as murder, voluntary manslaughter, or involuntary manslaughter, the aggravated felony specification would have resulted in mandatory incarceration. Further, nothing in the record indicates that the three judge panel utilized the aggravated felony specification of a prior conviction as an aggravating circumstance to support [*43] a finding that the mitigating factors were outweighed.

## C. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. V: RE THE SPECIFICATION OF A PRIOR CONVICTION BEING SURPLUSAGE

The appellant's fifth assignment of error is not well taken.

## XV. ASSIGNMENT OF ERROR NO. VI

The appellant's sixth assignment of error:

1989 Ohio App. LEXIS 969, *

"THERE IS CONSTITUTIONALLY INSUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS FOR AGGRAVATED MURDER, AGGRAVATED ROBBERY, AGGRAVATED BURGLARY AND AGGRAVATED ARSON."

A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR VI: THE SUFFICIENCY OF THE EVIDENCE

Assignment of Error No. VI raises the issue of insufficient evidence to support the appellant's conviction for the offenses of aggravated murder, aggravated robbery, aggravated burglary, and aggravated arson. It is not well taken.

The appellant argues that no rational trier of fact could have found all the elements necessary to prove the offenses of aggravated murder, aggravated robbery, aggravated burglary, and aggravated arson.

B. THE STANDARD OF REVIEW RE THE SUFFICIENCY OF THE EVIDENCE OF A CRIME

The Supreme Court of Ohio, in *State v. Eley (1978), 56 Ohio St. 2d 169,* established that a reviewing court will not reverse [*44] a verdict supported by substantial credible evidence from which the trier of fact could reasonably conclude that each element of the offense charged has been proved beyond a reasonable doubt.

This court is also guided by the principle that a court of review cannot substitute its judgment for the trier of fact's finding of guilt when the trier of fact made a determination of the weight and credibility of the witnesses and the evidence.

"We conclude that even with respect to conflicting and coexistent hypotheses that are reasonable in the abstract a jury must consider all of the evidence in the case and apply its own determinations of weight and credibility to determine whether the hypothesis of guilt excludes that of innocence. If its determination is in the affirmative it may convict, but in the negative, it must acquit.

"Accordingly, we also conclude in application to the instant case that since there was substantial evidence of probative value which, if believed, would support a determination of both a reasonable hypothesis of innocence we cannot substitute our judgment for that of the jury when in consideration of all the evidence in the case and applying their own determination [*45] of weight and credibiilty they arrived at a verdict of guilty." *State v. Williams (1976), 47 Ohio App. 2d 330, 337.*

C. FIRST CLAIM OF INSUFFICIENT EVIDENCE: AGGRAVATED MURDER

The appellant's first claim of insufficient evidence involves the offense of aggravated murder and a lack of evidence on the element of the appellant's specific intent to cause the death of John McGrath. This lack of proof with regard to the element of specific intent allegedly involves: 1) a lack of admissible evidence which establishes how and when the victim sustained his injuries; 2) all evidence was circumstantial, and 3) all reasonable theories of innocence were not excluded by the circumstantial evidence.

1. ELEMENTS OF OFFENSE OF AGGRAVATED MURDER

The elements of the offense of aggravated murder, as defined by *R.C. 2903.01(B),* are:

(1) purposely cause death of another;

(2) while committing, attempting to commit, fleeing immediately after committing or attempting to commit;

(3) kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, or escape.

In the case sub judice, no eyewitnesses were present to view the events and course of conduct [*46] of the appellant which ultimately lead to the death of John McGrath. When no eyewitness to a crime or offense exists, circumstantial evidence may be used to prove the elements of the offense charged.

"In this case, we are presented with the issue of whether a conviction for murder may be supported wholly by circumstantial evidence. For the following reasons, we hold that a murder conviction may be supported by such evidence and, accordingly, reverse the judgment of the court of appeals and reinstate the trial court's judgment.

"Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' Black's Law Dictionary (5 Ed. 1979) 221. * * *

"It is, however, well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Kulig (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897; State v. Hankerson (1982), 70 Ohio St. 2d 87 24 O.O. 3d 155, 434 N.E. 2d 1362,* certiorari denied (1982), *459 U.S. 870; State v. Kamel (1984),* 12 Ohio [*47] *St. 3d 306, 12 OBR 378, 466 N.E. 2d 860.* '* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, Evidence (Tillers Rev. 1983) 944, Section 24 et seq.'" *State v. Griffin (1979), 13 Ohio App. 3d 376, 377, 13 OBR 458, 460, 469 N.E. 2d 1329, 1331.* 'Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.' *United States v. Andrino (C.A.9, 1974), 501 F. 2d 1373, 1378.*

"However, this court in *State v. Kulig, supra,* syllabus, held that '[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt.' The court further concluded that '* * * [i]t is settled that where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable [*48] with any reasonable theory of innocence. * * *' *Id. at 160, 66 O.O. 2d at 352, 309 N.E. 2d at 899. * * *

"Furthermore, we know of no reason that the crime of murder should be treated any differently from other crimes when considering the use of circumstantial evidence to establish their commission. * * *" *State v Nicely (1988), 39 Ohio St. 3d 147, at 150.*

See also *State v. Stuttler (1961), 172 Ohio St. 311; State v. Ebright (1983), 11 Ohio App. 3d 97.*

## 2. EVIDENCE ADDUCED AT TRIAL RE AGGRAVATED MURDER

The circumstantial evidence adduced at trial showed that: 1) John McGrath was last observed alive and in good health on July 12, 1986; 2) the appellant was observed operating John McGrath's automobile on July 14, 1986; 3) the East Cleveland police entered the home of John McGrath after being requested to determine the condition of his health and welfare; 4) John McGrath was found on the bedroom floor with burns on his body and a head injury; 5) John McGrath's home was discovered by the police to have been ransacked; 6) an uncapped bottle of oil was found on the bedroom dresser and the cap to the bottle of oil was discovered on the bed of John McGrath; 7) [*49] a blue telephone cord was found within one foot of John McGrath; 8) John McGrath was discovered lying on top of charred and burned fabric;

9) John McGrath's home had been forcibly entered through a basement window and than through a kitchen-basement door; 10) the appellant's fingerprints were found on the bedroom dresser and on a church envelope as found on the kitchen table; 11) shoeprints, which matched the pattern and size of the appellant's shoes, were found in John McGrath's bedroom; and 12) the coroner found that the victim had suffered second degree burns over 12 percent of his body.

3. THE CASE LAW

The court, in *State v. Edwards (1985), 26 Ohio App. 3d 199,* held that purpose to kill can be presumed where the natural and probable consequences of the defendant's acts are to produce death. In addition, it may be concluded from all the surrounding circumstances that the defendant had an intention to kill.

" *R.C. 2903.02(A)*, under which defendant was convicted, requires that the state show that defendant had a purpose to kill. 'Purposely' is defined in *R.C. 2901.22(A)* as having a specific intention to cause a certain result. Defendant argues that the evidence upon which [*50] he was convicted was circumstantial and that it failed to exclude all reasonable theories of innocence as required for a conviction on circumstantial evidence. We disagree. The weight to be given the evidence and the credibility of witnesses were for the jury to determine in this case. State v. Stockton (Dec. 20, 1984), Franklin App. No. 84AP-506, unreported. A jury may presume an intention to kill where the natural and probable consequence of a defendant's act is to produce death and the jury may conclude from all of the surrounding circumstances that a defendant had an intention to kill. *State v. Robinson (1954), 161 Ohio St. 213 [53 O.O. 96].*" *State v. Edwards, supra, at 200.*

Applying the standards of Nicely, Ebright, and Edwards herein, it was permissible for the trial court to presume the intention of the appellant to cause the death of John McGrath where

the natural and probable consequence of the appellant's acts was to produce death. Clearly, a specific intention to cause death can only be presumed when a person is set on fire and the circumstantial evidence adduced at trial was sufficient to exclude all reasonable theories of innocence.

4. [*51] OUR CONCLUSION RE CLAIMED INSUFFICIENT    EVIDENCE    OF AGGRAVATED MURDER

Therefore, we find that there was sufficient evidence presented at trial to establish the element of specific intent to cause the death of John McGrath and to establish the remaining elements of the offense of aggravated murder pursuant to *R.C. 2903.01(B).*

D. SECOND CLAIM OF INSUFFICIENT EVIDENCE: AGGRAVATED ROBBERY

The appellant's second claim of insufficient evidence involves his conviction for the offense of aggravated robbery as charged in CR-211001. The appellant argues that the evidence adduced at trial failed to establish the elements of the offense of aggravated robbery. In addition, the appellant argues a lack of sufficient evidence to establish that the acts which caused the death of John McGrath were committed while the appellant was committing, attempting to commit, or fleeing after committing or attempting to commit a theft offense.

