IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MICHAEL BIES,
:
    Petitioner,                        Case No. 1:00-cv-682

:           District Judge Susan J. Dlott
  -vs-                                    Chief Magistrate Judge Michael R. Merz

MARGARET BAGLEY, Warden,
:
    Respondent.

**REPORT AND RECOMMENDATIONS**

This case is before the Court on the merits of Petitioner's Nineteenth Claim for Relief. The Magistrate Judge previously bifurcated that claim from Petitioner's other habeas corpus claims (Decision and Order Granting Motion to Bifurcate, Doc. No. 102). Neither party objected and bifurcation has thus become the law of the case. Both parties have now briefed the Nineteenth Claim as bifurcated (Doc. Nos. 103, 104, and 105) and the claim is ripe for decision.

Petitioner's Nineteenth Claim, added by the Third Amended Petition, is as follows:

> **NINETEENTH CLAIM FOR RELIEF:**
>
> THE STATE OF OHIO IS PRECLUDED FROM CONTESTING MICHAEL BIES' MENTAL RETARDATION BECAUSE THE STATE TRIAL COURT, APPELLATE COURT AND SUPREME COURT HAVE ALREADY DETERMINED THAT HE IS MENTALLY RETARDED, AND THE STATE HAS REPEATEDLY CONCEDED THAT FACT. Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

(Third Amended Petition, Doc. No. 93 at iv.)

Thus in his Nineteenth Claim for Relief, Petitioner asserts that the Ohio courts have already

-1-

determined that he is mentally retarded and that prior determination should be held to be conclusive so that he is not required to relitigate that issue in his currently-pending successive post-conviction proceeding before the Hamilton County Common Pleas Court.

At the time Petitioner was sentenced to death, Ohio law provided for direct appeals to both the intermediate court of appeals and the Ohio Supreme Court. At the first of those two appeals, the Hamilton County Court of Appeals found that Petitioner suffers from "mild mental retardation to borderline mental retardation." *State v. Bies*, 1994 WL 102196 (Ohio App. 1st Dist. March 30, 1994). The Ohio Supreme Court repeated the same finding, to wit, that Petitioner suffered from "mild to borderline mental retardation." *State v. Bies*, 74 Ohio St. 3d 320, 328, 658 N.E. 2d 754, 762 (1996).

After the Ohio Supreme Court decided the case, Petitioner filed his first petition for post-conviction relief under Ohio Revised Code § 2953.21, asserting in his Fifth Claim for Relief that it would be unconstitutional to execute him because he is mentally retarded. Judge Kraft filed findings of fact, adopting the draft findings prepared by the prosecutor. One of his findings is "[t]he defendant is shown by the record to be mildly mentally retarded with an IQ of about 69." With respect to that finding, he adopted a conclusion of law: "As a matter of law, a mildly mentally retarded defendant may be punished by execution. *State v. Holloway,* 38 Ohio St. 3d 239 (1988)." Judge Kraft's finding of mental retardation was not disturbed on appeal where the Court of Appeals instead concluded that the claim was barred by *res judicata* because it could have been raised on direct appeal. *State v. Bies*, 1999 WL 445692 (Ohio App. 1st Dist. June 30, 1999)).

After the state court proceedings were complete and Petitioner had filed in this Court, the United States Supreme Court decided that the mentally retarded may not be executed. *Atkins v. Virginia,* 536 U.S. 304 (2002). In doing so, it overruled its prior holding in *Penry v. Lynaugh,* 492 U.S. 302 (1989), that execution of the mentally retarded was constitutionally permissible under the Cruel and Unusual Punishment Clause. Because *Atkins* goes to the constitutionality of the execution, it of necessity applies to persons

already convicted and sentenced to death.

The question before this Court, then, is whether these multiple, consistent state court findings of mental retardation conclusively establish for purposes of this case that Michael Bies is mentally retarded and therefore may not be executed.

After *Atkins* was decided, this Court stayed the habeas corpus proceedings to give Petitioner an opportunity to file a successive state court post-conviction petition to raise his claim of mental retardation as permitted by the Ohio Supreme Court in *State v. Lott,* 97 Ohio St. 3d 303, 779 N.E. 2d 1011 (2002). Petitioner has done so in a timely manner and those proceedings are not yet complete: the Hamilton County Common Pleas Court has denied Petitioner's summary judgment motion and found that there are genuine issues of material fact as to his IQ (Supp. Apx., Vol. 9 at 69-71). That court also denied the double jeopardy claim that Petitioner makes here (Supp. Apx., Vol. 9 at 66-72 and 96-97).

