IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **MICHAEL BIES,** *Petitioner,* vs. **MARGARET BAGLEY, Warden,** *Respondent.* | Case Number: C-1-00-682 District Judge Susan J. Dlott Chief Magistrate Judge Michael Merz |

**RESPONDENT'S OBJECTIONS TO THE CHIEF MAGISTRATE JUDGE'S NOVEMBER 23, 2005 REPORT AND RECOMMENDATIONS**

Respondent Warden Margaret Bagley respectfully objects to Chief Magistrate Judge Merz's November 23, 2005 Report and Recommendations to vacate Petitioner Michael Bies' death sentence and re-sentence him to another sentence based on his Nineteenth Claim for Relief. A memorandum in support follows.

Respectfully submitted,

**JIM PETRO (0022096)**
**Attorney General of Ohio**


**CAROL A. ELLENSOHN (0074598)**
Assistant Attorney General

**CHARLES L. WILLE (0056444)**
Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

**MEMORANDUM IN SUPPORT**

I.     STATEMENT OF THE CASE

In 1992, Bies was tried, convicted and sentenced to death for the brutal murder of ten-year-old Aaron Raines in Hamilton County, Ohio.

On August 21, 2000, Bies filed a petition for a writ of habeas corpus with this Court. Doc. 7. On May 29, 2001, following completion of agreed-upon discovery and the filing of the state court record, Bies filed an amended petition. Doc. 22. On July 19, 2001, Bies filed a second amended petition. Doc. 26.

On June 20, 2002, the United States Supreme Court issued its decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that it is unconstitutional to execute the mentally retarded. On December 11, 2002, the Ohio Supreme Court issued a similar decision in *State v. Lott*, 97 Ohio St. 3d 303 (2002), establishing the law and procedures governing claims of mental retardation in the Courts of Ohio.

On December 26, 2002, Magistrate Judge Merz issued a Report and Recommendation ordering Bies to file a successive post-conviction petition pertaining to his unexhausted *Atkins* claim in the state court within thirty days. Doc. 53. On January 31, 2003, the District Court adopted Magistrate Judge Merz's Report and Recommendation. Doc. 57.

On May 2, 2003[1], Bies filed a successive post-conviction petition based on his *Atkins* claim in the state trial court. *See* Doc. 101, Supp. Apx., Vol. 8, pp. 15-28. Three months later, on August 15, 2003, Bies filed a motion for summary judgment as to his third cause of action requesting the trial court find him mentally retarded. Doc. 101,

---

[1] Although Bies' successive post-conviction petition pursuant to *Atkins v. Virginia* was file-stamped on May 1, 2003, the trial court docket sheet lists the file date as May 2, 2003.

2

Supp. Apx., Vol. 8, pp.181-194. On April 5, 2004, the state trial court denied Bies' motion for summary judgment holding that there were factual disputes as to Bies' IQ. Doc. 101, Supp. Apx., Vol. 9, pp. 69-71. On June 21, 2004, the state trial court denied Bies' renewed motion for summary judgment. Doc. 101, Supp. Apx., Vol. 9, 96.

On March 17, 2005, with his successive post-conviction petition still pending in the state trial court, Bies filed a motion to amend his petition for a writ of habeas corpus requesting to add a Double Jeopardy claim as his nineteenth claim for relief. Doc. 89. On April 11, 2005, this Court granted Bies' motion to amend his petition. Doc. 92. On April 18, 2005, Bies filed his third amended petition for a writ of habeas corpus. Doc. 93.

On June 10, 2005, Bies filed a motion to bifurcate his nineteenth claim for relief. Doc. 98. On July 1, 2005, Respondent filed a memorandum in opposition to Bies' motion to bifurcate. Doc. 99. On July 12, 2005, Bies filed a reply. Doc. 100. On September 2, 2005, this Court granted Bies' motion to bifurcate and issued a briefing schedule. Doc. 102.

On September 16, 2005, Bies filed his brief in support of his nineteenth claim for relief. Doc. 103. On September 30, 2005, Respondent filed her brief in opposition to Bies' nineteenth claim for relief. Doc. 104. On October 7, 2005, Bies filed a reply. Doc. 105.

On November 23, 2005, the Chief Magistrate Judge issued a Report and Recommendations concluding that the Double Jeopardy Clause bars retrying the issue of whether Bies is mentally retarded and recommended that the Court issue a writ of habeas corpus *ad subjiciendum* requiring the State of Ohio to vacate Bies' capital sentence and re-sentence him in accordance with Ohio law to some other sentence. Doc. 107.

