IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

Michael Bies,                              :

     Petitioner,                        :
                                           Case No.:  CV-1-00-682

vs.                                        :
                                           District Judge Susan J. Dlott

Margaret Bagley, Warden,                   :    Chief Magistrate Judge Michael R. Merz

     Respondent.                        :

---

# MICHAEL BIES' RESPONSE TO THE WARDEN'S OBJECTIONS TO THE CHIEF MAGISTRATE JUDGE'S NOVEMBER 23, 2005 REPORT AND RECOMMENDATION

---

S. SCOTT HAYNES - 0059586
Hallowes, Allen & Haynes
6445 E. Livingston Avenue
Reynoldsburg, Ohio 43068
Telephone: (614) 868-0009
Facsimile:  (614) 868-0029

and

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio  43215-2998
Telephone:  (614) 466-5394
Facsimile:  (614) 644-0703

COUNSEL FOR MICHAEL BIES

**TABLE OF CONTENTS**

I.  INTRODUCTION. ...................................................................................1

II.  MENTAL AND PERFORMANCE IMPAIRMENT HAVE BEEN
THE CONSTANT THEMES IN MICHAEL BIES' LIFE. ................................2

III.  THE STATE COURTS FOUND AND THE PROSECUTORS
SUBSEQUENTLY CONCEDED THAT MICHAEL BIES IS
MENTALLY RETARDED. ............................................................................4

    *A.  The Trial Evidence Supported The Finding That Bies Is
Mentally Retarded.* ...................................................................................4

    *B. The State Courts on Direct Appeal Found that Michael Bies
is Mentally Retarded.* ...............................................................................6

    *C.  The Prosecutors in Post-conviction Embraced the State
Court Findings of Retardation.* ................................................................7

    *D.  The Prosecutors Now Want to Contest the Mental
Retardation Issue.* ....................................................................................8

IV.  COLLATERAL ESTOPPEL PRECLUDES THE STATE FROM
LITIGATING ISSUES DETERMINED IN PRIOR COURT
PROCEEDINGS. ..........................................................................................10

    *1.  The Double Jeopardy Clause Applies to State Capital
Sentencing Proceedings.* ..........................................................................10

    *2.  The Double Jeopardy Clause Includes Collateral Estoppel.* ..................11

    *3.  Michael Bies is Entitled to Relief Pursuant To the Factors
Identified in* Ashe. .....................................................................................12

    *4.  The Granting of Relief Is Consistent with the Theories
Underlying the Fifth Amendment.* ............................................................14

IV.  MICHAEL BIES' DOUBLE JEOPARDY CLAIM IS NOT
GOVERNED BY STATE V. LOTT, 97 OHIO ST. 3D 303 (2002). ...............15

V.  THE CORRECTNESS OF THE STATE COURTS' REPEATED
MENTAL RETARDATION FINDINGS ARE NOT BEFORE THIS
COURT. .......................................................................................................16

VI.  AEDPA DOES NOT PRECLUDE THE GRANTING OF
RELIEF. .......................................................................................................17

1fa70a7a5fe4fd45

**VII.    THE GRANTING OF RELIEF WOULD NOT CONSTITUTE A NEW RULE OF LAW.**.......................................................20

**VI.    CONCLUSION.** .........................................................21

**CERTIFICATE OF SERVICE** ..........................................22

# TABLE OF AUTHORITIES

**CASES**

Allen v. Hardy, 478 U.S. 255 (1986) .............................................................................. 20

Arizona v. Rumsey, 467 U.S. 203 (1984) ......................................................................... 11

Ashe v. Swenson, 397 U.S. 436 (1970) ..................................................................... passim

Atkins v. Virginia, 536 U.S. 34 (2002) .............................................................. 8, 14, 16

Benson v. Superior Court of Massachusetts, 663 F. 2d 335 (1st Cir., 1981) .................. 17

Benton v. Maryland, 395 U.S. 784 (1969) ....................................................................... 11

Bies v. Ohio, 517 U.S. 1238 (1996) .................................................................................. 20

Bullington v. Missouri, 451 U.S. 430 (1981) ....................................................... 11, 14, 15

Burks v. United States, 437 U.S. 1 (1978) ........................................... 13, 14, 15, 19

Cabana v. Bullock, 474 U.S. 376 (1986) ........................................................................ 13

Dowling v. United States, 493 U.S. 342 (1996) ......................................................... 11, 13

Green v. United States, 355 U.S. 184 (1957) ................................................................... 11

Harris v. Washington, 404 U.S. 55 (1971) ................................................................. 16, 19

Jones v. Thomas, 491 U.S. 376 (1989) ............................................................................ 10

Jordan v. McCaughtry, 251 F.3d 596 (7th Cir., 2001) ..................................................... 17

Justices of Boston Municipal Court v. Lydon, 466 U.S. 294 (1984) ............................... 15

Moyer v. Petty, 811 F.2d 606, 1986 U.S. App. LEXIS 35145
    (6th Cir. Dec. 23, 1986) ................................................................................ 17

Ring v. Arizona, 536 U.S. 584 (2002) .............................................................................. 20

Schiro v. Farley, 510 U.S. 222 (1994) ............................................................................. 13

Schiro v. Summerlin, 542 U.S. 348 (2004) ...................................................................... 20

Seilfon v. United States, 332 U.S. 575 (1948) ................................................................. 12

State v. Bies, 1994 Ohio App LEXIS 1304 (Ham. March 30, 1994) ........................ 1, 4, 6

State v. Bies, 74 Ohio St. 3d 320 (1996) .................................................................. 1, 7, 13

State v. Holloway, 38 Ohio St. 3d 239 (1988) .............................................................. 7, 8

State v. Lott, 1989 Ohio App. LEXIS 969 (Cuy. App. March 16, 1989) ......................... 15

State v. Lott, 51 Ohio St.3d 160 (1990) ..................................................................... 15, 16