1.    ELEMENTS    OF    OFFENSE    OF AGGRAVATED ROBBERY

The elements of the offense of aggravated robbery, as defined by *R.C. 2911.01*, are:

(1)(a) In attempting or committing a theft offense as defined in 2913.01, or

(b) In fleeing immediately after such attempt or theft

1989 Ohio App. LEXIS 969, *

(2)(a) **[\*52]** Have deadly weapon or dangerous ordnance on or about his person or under his control, or

(b) Inflict or attempt to inflict serious physical harm on another.

## 2. EVIDENCE ADDUCED AT TRIAL RE AGGRAVATED ROBBERY

A review of the evidence adduced at trial establishes at the very least that the appellant inflicted serious physical harm upon John McGrath while attempting to commit a theft offense. This evidence showed that: 1) the home of John McGrath was ransacked; 2) table and chest drawers were pulled out and overturned onto the floor; 3) the fingerprints of the appellant were found on a church envelope and a dresser drawer; 4) the mattress was pulled away from the box spring; and 5) John McGrath sustained serious physical harm. This circumstantial evidence can only establish that the appellant inflicted serious physical harm upon John McGrath while attempting, committing or fleeing immediately after such attempt or theft.

In addition, the evidence presented at trial established the "elements" of "felony murder" as defined by *R.C. 2903.01(B)* and *R.C. 2929.04(A)(7)*. The injuries sustained by John McGrath, which ultimately resulted in his death, were inflicted by the appellant as part **[\*53]** of a continuing course of conduct which involved the offenses of aggravated robbery, aggravated burglary, and aggravated arson. No other theory of innocence is possible based upon the evidence adduced at trial.

## 3. OUR CONCLUSION RE CLAIMED INSUFFICIENT EVIDENCE OF AGGRAVATED ROBBERY

Thus, the appellant's argument of a lack of sufficient evidence to support a finding of guilt as the offense of aggravated robbery and "fel-

ony murder" pursuant to *R.C. 2903.01(B)* and *R.C. 2929.04(A)(7)* is not well taken.

## E. THIRD CLAIM OF INSUFFICIENT EVIDENCE: AGGRAVATED BURGLARY

The appellant's third claim of insufficient evidence involves his conviction for the offense of aggravated burglary as charged in CR-211002. This claim of insufficiency involves the argument that no evidence was presented at trial to establish that the appellant entered John McGrath's home by force, stealth, or deception. Further, the appellant argues that the evidence failed to establish a lack of consent to enter the home of John McGrath or that the home was entered with a purpose to commit a theft offense or felony.

## 1. ELEMENTS OF OFFENSE OF AGGRAVATED BURGLARY

The elements of the offense of aggravated burglary are that:

**[\*54]**

(1) By force, stealth, or deception

(2) Trespass in

(a) Occupied structure, as defined 2909.01, or

(b) A separately secured or separately occupied portion thereof

(3) With purpose to commit

(a) Any theft as defined in 2913.01, or

(b) Any felony

(4)(a) When offender inflicts, attempts or threatens to inflict physical harm on another, or

(b) When offender has deadly weapon or dangerous ordnance on or about his person or under his control, or

(c) When the occupied structure involved is the permanent or temporary habitation of any

person, in which at the time any person is present or likely to be present.

## 2. EVIDENCE ADDUCED AT TRIAL

The evidence presented at trial demonstrated that: 1) two basement windows were damaged in John McGrath's home; 2) the door leading from the basement to the kitchen was splintered and broken; 3) the home was ransacked; 4) the appellant left his fingerprints on a church envelope and a dresser drawer; and 5) John McGrath sustained physical harm to his head and body. A review of this circumstantial evidence relative to the elements necessary to establish the offense of aggravated burglary reveals that the evidence presented at trial was sufficient to [*55] exclude all reasonable theories of innocence. This evidence also clearly revealed that force was used to enter the home of John McGrath with purpose to commit a theft offense, that the appellant inflicted serious physical harm upon John McGrath, and that the appellant did not possess consent to enter the home of John McGrath.

## 3. OUR CONCLUSION RE CLAIMED INSUFFICIENT EVIDENCE OF AGGRAVATED BURGLARY

Therefore, there was sufficient evidence adduced at trial to establish all the elements of the offense of aggravated burglary and the appellant's third claim of insufficient evidence is not well taken.