The State argues that Petitioner has not yet exhausted his claim of mental retardation in the state courts and this Court agrees. Under *Lott, supra,* he has the right to a hearing on his successive post-conviction petition in the Common Pleas Court, an appeal of right to the Hamilton County Court of Appeals, and a discretionary appeal to the Ohio Supreme Court.[1] This Court may not consider an unexhausted claim. 28 U.S.C. §2254(b)(1)(A). The Court agrees with Respondent that the mental retardation claim is not exhausted; indeed, Petitioner does not disagree.

However, the Double Jeopardy claim is exhausted: Petitioner has obtained a decision on the merits of that claim from the Hamilton County Common Pleas Court and cannot obtain judicial review of that decision in the Ohio courts prior to a hearing on the merits. *State v. Crago*, 53 Ohio St. 3d 243, 244, 599 N.E. 2d 1353 (1990)(direct appeal); *Wenzel v. Enright*, 68 Ohio St. 3d 63 (1993) (extraordinary writ). As this Court noted in granting bifurcation, Respondent had admitted that the

---

[1] Petitioner also has the right to seek a writ of certiorari from the United States Supreme Court if he is unsuccessful in the Ohio Supreme Court. However, that is not a state court remedy and need not be exhausted before bringing the mental retardation claim back to this Court.

Double Jeopardy claim was exhausted (*See* Decision and Order Granting Motion to Bifurcate, Doc. No. 102 at 3, citing Respondent's Memorandum in Opposition, Doc. No. 99 at 3.)  It is only Ground 19, the Double Jeopardy claim, which is before this Court at this time.  As this Court held in granting the Petitioner's Motion to add the Double Jeopardy claim, (1) a state court defendant with a colorable double jeopardy claim is entitled to have that claim adjudicated in federal habeas corpus before being placed in jeopardy a second time, and (2) the Double Jeopardy Clause protects against a second trial of an issue, not just a second conviction.  *Abney v. United States,* 431 U.S. 651 (1977); *Justices of the Boston Municipal Court v. Lydon,* 466 U.S. 294 (1984); *Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir. 1985); *Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263 (6th Cir. 1993).  To put it another way, a habeas petitioner with a double jeopardy claim is not required to exhaust the remedy of direct appeal before invoking our habeas jurisdiction. The Sixth Circuit reaffirmed these principles and specifically affirmed a district court's granting of a stay of Ohio Common Pleas Court proceedings pending decision on a pre-trial double jeopardy habeas petition in *Harpster v. State of Ohio*, 128 F.3d 322 (6th Cir. 1997).

      The Double Jeopardy Clause of the Fifth Amendment is fully applicable to the States through the Fourteenth Amendment.  *Benton v. Maryland,* 395 U.S. 784 (1969).  The doctrine of collateral estoppel is embodied in the guarantee against double jeopardy.  *Ashe v. Swenson*, 397 U.S. 436, 442, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).  As thus embodied, the doctrine "stands for an extremely important principle in our adversary system of justice."

> It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.  Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 U.S. 85, 37 S. Ct. 68, 61 L. Ed. 161(1916)(Holmes, J.)

*Ashe* at 443.

Whether a particular person is mentally retarded is plainly a question of fact. Is it a question of ultimate fact so as to preclude a relitigation of a finding that Petitioner is mentally retarded? In *Ashe* Justice Stewart noted the method that would be applied to decide that question:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

*Ashe* at 444, quoting Mayers & Yarbrough, Bis Vixari: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38-39. Justice Stewart was adverting to the distinction between evidentiary facts and ultimate facts adumbrated by Learned Hand in *The Evergreens v. Nunan*, 141 F.2d 927 (2nd Cir. 1944). *See* 1B Moore's Federal Practice 2d ¶0.442[2](1996).

Here, Petitioner sought to prove at trial the existence of his mental retardation as a mitigating factor.² Capital defendants are required to prove the existence of mental retardation as a mitigating factor by a preponderance of the evidence. Ohio Rev. Code § 2929.03(D)(1). A large number of evidentiary facts were introduced on this question; they are summarized in the Petitioner's Memorandum in Support (Doc. No. 103 at 2-3) and in Respondent's Memorandum in Opposition (Doc. No. 104 at 5-7).