Respondent herein objects to the Chief Magistrate Judge's November 23, 2005 Report and Recommendations.

II.     **APPLICABLE STANDARD OF REVIEW**

Title 28 U.S.C. Section 2254(d), as amended, provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court addressed for the first time the Section 2254(d) standard.  Through a concurring opinion by Justice O'Connor, the Court summarized the standard as follows:

> In sum, Section 2254(d) (1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under Section 2254 (d) (1), the writ may issue only if one of the following two conditions is satisfied -- the state court adjudication resulted in a decision that (1) "was contrary to .... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the

> writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts on the prisoner's case.

*Williams v. Taylor*, 529 U.S. at 412-13.

Justice O'Connor also stated three important interpretive guidelines. First, under Section 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." 529 U.S. at 411. Second, the phrase "clearly established Federal law, as determined by the Supreme Court," refers to the Supreme Court's holdings, as opposed to the dicta of the Supreme Court's decisions, as of the time of the relevant state court decision. *Id*. And third, the standard requires an assessment of objective reasonableness; hence, it does not require that "all reasonable jurists" would agree that a state court decision is unreasonable. 529 U.S. at 410.

In a number of recent cases, the Supreme Court of the United States has applied Section 2254(d)'s standard of review in reversing the granting of relief by the courts of appeal. *See Mitchell v. Esparza*, 540 U.S. 12 , 124 S.Ct. 7 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166 (2003) *Early v. Packer*, 537 U.S. 3, 123 S.Ct. 362, 363 (2002); *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357 (2002). In doing so, the Supreme Court has observed that "objectively unreasonable" is not the same thing as "clear error," nor may the federal court grant relief because it has a "firm conviction" that the state court's decision is erroneous. *Lockyer v. Andrade*, 123 S.Ct. at 1175. To grant relief under Section 2254(d)(1), a federal court

may not simply find that the State court "failed to apply" the clearly established law, and then proceed to determine that the State court had erred to the petitioner's substantial prejudice. *Early v. Packer*, 123 S.Ct. at 363. Rather, *before* determining whether there is constitutional error, and the effect, if any, that the error had on the verdict, the federal court must *first* find that the State court's decision was "contrary to" or involved an unreasonable application of clearly established Supreme Court law. *Id.*

These decisions emphatically reinforce *Williams*' core holding that "unreasonable" and "erroneous" are not the same thing, even if, in the judgment of the federal court, the state court clearly erred. Moreover, the deferential standard required by Section 2254(d)(1) applies no less in capital cases. Thus, in most recently reversing a grant of the writ by the Sixth Circuit based on a claimed violation of the Eighth Amendment, the Supreme Court observed:

> In relying on the absence of precedent to distinguish our non-capital cases, and to hold that harmless-error review is not available for this type of Eighth Amendment claim, the Sixth Circuit exceeded its authority under Section 2254(d)(1). A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous. As the Ohio Court of Appeals' decision does not conflict with the reasoning or the holdings of our precedent, it is not "contrary to ... clearly established Federal law."

*Mitchell v. Esparza*, 124 S.Ct. at 11. In short, the primary question in federal habeas corpus is the reasonableness of the state court's denial of relief. Apart from this consideration, the federal court's assessment of the merit of a particular constitutional claim is irrelevant.

6

### III. ARGUMENT

**The Chief Magistrate Judge clearly erred in recommending the grant of the writ based on Bies' Claim under the Double Jeopardy Clause.**

In his Nineteenth Ground in support of habeas corpus relief, Bies alleges that his mental retardation claim is barred by Double Jeopardy:

> The State of Ohio is precluded from contesting Michael Bies' mental retardation because the state trial court, appellate court and supreme court have already determined that he is mentally retarded and the state has repeatedly conceded that fact. Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

In recommending a grant of the writ on Bies' Nineteenth Ground, the Chief Magistrate Judge concluded:

> . . that Judge Myers' decisions on applicability of the Double Jeopardy Clause are an unreasonable application of federal law clearly established by the Supreme Court of the United States.

Doc. 107, November 23, 2005 Report and Recommendations, p. 9.

The Chief Magistrate Judge clearly erred. The Supreme Court of the United States has never held that a determination of mental retardation for the purposes of the Eighth Amendment is a fact that is subject to the protections of the Double Jeopardy Clause or a derivative doctrine of estoppel. Of course for Bies to obtain Habeas Corpus relief, he must show that the state court's denial of his Double Jeopardy claim contravened a decision of the Supreme Court of United States or unreasonably applied such a decision. *See*, *Williams v. Taylor*, 529 U.S. 362 (2000); 28 U.S.C. §2254(d).