State v. Lott, 97 Ohio St. 3d 303 (2002) ................................................................. 9, 14, 15

Stow v. Murashige, 389 F.3d 880 (9th Cir. 2004) ........................................................... 17

Stringer v. Williams, 161 F.3d 259 (5th Cir. 1998) ......................................................... 17

Teague v. Lane, 489 U.S. 288 (2004) ............................................................................... 20

United States v. Jenkins, 902 F.2d 459 (6th Cir. 1990) ................................................... 11

United States v. Uselton, 927 F.2d 905 (6th Cir. 1991) .................................................. 11

Williams v. Taylor, 529 U.S. 362 (2000) ....................................................................... 18

## CONSTITUTIONAL PROVISIONS

Fifth Amendment, United States Constitution ...................................................... 1, 10, 16

Eighth Amendment, United States Constitution .............................................................. 18

Fourteenth Amendment, United States Constitution ....................................................... 11

## STATUTES

28 U.S.C. 2241 .............................................................................................................. 17

28 U.S.C. 2254 ......................................................................................................... 17, 18

## OTHER AUTHORITIES

Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric
    Association, Third Edition Revised, 1987) .................................................................. 9

Mental Retardation (American Association on Mental Retardation, 1992) ...................... 9

## I.    INTRODUCTION.

Michael Bies' life history is punctuated by his mental health issues and admissions to mental health institutions.  While the various mental health professionals have been not been consistent in their overall psychological diagnoses, the one thing that they have all agreed is that Michael Bies suffers from a lack of innate intelligence. He has scored as low as 50 on an IQ test. When he was fourteen of years of age, the Social Security Administration found that he qualified for Social Security Supplemental Income because of his mental retardation.

Given the experts' consistent findings concerning his lack of intelligence, it is not surprising that Michael Bies' level of intelligence became an issue at his trial and on his direct appeals. At the mitigation hearing, Dr. Donna Winters testified that Michael Bies was mild to borderline mentally retarded.  In both rounds of the direct appeals the parties actively litigated the issue of Michael Bies' mental retardation.  Both appellate courts found that that Michael Bies was mild to borderline mentally retarded.  State v. Bies, 1994 Ohio App LEXIS 1304 (Ham. March 30, 1994), p. *28 [Exhibit B, attached hereto]; State v. Bies, 74 Ohio St. 3d 320, 328 (1996).  In state post-conviction, the prosecutor, after having lost the mental retardation issue on both of the direct appeals, conceded in three separate courts that Michael Bies was mentally retarded.

The prosecutors now wish to re-litigate these mental retardation findings, which they have already repeatedly litigated and conceded. The Chief Magistrate Judge correctly concluded that the state is precluded by the Fifth Amendment from once again re-litigating those mental retardation findings. The prosecutors are not permitted to have unlimited "redos" or opportunities until they prevail on the mental retardation issue. The prosecutors have had numerous chances and lost.  The prosecutors' efforts to once again relitigate Michael Bies'

mental retardation is the quintessential example of governmental abuse that the Framers of the

Constitution desired to curb when they enacted the Double Jeopardy Clause  as part of the Bill of

Rights.

## II.    MENTAL AND PERFORMANCE IMPAIRMENT HAVE BEEN THE CONSTANT THEMES IN MICHAEL BIES' LIFE.

Michael Bies was born to Linda Bies and Michael Johnson.  Linda almost miscarried

with Michael at four and six months. At seven months his father struck Linda in the stomach.  At

birth Michael Bies' skin was black from a lack of oxygen. [Doc. 101, Sup. St. Ct. App. Vol. 8, p.

340].[1]  Michael Bies was developmentally delayed.  He did not learn to sit up until the age of

one, he did not walk with proficiency at the age of two [Tr. 1096/97] and he was still not toilet

trained at the age of three.  [Tr. 1096].

Michael Bies was a very sickly child.  At the age of two months he was hospitalized for

pneumonia and dehydration [Tr. 1097].   At the age of one he was again hospitalized for

pneumonia [Tr. 1097].   When he was two he was admitted again in the hospital for encephalitis

or inflammation of the brain [Tr. 1097].   At the age of three he had a laceration on the head

which his mother said that he received from falling off a dresser [Tr. 1097]. When he was five he

was hospitalized for the measles. At the same age he burned himself on the stove or radiator but

could not feel the pain.  Still later that year he was placed in a psychiatric hospital for a suicide

attempt.  [Tr. 1098]. At one point in his childhood he was struck by a bus.

Throughout his childhood Michael Bies was treated and confined in psychiatric hospitals.

[Doc. 101, Sup. St. Ct. App. Vol. 8, p. 104].   The school officials diagnosed him as suffering

from learning disorders and they arranged for him to attend special education classes.  However

---

[1] On September 28, 2000, the Warden filed six volumes of the state court pleadings [Doc. No. 9].  Michael Bies references those volumes with the following citation: St. Ct. App. Vol. __, p. __. On July 14, 2005, the Warden filed an additional nine volumes of state court pleadings.  Michael Bies references those volumes with the following citation: Supp. St. Ct. App. Vol. __, p. __.

his performance in those classes was so abysmal that school officials placed him in a therapeutic

school.  [Id.]

On April 8, 1983, Dr. Rodriguez, M.D. examined Michael Bies and observed that his

"intelligence [was] estimated to be below normal, possibly mentally retarded."  [Doc. 101, Sup.