## F. FOURTH CLAIM OF INSUFFICIENT EVIDENCE: AGGRAVATED ARSON

The appellant's fourth claim of insufficient evidence involves his conviction for the offense of aggravated arson as charged in CR-212720. Specifically, the appellant argues that the circumstantial evidence presented at trial did not foreclose the reasonable theory that John McGrath's injuries were the result of careless smoking.

## 1. ELEMENTS OF OFFENSE OF AGGRAVATED ARSON

The elements of the offense of aggravated arson, as defined by *R.C. 2909.02*, are:

(1) By means of fire or explosion

(2) Knowingly

(3)(a) Create a substantial [*56] risk of serious physical harm to any person, or

(b) Cause physical harm to any occupied structure, or

(4)(a) Create through offer or acceptance of agreement for hire or other consideration, a substantial risk of serious physical harm to any person, or

(b) Create through offer or acceptance of agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure.

## 2. EVIDENCE ADDUCED AT TRIAL

The evidence presented at trial showed that: 1) John McGrath was burned over 12 percent of his body; 2) John McGrath developed bronchopneumonia as a result of his burns; 3) the death of John McGrath was caused by the bronchopneumonia; 4) John McGrath was discovered lying on top of burned and charred fabric; 5) an uncapped bottle of lamp oil was discovered in the bedroom; and 6) the cap to the bottle of lamp oil was discovered on John McGrath's bed. This circumstantial evidence established that the appellant by fire knowingly created a risk of serious physical harm to John McGrath. No other theory of guilt or innocence is possible.

In addition, a review of the evidence and testimony adduced at trial demonstrates that no evidence existed that John McGrath, [*57] although a smoker, had been careless in smoking and had caused his own burns. This lack of

evidence of careless smoking coupled with the evidence of burns upon the body of John McGrath and the bottle of lamp oil results only in the finding that the appellant had by means of fire knowingly caused serious physical harm to John McGrath.

### 3. OUR CONCLUSION RE CLAIMED INSUFFICIENT EVIDENCE OF AGGRAVATED ARSON

The appellant's four claims of insufficient evidence of aggravated arson must fail.

### G. OUR CONCLUSION RE THE ENTIRE ASSIGNMENT OF ERROR NO. 6: RE SUFFICIENCY OF EVIDENCE

Thus the appellant's entire sixth assignment of error is not well taken.

### XVI. ASSIGNMENT OF ERROR NO. VII

The appellant's seventh assignment of error:

"DURING DELIBERATIONS THE THREE JUDGE PANEL ERRED BY APPLYING THE WRONG STANDARD FOR THE CULPABLE MENTAL STATE 'SPECIFIC INTENT' WHICH IS REQUIRED TO SUSTAIN A CONVICTION OF AGGRAVATED MURDER AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AND AGAINST CRUEL AND UNUSUAL PUNISHMENT."

### A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. VII: THE APPLICATION OF AN ERRONEOUS CULPABLE MENTAL STATE BY THE TRIAL COURT

Assignment of Error No. VII raises [*58] the issue that the trial court applied an erroneous mental state to the appellant. It is not well taken.

The appellant argues that a statement contained in the penalty phase opinion of the court revealed that the three judge panel applied an erroneous and lesser standard of specific intent during the guilt phase. This statement involved the following:

"Upon the evidence, the panel specifically finds no mitigation in the instrumentality of death, to-wit: the setting of the victim on fire and further, specifically finds that the act of setting the victim (an elderly man of 84 years) on fire and the leaving of him unattended with the probability of death was a factor in aggravation."

The appellant argues that the panel applied a lesser culpable mental state of "knowingly" in place of "purposely" in determining whether the appellant specifically intended to cause 'the death of John McGrath.'

### B. ANALYSIS

The appellant 's argument is without merit The statement made by the three judge panel which allegedly involved a culpable mentality different from "purposely" was made in and with regard to the penalty phase of the appellant's trial. This particular statement was not rendered [*59] to encompass a specific finding of the culpable mental state of the appellant with regard to the offense of aggravated murder during the guilt phase of the trial. This statement was directly related to the nature and circumstances of the offense of aggravated murder and was used to balance the aggravating circumstances against the mitigating circumstances.

### C. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. VII: THE USE OF AN INCORRECT CULPABLE MENTAL STATE BY THE TRIAL COURT

The appellant's seventh assignment of error is not well taken.

### XVII. ASSIGNMENT OF ERROR NO. VIII