As Respondent notes, the State was not required to prove the absence of mental retardation because that is not an element of the crime of aggravated murder (Memorandum in Opposition, Doc. No. 104 at 10). However, it was required to prove beyond a reasonable doubt, to the satisfaction of

---

²The Ohio Supreme Court has expressly held on a number of occasions that mental retardation was a proper mitigating factor. *State v. Rojas*, 64 Ohio St. 3d 131, 143, 592 N.E. 2d 1376, 1386-7 (1992); *State v. Hill,* 64 Ohio St. 3d 313, 595 N.E. 2d 884 (1992); *State v. Green*, 66 Ohio St. 3d 141, 153, 609 N.E. 2d 1253, 1263 (1993). Even without those express holdings, evidence of mental retardation in mitigation would have been admissible under *Lockett v. Ohio*, 438 U.S. 586 (1978).

the jury and three different levels of judges, that the aggravating circumstances outweighed the mitigating factors which had been shown to exist, so the question of Petitioner's mental retardation *vel non* was critical to the State's case. As Petitioner's Memorandum demonstrates, the State vigorously opposed the conclusion that Petitioner was mentally retarded until, in drafting the proposed findings of fact and conclusions of law on post-conviction, it conceded mental retardation because the law at that time did not preclude executing the mentally retarded (Doc. No. 103 at 3-4).

Of course, in a capital case we have a good deal more than a general verdict from which to determine what ultimate facts were decided. In this case, we have express findings of fact from all three levels of the Ohio court system that the Petitioner is mentally retarded. Nor can these be regarded as inessential to the judgments of those courts. In the two appellate cases, each court was required by Ohio law to independently reweigh the aggravating circumstances against the mitigating factors to decide if the death penalty was appropriate. On the post-conviction petition, the judge was required to make findings of fact and conclusions of law; he did so by adopting verbatim the finding proposed by the State, to wit, that Petitioner was mentally retarded.

Respondent argues that there is conflicting evidence as to whether Michael Bies is mentally retarded or not (Memorandum in Opposition, Doc. No. 104 at 5-6) . This puts Respondent in the same position as the prosecutor in *Ashe, supra.* In that case, as here, there was conflicting evidence as to the identity of the robber at the first trial. The State, as it did here, presented what it thought would be enough evidence to persuade the jury that the defendant was the robber, but the jury returned a not guilty verdict. Then the State, having gathered more evidence, tried the defendant as to a second victim and obtained a conviction.[3] Here as well the State has gathered more evidence and seeks a

---

[3] Apparently, the defendant there did not seek habeas corpus relief before his second trial.

different determination from a different fact finder.[4]  But that is precisely the result that the Double Jeopardy Clause proscribes.

Respondent also argues that, "all of Bies' testing was done prior to *Atkins* and *Lott*, so it is unclear what standards the experts used to determine his mental intelligence." (Memorandum in Opposition, Doc. No. 104 at 6, quoting Supp. Apx. Vol. 9, at 69-70.)  However, as noted by Petitioner, *Atkins* and *Lott* both adopt pre-existing definitions of mental retardation from the American Psychiatric Association's Diagnostic and Statistical Manual (Third Edition, Revised) which were standard in the mental health professions well before Petitioner's trial (Memorandum in Support, Doc. No. 103 at 10, n. 3).

The effect of a prior state court judgment in subsequent federal litigation is ordinarily the same effect as would be given the judgment in the courts of the rendering state.  28 U.S.C. §1738; *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985);  *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75 (1984);  *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461 (1982); *Gutierrez v. Lynch*, 826 F. 2d 1534 (6th Cir. 1987).  However, in *Ashe, supra*, the Supreme Court held that the application of the prior judgment was "a matter of constitutional fact we must decide through an examination of the entire record."  397 U.S. at 443.

Petitioner argues that this Court should apply pre-trial *de novo* review pursuant to 28 U.S.C. §2241 to decide if relitigation is precluded (Memorandum in Support, Doc. No. 103 at 12).  However, all of the cited authority is pre-AEDPA.  In that statute, Congress provided at 28 U.S.C. § 2254(d)(1) that

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

---

[4]Judge Robert Kraft has died since the trial and post-conviction decision. *State v. Lott, supra*, prescribes that the trial judge rather than a jury is to be the fact finder on successive post-conviction petitions and future trials claiming mental retardation as a bar to execution.

>granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

The Sixth Circuit applies the unreasonable application prong of 2254(d)(1) to mixed questions of law and fact. *Hunt v. Mitchell,* 261 F. 3d 575, 580 (6th Cir. 2001), *citing Harpster v. Ohio*, 128 F. 3d 322, 327 (6th Cir. 1997). The question of whether the Double Jeopardy Clause bars retrial of the mental retardation issue appears to this Court to be a mixed question of law and fact, that is, a question of the applicability of the Double Jeopardy Clause jurisprudence to the prior state court determinations of mental retardation. Supreme Court law on the unreasonable application prong of §2254(d)(1) is clear:

>The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* [*Williams v. Terry*] at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685 (2002).

>A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* ___ U.S. ___, 125 S. Ct. 1432 (2005).

In her first Decision (April 5, 2004), Judge Myers does not advert to the Double Jeopardy

question. She decides that there are genuine issues of material fact on the question of mental retardation upon the evidence presented in the post-conviction proceeding. She decided that neither judicial estoppel nor the law of the case doctrine applied, but did not discuss collateral estoppel. Petitioner renewed his motion for summary judgment, expressly calling the court's attention to the Double Jeopardy claim he had made in the first motion. Judge Myers' entire decision on the renewed motion reads as follows:

> This matter is before the Court on Petitioner Michael Bies' Renewed Motion for Summary Judgment. The Court has considered the Motion and hereby denies the same. The Court incorporates by reference its prior decision, and to the extent not specifically stated, finds for the reasons discussed in its prior decision that the double jeopardy clause does not require summary judgment in this case.

(Decision and Entry of June 21, 2004; Supp. Apx. Vol. 9 at 97.)

With all due respect to a fellow jurist, this Court concludes that Judge Myers' decisions on applicability of the Double Jeopardy Clause are an unreasonable application of federal law clearly established by the Supreme Court of the United States.

A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. §2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. "'Adjudicated on the merits' has a well-settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2nd Cir. 2001). "Under the Supremacy Clause, state courts are obligated to apply and adjudicate federal claims fairly presented to them." *Sellan, citing Testa v. Katt,* 330 U.S. 386 (1947).

On the other hand, if the state court does not rule on a federal claim before it, federal review of that claim is *de novo*, rather than deferential. *McKenzie v. Smith*, 326 F. 3d 721, 727 (6th Cir. 2003)(when "there are no results, let alone reasoning, to which this court can defer . . ., any attempt

to determine whether the state court decision was contrary to, or involved an unreasonable application of clearly established federal law would be futile.");(*Maples v. Stegall*, 340 F. 3d 433 (6th Cir. 2003), relying on *Wiggins v. Smith,* 510 U.S. 539 (2003). §2254(d)(1) does not require federal court acceptance of every decision a state court makes on a federal claim. *Wiggins*; *Rompilla v. Beard,* 125 S. Ct. 2456 (2005).

Here this Court simply does not know what Judge Myers thought about the Double Jeopardy issue except that she believed it was adequately covered by her prior decision. However, the issues involved in applying *Ashe v. Swenson* and its progeny to this case are not the same as the issues of whether there are genuine issues of material fact in the pending 2953.21 proceeding or whether judicial estoppel or law of the case preclude relitigation. In particular, judicial estoppel would only apply if the State had previously argued in favor of mental retardation and been successful, *Warda v. Commissioner of Internal Revenue*, 15 F. 3d 533, 538 (6th Cir. 1994); as the above analysis shows, the State has always opposed that finding or, at worst, conceded it, but never advanced it. The law of the case doctrine applies to legal conclusions reached earlier in the case (e.g., that mental retardation does not preclude execution), not to findings of fact.

**Conclusion**

Upon the analysis set forth above, this Court should conclude that the Double Jeopardy Clause bars retrying the issue of whether Petitioner is mentally retarded. That fact is conclusively established for purposes of this habeas corpus proceeding by the prior state court judgments.

This Court should issue a writ of habeas corpus *ad subjiciendum* requiring the State of Ohio to vacate Petitioner's capital sentence and re-sentence him in accordance with Ohio law to some other sentence.

November 23, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).