And it is not likely the Supreme Court of the United States would ever hold that a determination of mental retardation for the purposes of the Eighth Amendment is a fact that is subject to the protections of the Double Jeopardy Clause. The Double Jeopardy Clause

of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. The Supreme Court of the United States has held that it protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See Monge v. California*, 524 U.S. 721, 727-728 (1998), citing *North Carolina v. Pearce,* 395 U.S. 711 (1969). Collateral estoppel in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *See Harris v. Washington*, 404 U.S. 55, 56-57 (1971), citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) and *Benton v. Maryland,* 395 U.S. 784 (1969). Finally, even if the Supreme Court of the United States would extend the protection of the Double Jeopardy Clause to mental retardation as defined for the purposes of the Eighth Amendment, such extension would constitute a new rule of constitutional law that could not be applied retroactivity in Federal habeas corpus. *See*, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989); *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519 (2004).

Contrary to Bies' allegations, the trial court did not decide the factual issue of whether Bies is mentally retarded for the purposes of the Eighth Amendment ban, i.e., whether due to his level of intellectual and adaptive functioning, his execution would be cruel and unusual. Bies claims that since there is evidence in the record that his IQ is below 70, the State is now prevented from litigating his mental retardation claim based

on double jeopardy and collateral estoppel. However, as the state trial court held in its April 5, 2004 denial of Bies' motion for summary judgment, "there are disputes of fact as to the IQ of Mr. Bies and as to the ultimate determination of whether he is or is not mentally retarded." Doc. 101, Supp. Apx., Vol. 9, p. 69.

      A.    **Bies' Claim of Mental Retardation is Governed by the Principles Set Forth in *State v. Lott*.**

As noted above, Bies filed his successor petition for post-conviction relief in the Hamilton County Court of Common Pleas on May 2, 2003, based on the new federal right recognized by the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304 (2002). Consequently, this Court stayed Bies' habeas petition to allow him to litigate his mental retardation claim in the state courts.

The High Court held in *Atkins* that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. *Id*. at 321. However, the Court in *Atkins* did not establish procedures for determining whether an individual is "mentally retarded" for purposes of being ineligible for the death penalty. Rather, the Court left it to each individual state "to develop 'appropriate ways to enforce the constitutional restrictions' on executing the mentally retarded." *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002) (quoting *Atkins*, 536 U.S. at 317). Consequently, the Sixth Circuit held that "Ohio should have the opportunity to develop its own procedures" for resolving *Atkins* claims. *Hill*, 300 F.3d at 682.

The Ohio Supreme Court did just that in *State v. Lott*, 97 Ohio St.3d 303 (2002). The Court in *Lott* adopted the clinical definitions of mental retardation from the American Association of Mental Retardation (AAMR) and the American Psychiatric Association

9

(APA), cited with approval by the United States Supreme Court in *Atkins*. *Id*. at 305. These definitions require the following for a mental retardation diagnosis:

1. significantly sub-average intellectual functioning,

2. significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and

3. onset before the age of 18.

*Id*.

The defendant bears the burden of establishing that he is mentally retarded by a preponderance of the evidence. *Id*. at 307. "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on [the] issue [of mental retardation]." *Id*. at 305. There is a rebuttable presumption that a defendant is not mentally retarded if he or she has an IQ score above 70. *Id*.

It is the trial court, not the jury, who decides the issue of mental retardation. *Id*. at 306. When presented with an *Atkins* claim, the trial court should conduct its own de novo review of the evidence in determining whether the defendant is mentally retarded. *Id*. *Lott* provided that, in deciding this issue, a trial court should rely on professional evaluations of a defendant's mental status, consider expert testimony and appoint experts, if necessary. *Id*.

    **B.**    **Bies Has Not Met His Burden under *Lott* for Establishing He is Mentally Retarded.**

Under *Lott*, three factors are required to establish a diagnosis of mental retardation. Bies has failed to meet any of the three factors.

    **1.**    **No conclusive evidence that Bies suffers from significantly sub-average intelligence.**

An individual's intelligence or IQ is the first factor to be considered when determining mental retardation under *Lott*. In Bies' case, there is conflicting evidence in

the record regarding his IQ. Doc. 101, Supp. Apx. Vol. 9, p. 69.  There is evidence that indicates that "Bies has an IQ below 70: 1) February 6, 1985, examination shows IQ of 50 [Doc. 101, Supp. Apx., Vol. 8, p. 119]; 2) September 11, 1992 report regarding NGRI comments that Dr. Winters found an IQ of 68 [Doc. 101, Supp. Apx., Vol. 8, p. 101]; and 3) 1992 NGRI report finds full scale IQ of 68 with performance IQ at 67 and verbal IQ at 70 [Doc. 101, Supp. Apx., Vol. 8, p. 119]." *Id*.