St. Ct. App. Vol. 8, p. 350].  The Doctor's report reflects the following:

> When asked what he had for breakfast, he said "Anything and everything."
> Immediate recall was good but he was unable to establish his own birth date.
>
> He said the President of the U.S. is Ronald Reagan.  He was unable to mention
> any previous Presidents.  He said the Mayor of Chicago now is Washington.
> When asked what is the Capitol of the U.S., he said "I don't know."  When asked
> to name U.S. cities, he said "Chicago, New York and Illinois."  When asked to
> subtract 7 from 100, he said "I don't know no more."
>
> When asked what he would do if there were a fire in a movie theatre, he said "I
> don't know what I would do."  When asked what he would to if he found a
> stamped, addressed and sealed envelope, he said "I don't know."  When asked
> about the difference between a river and a lake, he said "I don't know that either."
> When asked how oranges and apples are alike he said "They are not."  He was
> unable to interpret proverbs.

[Id. at p. 351].

On November 29, 1984 Judith Grace administered the Wide Range Achievement Test to

Michael Bies who at the time was twelve years of age and he should have been in the Seventh

Grade.  [Id. at 352]. He was performing at the following grade levels: word recognition 3.0;

Spelling 2.1; math 3.0, vocabulary 1.2 and comprehension 1.5 [Id.]  The evaluator described

him:

> Michael completed testing in one session.  He scored many years below grade
> level in all areas.  On the spelling he only spelled "cat" and "run" correctly.  He
> made three errors on the coding section.  On the Word section he only read
> "milk", "city," "in," and "tree," correctly.  Michael seems to understand adding
> with regrouping although he made a computational error.  He cannot subtract
> when regrouping is required.  He does not seem able to multiply or divide.

[Id.]

On February 6, 1985, Psychologist Eileen Meyer, M.A. administered additional psychological testing to Michael Bies. [Doc. 101, Sup. St. Ct. App. Vol. 8, p. 353]. He had a full scale performance IQ of 50. [Id. at p. 354]. On the same date he scored a 42 on the Peabody Picture Vocabulary Test which placed him in the lowest one percent of the population. [Id.]

At the age of fourteen the Social Security Administration diagnosed Michael Bies as suffering from mental retardation and determined that he was eligible to receive monthly Supplemental Social Security payments. [Tr. 1107]. He continued to receive these payments up until the time of his trial.

The First District Court of Appeals on direct appeal made the following findings of fact concerning Michael Bies' social history, "he has exhibited developmental delays from birth; that he has been in special education-classes since kindergarten; that he was placed in 'therapeutic schools' that deal with severe behavioral problems; that he has a history of psychiatric hospitalizations; that he exhibited suicidal tendencies…" State v. Bies, 1994 Ohio App. LEXIS 1304 at p. 27[2]

## III.   THE STATE COURTS FOUND AND THE PROSECUTORS SUBSEQUENTLY CONCEDED THAT MICHAEL BIES IS MENTALLY RETARDED.

### A.   The Trial Evidence Supported The Finding That Bies Is Mentally Retarded.

Trial counsel for Michael Bies filed a Not Guilty By Reason of Insanity plea and the trial court appointed three independent experts to evaluate him. [St. Ct. App. Vol. I, p. 19]. Dr. Myron Fridman in his report stated: "Michael Bies is a marginally functioning, mildly mentally retarded man from a dysfunctional family background who has never fully achieved satisfactory life adjustment." [St. Ct. App. Vol. I, p. 340]. Dr. Fridman observed that Michael Bies' "thought processes [were] . . . at times somewhat illogical." [St. Ct. App. Vol. I, p. 339]. Dr.

---

[2] The First District Court of Appeals found that this social history was "of minimal mitigating value." Id.

Donna Winter, who worked for the Hamilton County Court Clinic, similarly concluded that Michael Bies "appeared to function in the range of borderline mentally retarded." [Exhibit 2, p. 6]. Dr. Winter, in her sentencing report, stated that "Mr. Bies doesn't think logically. He often contradicts himself and doesn't seem to grasp the total picture of his circumstances with anything but superficial understanding." [Doc. 101, Sup. St. Ct. App. Vol. 8, p. 107]. He is functionally illiterate. [Id.]

Dr. Winter testified in the mitigation phase that Michael Bies had an IQ of 68 and suffered from mild to borderline mental retardation. [Tr. 11054, 1117]. He was operating on the level of a third to sixth grader [Tr. 1117]; he suffered from brain damage which caused him to be learning impaired [Tr. 1117] and he was hearing voices. [Tr. 1100]. Michael Bies, while awaiting trial, was more concerned about a pending theft charge in the State of Indiana than his capital case in the State of Ohio. [Tr. 1119].

Michael Bies could not understand the proceedings at trial. [Tr. 1085]. He could not even tell the psychologist as to what stage the trial had progressed. [Tr. 1118]. Michael Bies sat and drew pictures throughout the proceedings. [Defendant's Mitigation Exhibit 1]. Dr. Winter described his drawings as very "primitive." [Tr. 1105]. Michael Bies was unable to read a two paragraph statement to the jury. [Tr. 1088; Defendant's Mitigation Exhibit 2].

During closing argument in the mitigation phase, defense counsel argued that the jury should not vote to execute Michael Bies because he was operating at the level of a third grader because of his low IQ. [Tr. 1157-1159, 1164, 1169]. The trial prosecutor conceded that Michael Bies had an IQ of 68 and "that Michael Bies is not intelligent. I think that we can all accept that." [Tr. 1180]. The jury, after deliberating for almost ten hours, returned a verdict recommending that he be sentenced to death. [Tr. 1205-1206, 1210].

### *B. The State Courts on Direct Appeal Found that Michael Bies is Mentally Retarded.*

On his direct appeal of right to the Hamilton County Court of Appeals, counsel for Michael Bies argued that there was insufficient evidence to support the jury's sentencing recommendation. [St. Ct. App. Vol. II, p. 54-61]. Counsel referenced his mental retardation, "During the penalty phase of the trial, a psychiatrist who had tested Bies noted that his score on an intelligence test was a mere 69, which meant that the Appellant was mildly to moderately retarded." [Id. at p. 55]. Counsel further argued that Michael Bies' mental age (as a result of his mental retardation) precluded a sentence of death, "The Appellant was twenty years old at the time the incident occurred, but his mental age was that of, at best, a sixth-grader." [Id. at p. 57].