However, there is also evidence that Bies has an IQ *above* 70: 1) October 14, 1980, examination shows IQ of 78 [Doc. 101, Supp. Apx. Vol. 3, p. 126]; 2) February 1984, examination shows IQ of 74 [Doc. 9, Apx., Vol. IV, p. 74]; 3) September 1996, Dr. Kristen Haskins' examination shows IQ of 72 [Doc. 9. Apx., Vol. V, p. 8]. *Id*.  Thus, there is not conclusive evidence that Bies suffers from significantly sub-average intelligence. In fact, Bies' most recent examination in 1996 places his IQ above 70. Consequently, Bies would have the burden of overcoming the rebuttable presumption that he is not mentally retarded since his IQ is above 70.

Moreover, all of Bies' testing was done prior to *Atkins* and *Lott*, so it is unclear what standards the experts used to determine his mental intelligence. Doc. 101, Supp. Apx. Vol. 9, pp. 69-70.  In addition, much of Bies' earlier testing was done to determine insanity and not mental retardation. *Id*., p. 70.

### 2. Bies does not suffer from significant limitations in regards to his adaptive skills.

Adaptive skills is another factor to be considered when determining mental retardation.  Under *Lott*, Bies would have to have significant limitations in two or more adaptive skills, such as, communication, self-care, and self-direction. However, as the trial

11

court found in its first post-conviction decision, Bies "is capable [and has] of living and functioning on his own." Doc. 9, Apx. Vol V, p. 437.

For example, Bies was married at the age of 18 and the couple lived together for approximately 3 years. Doc. 101, Supp. Apx., Vol. 8, p.132. He has three children: two children by his wife and a third child by another women. *Id*. p. 34. Bies has held several jobs. *Id*., p. 132. He has worked as a private security guard, an undercover security person at a night club, as well as, worked in construction. *Id*.

Moreover, in Dr. Winter's 1992 NGRI Report, she states that Bies "goes about the community unassisted. He carries out the activities of daily life fairly independently." Id., p. 36. Thus, he is able to take care of himself and has the skills necessary to function in society. Consequently, Bies does not suffer from significant limitations in regards to his adaptive skills.

### 3. No conclusive evidence that Bies suffered from significantly sub-average intelligence before the age of 18.

Finally, onset before the age of 18 is the last factor to be considered when determining mental retardation under *Lott*. Again, in Bies' case, there is conflicting evidence regarding his IQ before the age of 18.

For example, Bies' February 6, 1985 examination at age 12 shows an IQ of 50 [Doc. 101, Supp. Apx., Vol. 8, p. 119], while his October 14, 1980 examination at age 8 shows an IQ of 78 [Doc. 101, Supp. Apx. Vol. 3, p. 126] and his February 1984 examination at age 11 shows an IQ of 74 [Doc. 9, Apx., Vol. IV, p. 74]. Hence, there is no conclusive evidence of Bies' IQ before the age of 18. Therefore, Bies cannot establish that he was mentally retarded before the age of 18.

Consequently, since Bies has failed to meet any of the three required factors under *Lott*: significant sub-average intelligence, significant limitation in two or more adaptive skills and onset before the age of 18, he has failed to establish a diagnosis of mental retardation.

For all the above reasons, Respondent respectfully objects to the Chief Magistrate Judge's recommended grant of the writ on the Nineteenth Ground.

### IV. CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court overrule the Chief Magistrate Judge's Report and Recommendations and deny Bies' Nineteenth Claim for Relief.

Respectfully submitted,

**JIM PETRO**
**Ohio Attorney General**

s/Carol A. Ellensohn
**CAROL A. ELLENSOHN (0074598)**
**CHARLES L. WILLE (0056444)**
Assistant Attorneys General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio  43215-3428
(614) 728-7055; Fax: (614) 728-8600

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing, *Respondent's Objections to the Chief Magistrate Judge's November 23, 2005 Report and Recommendations*, was filed electronically, this *13th day of December, 2005*. Notice of this filing will be sent to all parties including: S. Scott Haynes, Hallowes, Allen and Haynes, 6445 East Livingston Avenue, Reynoldsburg, Ohio, 43068 and Randall Porter, Ohio Public Defender's Office, 8 East Long Street, Columbus, Ohio 43215, by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

s/Carol A. Ellensohn
**CAROL A. ELLENSOHN (0074598)**
Assistant Attorney General