The prosecutors, in their Merit Brief, contested his mental retardation. [St. Ct. App. Vol. II, p. 139]. The prosecutors, however was limited their argument to two paragraphs given the uncontraverted record of mental retardation in the trial court. [Id.] Appellate counsel in their reply brief vehemently opposed the state's notion that Michael Bies was not mentally retarded. [Id. at p. 185-186].

On March 30, 1994, the Hamilton County Court of Appeals decided Michael Bies' direct appeal. State v. Bies, 1994 Ohio App LEXIS 1304 (Ham. March 30, 1994), [Exhibit B, attached hereto]. [St. Ct. App., Vol. II, pp. 223-246]. That Court determined that he suffered from "mild mental retardation to borderline mental retardation." [Id. at p. 244.]

In the direct appeal of right to the Ohio Supreme Court, appellate counsel for Michael Bies again argued that the weight of the evidence did not support the jury's death recommendation. [St. Ct. App., Vol. III, pp. 143-148]. Appellate counsel focused the argument upon his mental retardation. [Id.] The state again disputed Michael's mental retardation. [Id. at

pp. 276-277]. Appellate counsel, in the Reply Brief, again focused upon Michael Bies' low intelligence. [Id. at pp. 316-317].

The Ohio Supreme Court, in affirming his conviction and sentence, recognized that "Dr. Winter found that Bies was mildly to borderline mentally retarded". State v. Bies, 74 Ohio St. 3d 320, 327 (1996). Based upon that testimony, the Ohio Supreme Court found that Michael suffered from "mild to borderline mental retardation." Id. at 328.

### C.    The Prosecutors in Post-conviction Embraced the State Court Findings of Retardation.

On September 20, 1996, Michael Bies filed his initial post-conviction petition with the trial court. In his Fifth Claim for Relief he asserted that it would be unconstitutional to execute him because he was mentally retarded. [St. Ct. App. Vol. IV, pp. 18-20].

On July 22, 1998, the late Judge Robert S. Kraft issued his findings of facts and conclusions of law. [St. Ct. App. Vol. V, p. 472-485]. The Assistant Prosecutor assigned to the case wrote the Judge's findings for him. The Judge concluded, based upon the prosecutor's proposed findings, that:

> (1)    The defendant is *shown by the record to be mildly mentally retarded with an IQ of about 69.*

> The Court makes the following Conclusion of Law:

> (1)    As a matter of law, a mildly mentally retarded defendant may be punished by execution. State v. Holloway, 38 Ohio St. 3d 239 (1988). [emphasis added.]

[Id. at p. 480].

In Michael Bies' post-conviction appeal to the First District Court of Appeals, the prosecution again conceded Michael's mental retardation:

> Defendant's fifth claim for relief is that it is cruel and unusual punishment to execute a retarded person. *The record reveals defendant to be mildly mentally*

> *retarded with an I.Q. of about 69.*  As a matter of law, such a person may be
> punished by execution.  <u>State v. Holloway</u>, 38 Ohio St. 3d 239, 527 N.E.2d 831
> (1988).  [emphasis added.]

[St. Ct. App. Vol. VI, p. 140].

In the post-conviction proceedings in the Ohio Supreme Court, the state, in its

Memorandum In Response, again conceded that Michael Bies suffered from mental retardation.

> Defendant's fifth claim for relief is that it is cruel and unusual punishment
> to execute a retarded person.  *The record reveals defendant to be mildly mentally
> retarded with an I.Q. of about 69.*  As a matter of law, such a person may be
> punished by execution.  <u>State v. Holloway</u>, 38 Ohio St. 3d 239, 527 N.E.2d 831
> (1988).  [emphasis added.]

[<u>Id.</u> at p. 310].

### D.  The Prosecutors Now Want to Contest the Mental Retardation Issue.

On May 1, 2003, Michael Bies filed with the trial court his Mental Retardation Petition in

which he requested that the court declare he was mentally retarded and that his death sentence be

vacated pursuant to <u>Atkins v. Virginia</u>, 536 U.S. 34 (2002).[3] [Doc. 101, Sup. St. Ct. App. Vol. 8,

pp. 15-66].  On August 15, 2003, he filed a Motion for Summary Judgment citing to the prior

court findings of mental retardation. [Doc. 101, Sup. St. Ct. App. Vol. 8, pp. 181-194, 317-369].

The prosecutors opposed the Motion for Summary Judgment [Doc. 101, Sup. St. Ct. App.

Vol. 8, pp. 370-375].  This is despite the fact that the Ohio courts now employ the same

---

[3] On June 26, 2003, he filed an Amended Petition. [Doc. 101, Sup. St. Ct. App. Vol. 8,  p. 70-136].

definition of mental retardation that the courts applied at the time of Michael Bies' trial.[4]  The prosecution, in its Memo Contra, incredibly told the state trial court that "It is clear that Bies' IQ progressively became more and more *normal* and he became *increasingly intellectual*.  He does not have sub-average intelligence." [Id. at p. 372]. (Emphasis added.)  None of Michael Bies' test scores support the conclusion that he is of "normal intelligence," let alone an "intellectual."

The prosecutor also cited to the fact that Michael Bies was married and fathered two children [Doc. 101, Sup. St. Ct. App. Vol. 8, p. 373].  Neither "activity" requires any level of intelligence.  He did not support either his wife or children.  Finally the prosecutor contended that Michael Bies was able to maintain a job. [Id.]. What few jobs Michael Bies were menial and of brief duration. As Dr. Winter concluded at trial, Michael Bies has demonstrated "a basic failure to succeed in any part of his life, i.e. school, vocation . . ." [Id. at p. 108].  She further concluded that Michael "has no employment history to speak of" [Id. at p. 105].

The state court overruled Michael Bies' Motion for Summary Judgment.  That ruling means that it will permit retesting of Michael Bies and conduct an evidentiary hearing at which the prosecutors will have *yet* another opportunity to contest that Michael Bies' mental retardation.  The burden at that hearing will be on Michael Bies to prove, despite all of the findings and concessions, that he was mentally retarded.  State v. Lott, 97 Ohio St. 3d at 307.

---

[4]  The Ohio courts presently apply the following test: 1) significantly subaverage intellectual functioning, 2) significant limitations in two or more adaptive skills, and 3) onset before the age of eighteen.  State v. Lott, 97 Ohio St. 3d 303, 305 (2002).  At the time of Michael Bies' trial the American Psychiatric Association's definition of mental retardation was as follows:  1) significantly subaverage general intellectual functioning, accompanied by 2) significant deficits or impairments in adaptive functioning, with 3) onset before the age of 18.  Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, Third Edition Revised, 1987), p. 28.  At that time the American Association Of Mental Retardation had promulgated the same definition for mental retardation; 1) significantly subaverage intellectual functioning, 2) limitation in two or more adaptive skill areas, and 3) the onset before the age of eighteen.  Mental Retardation (American Association on Mental Retardation, 1992) pp. 5-6.

IV.    **COLLATERAL ESTOPPEL PRECLUDES THE STATE FROM LITIGATING ISSUES DETERMINED IN PRIOR COURT PROCEEDINGS.[5]**

The present appeal before this Court involves a very limited issue. As will be explained herein, that issue does *not* involve whether Michael Bies is mentally retarded.[6] The issue instead involves whether the prosecutors should be permitted once again to relitigate Michael Bies' mental retardation. The Chief Magistrate Judge correctly framed the question, when he held, "The question before this Court, then, is whether these multiple, consistent state court findings of mental retardation conclusively establish for purposes of this case that Michael Bies is mentally retarded and therefore may not be executed." [Doc. 107, R & R, p.3].

After all of the relevant decisions of the United States Supreme Court are reviewed, it is readily apparent that the Chief Magistrate Judge correctly decided this issue. The Fifth Amendment precludes the prosecutors from now discarding all of the state court mental retardation findings that it previously opposed in its briefings on direct appeals and subsequently adopted three separate times in post-conviction proceedings.

### 1. *The Double Jeopardy Clause Applies to State Capital Sentencing Proceedings.*

The Double Jeopardy Clause of the Fifth Amendment states, "nor shall any person be subject for the same offense to twice be put in jeopardy of life or limb." The clause protects an accused against multiple prosecutions or sentences for the same offense. Jones v. Thomas, 491 U.S. 376, 381 (1989). The underlying theory is that the state, with all of its resources and power should not be allowed to make repeated attempts to convict an individual for the same offense

---

[5] The Warden argued to the Magistrate that Bies had not exhausted the Double Jeopardy Claim. [Doc. 104, Warden's Memorandum, pp. 8-9. The Chief Magistrate Judge addressed this issue [Doc. 107, R & R, pp. 3-4]. The Warden has not raised that issue in this appeal.

[6] The Warden misconstrues Michael Bies' argument. The Warden, without citation to the habeas record, asserts that "Bies claims that since there is no evidence in the record that his IQ is below 70, the State is now prevented from litigating his mental retardation claim based on double jeopardy and collateral estoppel." [Doc. 108, Objections, pp. 8-9]. Michael Bies, while he provided the Chief Magistrate Judge with background on his intellectual deficiencies, has always premised his collateral estoppel argument exclusively on the prior state court findings and prosecutors' concessions.

"thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibilities that even though innocent, he may be found guilty." Green v. United States, 355 U.S. 184, 187-188 (1957). The clause is applicable to the individual states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969).

The Double Jeopardy Clause applies to sentencing proceedings in capital cases. Bullington v. Missouri, 451 U.S. 430, 445 (1981), Arizona v. Rumsey, 467 U.S. 203, 211 (1984). The "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" faced by a defendant at a capital sentencing hearing is at least the equivalent to that faced by a defendant in a non-capital criminal trial. Bullington, 451 U.S. at 445. In addition, there is the risk, that if prosecutors could subject defendants to repeated capital sentencing hearings for the same offense, the state with its superior resources, would wear down defendants, thereby leading to an inappropriate death sentences.

### 2. *The Double Jeopardy Clause Includes Collateral Estoppel.*

Principles of collateral are embodied in the Double Jeopardy Clause. Ashe v. Swenson, 397 U.S. 436, 445 (1970); United States v. Jenkins, 902 F.2d 459, 462 (6th Cir. 1990). When an issue of ultimate fact has been determined by a valid and final judgment; the parties are estopped from relitigating that issue. Ashe, 397 U.S. at 443; Dowling v. United States, 493 U.S. 342, 348 (1996); United States v. Uselton, 927 F.2d 905, 907 (6th Cir. 1991).

In Ashe, the defendant was charged with six counts of robbery and one count of car theft arising from the robbery of six persons playing poker. The defendant initially went to trial for the robbery of one of the poker players. The sole issue at trial was whether Ashe had committed the robbery. The jury found him not guilty. Shortly thereafter the prosecution brought Ashe to

trial for the robbery of another of the poker players. The state buttressed its identification evidence at the second trial and the jury convicted Ashe. Id. at 438.

The Supreme Court looked to the evidence, the charge, and the jury instructions at Ashe's first trial and concluded that the doctrine of collateral estoppel barred the prosecutors from bringing Ashe to trial for the robbery of any of the other poker players. This Court held, "Once the jury had determined upon conflicting testimony that there was a least a reasonable doubt that the petitioner was one of the robbers, *the state could not present the same or different identification evidence* in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing." Id. at 446. (emphasis added)

### 3.     *Michael Bies is Entitled to Relief Pursuant To the Factors Identified in Ashe.*

To prevail upon a defense of collateral estoppel, Michael Bies must demonstrate that 1) his mental retardation was a material fact in the state court litigation; 2) that the issue was determined in his favor by a valid and final judgment, and 3) the same parties are attempting to relitigate the same fact. Ashe, 397 U.S. at 443. While Michael Bies has the burden of proof to prove the applicability of the doctrine, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Id. at 444. The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Seilfon v. United States, 332 U.S. 575, 579 (1948).

A court when deciding a collateral estoppel issue generally must examine the facts adduced and the jury instructions to determine if the fact in question in the latter proceedings was a disputed, material issue in the prior litigation. Seilfon v. United States, 332 U.S. at 579. In some cases that can be a tedious process. That fortunately is not the scenario in the present case.

On direct appeal, in both the Hamilton County Court of Appeals and the Ohio Supreme Court, counsel argued that Michael Bies should not be sentenced to death because he was mentally retarded. [St. Ct. App. Vol. II, pp. 55, 57, 185-6: Vol. III, pp. 143-148, 316-17]. The state, in both courts argued that Michael Bies' was not mentally retarded, citing to what little evidence in the record supported its claim. [St. Ct. App. Vol. II, pp. 139: Vol. III, pp. 276-77]. Thus the mental retardation issue was clearly a material and disputed issue on direct appeal.

The issue of which facts were ultimately determined in prior litigation can also be a vexing issue, especially in the case of general verdicts. *See* Dowling v. United States, 493 U.S. 342, 352 (1990). Schiro v. Farley, 510 U.S. 222, 233-236 (1994). Again, this is "easy" issue in the present case. Both the Court of Appeals and the Ohio Supreme Court made specific findings as to Michael Bies' mental retardation [St. Ct. App. Vol. II, p. 244, State v. Bies, 74 Ohio St. 3d 320, 327-8 (1996)]. In the subsequent post-conviction litigation, the prosecutor accepted these appellate findings. [St. Ct. App. Vol. V, pp. 388; Vol. VI, pp. 140, 310].

The fact that two of the three mental retardation findings were made by the state appellate courts, as opposed to trial courts makes no difference. State appellate court fact findings, for the most part, have the same effect for federal habeas purposes as do state trial court findings. Cabana v. Bullock, 474 U.S. 376, 387 (1986). For purposes of Double Jeopardy analysis, appellate court findings are treated the same as trial court findings. Burks v. United States, 437 U.S. 1, 16 (1978).

The present case also meets the final part of the Ashe test. The prosecutors have conceded that they are attempting to retry the prior state court findings of mental retardation. [St. Ct. App. Vol. VIII, p. 374]. They have requested another hearing, to "once and for all" determine if Michael Bies  is mental retarded, but this time pursuant to the test announced in

State v. Lott, 97 Ohio St. 3d 303 (2002).[7]  The state's argument must be rejected because "where the Double Jeopardy Clause is applicable, its sweep is absolute.  There are no 'equities' to be balanced, for the clause has declared a constitutional policy, based on grounds which are not open to judicial examination."  Burks, 437 U.S. at 11 n.6.  Therefore any rationale that the Warden may offer now as to the reason(s) that the prior state court findings are deficient or that additional evidence should be presented are irrelevant in a constitutional sense.

### 4.    *The Granting of Relief Is Consistent with the Theories Underlying the Fifth Amendment.*

The Double Jeopardy Clause precludes the government from forcing a defendant to again face the "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" of a second capital sentencing hearing for the same offense.  Bullington, 451 U.S. at 445-46.  Given his long history of significant and debilitating mental illnesses, Michael Bies is especially in need of the protections afforded by the Double Jeopardy Clause.  He, even more than the average person, lacks the internal resources to protect his person from the embarrassment, expense, ordeal, anxiety and insecurity of a second capital sentencing hearing, albeit even a limited hearing.  See Atkins v. Virginia, 536 U.S. at 320-21 ("lesser ability of mentally retarded defendants to make a persuasive showing of mitigation" and "may be less able to give meaningful assistance to their counsel…").

The Double Jeopardy Clause forbids a second trial "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."  Burks, 437 U.S. at 11.  The court, prior to trial, appointed three psychological experts to evaluate Michael Bies.  [St. Ct. App. Vol. I, p. 19]**.**  The prosecutors could have called any of these three experts at the mitigation hearing, but they did not.  The state now wants

---

[7] The test that the Ohio Supreme Court adopted in Lott for purposes of determining mental retardation is not a "new" test, but rather the same test that existed at the time of Michael Bies' trial. *See* page 9, n. 4. supra.

additional experts appointed and an opportunity, if it so chooses, to call these experts at an evidentiary hearing. The Double Jeopardy "would be negated" if the state was afforded "an opportunity for the proverbial 'second bite at the apple'" in the present case. <u>Burks</u>, 437 U.S. at 17.

There is an "unacceptable high risk" that there will be "an erroneously imposed death sentence" if the state were to have a second bite of the apple and Michael Bies was forced again to prove that he was mentally retarded at the time of his trial. <u>Bullington</u>, 451 U.S. at 445-46.

## IV.  MICHAEL BIES' DOUBLE JEOPARDY CLAIM IS NOT GOVERNED BY <u>STATE V. LOTT</u>, 97 OHIO ST. 3D 303 (2002).

The Ohio Supreme Court has created a procedure for litigating the merits of post-trial mental retardation claims. <u>State v. Lott</u>, 97 Ohio St.3d 303 (2002).[8] The Court in <u>Lott</u> did not reach the collateral estoppel issue which is presently before this Court because the appellate courts had not previously found that Lott was mentally retarded. <u>State v. Lott</u>, 1989 Ohio App. LEXIS 969 (Cuy. App. March 16, 1989) p. *110-115 [Exhibit A, attached hereto]; <u>State v. Lott</u>, 51 Ohio St.3d 160, 172 (1990).

The Warden's assertion that Michael Bies must avail himself of the <u>Lott</u> procedures begs the issue that is before this Court. [Doc. 108, Objections, pp. 9-10]. The Double Jeopardy Clause not only protects the defendant from potentially conflicting results, but also from just having to "show up" and participate in the second round of litigation involving the same facts that were previously decided. <u>Justices of Boston Municipal Court v. Lydon</u>, 466 U.S. 294, 303 (1984) ("a requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause."). Requiring Michael Bies to go through yet another hearing

---

[8] The state court at trial followed a procedure that is very similar to the procedure established by the Ohio Supreme Court in <u>Lott</u>. See Petitioner's Memorandum [Doc. 103, pp. 2-4].

prior to resolving the present issue, would deprive him of one of the basic protections afforded by the Fifth Amendment.

The Warden cites to the fact that the United States Supreme Court in <u>Atkins</u>, left it to the state courts to develop judicial procedures to implement that decision. [Doc. 108, Objections, p. 9]. Michael Bies is not questioning the legitimacy or correctness of the Ohio procedures. Instead he is asserting that the prosecutors cannot, consistent with the Fifth Amendment, force him to relitigate his mental retardation. His argument would remain the same regardless of the form or type of procedures which the Ohio Supreme Court adopted in <u>Lott</u>.

## V.     THE CORRECTNESS OF THE STATE COURTS' REPEATED MENTAL RETARDATION FINDINGS ARE NOT BEFORE THIS COURT.

The Warden spends much of her appeal arguing that Michael Bies is not mentally retarded [Doc. 108, Objections pp. 10-13]. The Warden's argument is not well founded. <u>Harris v. Washington</u>, 404 U.S. 55, 56-57 (1971). In that case the jury acquitted the defendant as to one of the three victims who he was alleged to have murdered. The prosecutor subsequently charged the defendant with the murder of the other two victims. The state courts rejected the defendant's collateral estoppel claim because the state at the second trial was going to introduce additional evidence that the trial court had precluded the prosecution from introducing at the first trial. The Supreme Court found that "the State concedes that the ultimate issue of identity was decided by the jury in the first trial. That being so, the constitutional guarantee applies, irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the State in bringing successive prosecutions."  <u>Id.</u> at 56.

The Chief Magistrate Judge best described the flaw in the Warden's argument, "the State has gathered more evidence and seeks a different determination from a different fact finder. But that is precisely the result that the Double Jeopardy Clause proscribes." [Doc. 107, R & R, pp. 6-

7] (footnote omitted). To hold otherwise, would remove the finality of all judgments because the loosing party could always find additional evidence to present to the trier of fact in a second proceeding.

## VI.     AEDPA DOES NOT PRECLUDE THE GRANTING OF RELIEF.

The Warden argues that the standard of review contained in 28 U.S.C. 2254(d) precludes the granting of relief. She relies upon the factual assertion that the United States Supreme Court has never applied the doctrine of collateral estoppel to an issue involving mental retardation. [Doc. 108, Objections, pp. 7-8]. The Warden's argument fails for several reasons.

This Court should not apply the standard of review contained in 28 U.S.C. 2254, and instead should apply *de novo* review pursuant to 28 U.S.C. 2241. Four circuits have held that when federal courts address a pretrial double claim jeopardy, they should apply *de novo* review pursuant to 28 U.S.C. 2241. Benson v. Superior Court of Massachusetts, 663 F. 2d 335, 358 (1st Cir., 1981); Stringer v. Williams, 161 F.3d 259, 262 (5th Cir. 1998); Jordan v. McCaughtry, 251 F.3d 596, 597 (7th Cir., 2001); Stow v. Murashige, 389 F.3d 880, 886 (9th Cir. 2004). The Sixth Circuit has reached the same conclusion, *albeit* in an unreported opinion. Moyer v. Petty, 811 F.2d 606, 1986 U.S. App. LEXIS 35145 (6th Cir. Dec. 23, 1986), p. *7. ("Therefore, Moyer's claim of issue preclusion is likewise cognizable under 28 U.S.C. 2241(c)(3).") [Exhibit C attached hereto]. The Chief Judge elected to apply the standard contained in 28 U.S.C. 2254 because "all of the cited authority is pre-AEDPA." [Doc. 107, R & R, p. 7]. This is incorrect. While the Stringer, Jordan, and Stow decisions do not explicitly state that the petitions are governed by the AEDPA, a reading of all three cases would indicate that they were filed subsequent to the enactment of the AEDPA.

Even if the Court applies the standard of review contained in 28 U.S.C. 2254(d) it should still affirm the Magistrate's Report and Recommendation. The Warden applies an unduly restrictive interpretation of that standard. The Warden argues that "it is not likely that the Supreme Court of the United States would ever hold that a determination of mental retardation for purposes of the Eighth Amendment is a fact that is subject to the protections of the Double Jeopardy Clause." [Doc. 108, Objections, p. 7]. This cannot be correct. If the prosecution lost at a mental retardation hearing, the Double Jeopardy Clause would certainly preclude the prosecutors from again and again in the same case forcing the defendant to run the gauntlet as to mental retardation.

A habeas court can grant relief if the state court decision "resulted in a decision that was contrary to, or *involved an unreasonable application of clearly established law*, as determined by the United States Supreme Court…" 28 U.S.C. 2254(d) (emphasis added). The plain wording of the statute negates the Warden's claim that this Court cannot grant relief because the Supreme Court has not issued an opinion addressing collateral estoppel in the context of mental retardation. [Doc. 208, Objections, p. 7]. A state court decision is unreasonable when the state court identifies the correct governing principle but unreasonably applies the principle to the facts of a defendant's case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). This unreasonable application analysis, which this Court is required to perform, is premised on the fact that there is not a Supreme Court case directly on point.

The Chief Magistrate Judge accurately portrayed the relevant state court decision concerning the collateral estoppel issue:

> In her first Decision (April 5, 2004), Judge Myers does not advert to the Double Jeopardy question. She decides that there are genuine issues of material fact on the question of mental retardation upon the evidence presented in the post-conviction

proceeding. She decided that neither judicial estoppel nor the law of the case doctrine applied, but did not discuss collateral estoppel. Petitioner renewed his motion for summary judgment, expressly calling the court's attention to the Double Jeopardy claim he had made in the first motion. Judge Myers' entire decision on the renewed motion reads as follows:

> This matter is before the Court on Petitioner Michael Bies' Renewed Motion for Summary Judgment. The Court has considered the Motion and hereby denies the same. The Court incorporates by reference its prior decision, and to the extent not specifically stated, finds for the reasons discussed in its prior decision that the double jeopardy clause does not require summary judgment in this case.

[Doc. 107, R& R, pp. 8-9]

The state court decision, as to the collateral estoppel issue, was an unreasonable application, if not contrary to, established Supreme Court case law. The state court judge gave as her reasons for denying summary judgment on the collateral estoppel issue as the same reasons that she rejected the factual issue concerning Bies' mental retardation. She perceived that there were genuine issues of material fact concerning whether Michael Bies was mentally retarded. As the Chief Magistrate Judge correctly recognized "However, the issues involved in applying *Ashe v. Swenson* and its progeny to this case are not the same as the issues of whether there are genuine issues of material fact in the pending 2953.21 proceeding or whether judicial estoppel or law of the case preclude relitigation." [Doc. 107, R & R, p. 10]. This conclusion by the Chief Magistrate Judge was consistent with established Supreme Court precedent. A prior decision which qualifies as jeopardy, does not lose that effect "no matter how erroneous" the decision. Burks, 437 U.S. at 16. In Ashe, the Court found collateral estoppel barred the successive prosecution even though the eyewitness "testimony was substantially stronger on the issue of the petitioner's identity" at the second trial. Id. at 439-440. The Double Jeopardy Clause applies even if there is new evidence which the prosecution was precluded from submitting at the first trial. Harris v. Washington, 404 U.S. at 56.

19

## VII.   THE GRANTING OF RELIEF WOULD NOT CONSTITUTE A NEW RULE OF LAW.

The Warden for the first time argues that this Court is barred from granting relief pursuant to Teague v. Lane, 489 U.S. 288 (2004). [Doc. 108, Objections, p. 8]. The Warden's "argument" is limited to a single sentence, so Michael Bies must speculate as to exact nature of the Warden's argument. [Id.].

In Teague, the United States Supreme Court held that new constitutional rules of criminal procedure, unless they meet one of two exceptions, are not applicable to those cases which became final before the new rules were announce. Id. at 310. A conviction becomes final on the date that Supreme Court denies a defendant's petition for certiorari on direct appeal or if the petitioner does not seek certiorari the date that he could have filed his petition for certiorari. Allen v. Hardy, 478 U.S. 255, 258, n. 1 (1986). A case announces a new rule of law when it breaks new ground of imposes a new obligation on the states or Federal Government. Teague, 489 U.S. at 301.

As demonstrated previously herein, the granting of relief in this case is dictated by Ashe v. Swenson, which the United States Supreme Court decided in 1970. The Supreme Court denied certiorari on Michael Bies' case on June 3, 1996 (Bies v. Ohio, 517 U.S. 1238 (1996)), twenty six years after that Court decided Ashe. Thus Teague is not applicable to the issue that is before this Court. [9]

---

[9] The Warden cites Schiro v. Summerlin, 542 U.S. 348 (2004). [Doc. 108, Objections, p. 8]. In that case the court decided whether the new rule of law that the Court announced in Ring v. Arizona, 536 U.S. 584 (2002) would apply to Summerlin whose case which was already on collateral review at the time the Court decided Ring. That case is to be contrasted with the present case in which Michael Bies requests this Court to apply a rule of law that the Supreme Court announced prior to his birth.

## VI.    CONCLUSION: THIS COURT SHOULD AFFIRM THE DECISION OF THE CHIEF MAGISTRATE JUDGE.

The Chief Magistrate Judge correctly recommended that "this Court should conclude that the Double Jeopardy Clause bars retrying the issue of whether Petitioner is mentally retarded. That fact is conclusively established for purposes of this habeas corpus proceeding by the prior state court judgments. This Court should issue a writ of habeas corpus *ad subjiciendum* requiring the State of Ohio to vacate Petitioner's capital sentence and re-sentence him in accordance with Ohio law to some other sentence." [Doc. 107, R & R, pp. 10-11].

All three levels of the state courts that reviewed Michael Bies' appeals determined that he is mild to borderline mentally retarded. These findings were made after three experts, who the trial court selected, evaluated him. The appellate findings were made after both sides fully briefed the issue in each court. The post-conviction finding was made after the prosecutor conceded the issue and wrote the mental retardation finding for the trial court.

To hold otherwise would, in effect, permit the prosecutors to ignore years of state court litigation solely on the basis that they do not like the outcome of the prior mental retardation litigation. The Double Jeopardy Clause was enacted to protect individuals from exactly this type of repetitive, abusive litigation by the government.

Respectfully submitted,

s/ S. Scott Haynes
S. SCOTT HAYNES - 0059586
Hallowes, Allen & Haynes
6445 E. Livingston Avenue
Reynoldsburg, Ohio 43068
Telephone: (614) 868-0009
Facsimile: (614) 868-0029

and

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio  43215-2998
Telephone:  (614) 466-5394
Facsimile:  (614) 644-0703

COUNSEL FOR MICHAEL BIES

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2005, a true copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

s/ S. Scott Haynes
S. SCOTT HAYNES

COUNSEL FOR MICHAEL BIES

229072

22