The appellant's eighth assignment of error is that:

"THE TRIAL COURT IMPROPERLY CONSIDERED NON-STATUTORY AGGRAVATING FACTORS, GAVE NO WEIGHT TO MITIGATING FACTORS AND FAILED TO GIVE REASONS WHY THE AGGRAVATING CIRCUMSTANCE THE OFFENDER WAS FOUND GUILTY OF COMMITTING WAS SUFFICIENT TO OUTWEIGH MITIGATING FACTORS."

A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. VIII: THE TRIAL COURT IMPROPERLY CONSIDERED NONSTATUTORY AGGRAVATING FACTORS

Assignment of Error No. VIII raises the issue of whether the trial court improperly considered non-statutory aggravating circumstances during the mitigation hearing, gave no weight [*60] to mitigating factors, and failed to provide a reason as to why the aggravating circumstances outweighed the mitigating factors. This assignment of error is not well taken.

The appellant argues that the trial court improperly considered the nature and the circumstances of setting an elderly man of 84 years on fire as an aggravating factor. The appellant additionally argues that the trial court gave no weight to the mitigating factors and failed to provide reasoning as to why the aggravating circumstance outweighed the mitigating factors.

As dealt with in the appellant's ninth assignment of error, the claim of prosecutorial misconduct through the attempt of the prosecutor to introduce nonstatutory aggravating factors for the trial court's consideration will be considered simultaneously with this eighth assignment of error.

B. THE LAW RE THE IMPOSITION OF CAPITAL PUNISHMENT R.C. 2929.03(D):

STANDARD FOR IMPOSING PENALTY OF DEATH

R.C. 2929.03(D)(3) deals with the imposition of a sentence of death, provides that:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the [*61] reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. * * *"

R.C. 2929.03(F), which deals with the requirement of a separate opinion by the three judge panel when a sentence of death is imposed, provides that:

"The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * *"

C. TRIAL COURT'S MITIGATION HEARING [*62] FINDINGS

On August 25, 1987, the trial court issued its separate findings pursuant to R.C. 2929.03(F) and stated that:

"The herein Three Judge Panel having on the 17th day of July, 1987, found the defendant,

Gregory Lott, Guilty beyond a reasonable doubt of the charge of Aggravated Felony Murder with Specification under *2903.01(B) of the Ohio Revised Code* and having at the Mitigation Trial on the 29th day of July, 1987, found beyond a reasonable doubt that no factors in mitigation existed justifying the modification of the sentence of death, pursuant to *2929.03(F) of the Ohio Revised Code*, the Panel makes the following specific findings of mitigation:

"1) Upon the evidence, testimony of witnesses, testimony of expert witnesses and upon the record at trial, the Panel finds no mitigation in the act, intentions or omissions of the defendant in the commission of the crime for aggravated murder, aggravated robbery, aggravated burglary.

"2) Upon the evidence, the Panel specifically finds no mitigation in the instrumentality of death, to-wit: the setting of the victim on fire and further, specifically finds that the act of setting the victim (an elderly man of 84 years) on fire **[*63]** and the leaving of him unattended with the probability of death was a factor in aggravation.

"3) From the evidence, sworn testimony of witnesses, sworn testimony of expert witnesses, from the unsworn testimony of the defendant, from the record of trial, and from all other evidence presented at the trial in mitigation and pursuant to 2929.04(B), the Panel finds:

"a) that the victim did not induce or facilitate his murder;

"b) that no mitigating factor of duress, coercion or strong provocation existed at the time of the act that eventually resulted in the death of the victim;

"c) that no mitigating factor of mental disease, mental defect or the lack of substantial capacity

to appreciate the criminality of his (the defendant) conduct or to conform his (the defendant) conduct to the requirements of law existed at the time of the commission of the offense;

"d) that no mitigating factor relating to the youth of the defendant existed at the time of the offense;

"e) that the defendant's past criminal record was not a factor in mitigation nor was it a factor in aggravation;

"f) that the defendant was the sole and principal offender in the commission of the offense which **[*64]** led to the ultimate death of the victim;

"g) that all other factors including the factor of mercy were considered and no factor in mitigation of the sentence of death was found present."

## D. THE STATUTORY AND CASE LAW AS APPLIED TO THE TRIAL COURT'S FINDING

R.C. 2929.04(A) enumerates eight aggravating circumstances which will allow the imposition of the penalty of death. In the case sub judice, the opinion of the three judge panel established that the appellant was guilty of the aggravating circumstance of *R.C. 2929.04(A)(7)*: the aggravated murder of John McGrath was committed while the offender was committing, attempting to commit, or fleeing after committing aggravated arson, aggravated robbery, or aggravated burglary.

However, the three judge panel also found in its second finding that the nature and the circumstances of the offense, the setting on fire of an elderly man of 84 years and the leaving of him unattended with the possibility of death, was an aggravating factor. Thus, the three judge panel found the nature and circumstances of the offense to be an aggravating factor.

The Supreme Court of Ohio has held that a trial court must consider the nature and circumstances [*65] of the offense in order to properly weigh the mitigating factors against the aggravating circumstances. However, the nature and circumstances of the offense may not be considered by the trial court as an aggravating circumstance in and of itself.

"The state further maintains that the trial court was considering the nature and circumstances of the offense as it was required to do pursuant to *R.C. 2929.04(B)*. However, a thorough review of the trial court's opinion does not dictate a finding that the trial court was merely relying on the nature and circumstances of the crime as a reason why the aggravating circumstances outweighed the mitigating factors. In State v. Stumpf, supra; *State v. Byrd (1987), 32 Ohio St. 3d 79, 512 N.E. 2d 611;* and *State v. Jester (1987), 32 Ohio St. 3d 147, 512 N.E.2d 962,* we held that a trial court's consideration of the nature and consideration of the offense was not improper. In Steffen, we found that *R.C. 2929.04(B)* required a trial court to '"consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense * * *."' (Emphasis added in part and deleted in [*66] part.) Id. at 117, 31 OBR at 278, 509 N.E.2d at 390. 'The statute merely requires that the court consider this factor in determining the mitigating factors to be weighed against the proven aggravating circumstances. Obviously, the nature and circumstances of certain offenses will be such that no mitigating feature can be extracted.' (Emphasis added.) Id. in Stumpf, we held in paragraph one of the syllabus that: 'Under R.C. 2929.039(F), a trial court or three-judge panel may rely upon and cite the nature of circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors.' In Byrd, we cited Steffen and then stated: 'The trial court in this case also found that there were no mitigating factors in the nature and circumstances of the murder and rob-

bery * * *. To reach this conclusion, the court was required to review the nature and circumstances of the offense. We do not agree with the defendant's contention that by conducting this required review the court was actually weighing these circumstances against the mitigating factors." (Emphasis added.) Id. at 81, 512 N.E.2d at 615. [*67]

"In Steffen, Stumpf and Byrd, the trial courts did not list the nature and circumstances of the offense in their opinions as aggravating circumstances as did the trial court in the instant case. Furthermore, there was no indication in Steffen, Stumpf or Byrd that the trial courts actually weighed such circumstances as aggravating circumstances against the mitigating factors, as is evident from the trial court's opinion in the case herein.

"In *Jester, supra,* facts describing the nature and circumstances of the offense were listed under a heading of 'AGGRAVATED CIRCUMSTANCES' in the trial court's opinion. In reviewing such opinion we held:

"'While these were listed under the heading of "AGGRAVATED CIRCUMSTANCES," it is clear that the trial court understood the difference between statutory aggravating circumstances and other facts describing the nature and circumstances of the offense. For example, the trial court separately identified the aggravating circumstances in its discussion. (Emphasis added.) *Id. at 153, 512 N.E.2d at 969.* We are unable to reach a similar conclusion in the cause sub judice." *State v. Davis (1988), 38 Ohio St. 3d 361, at 371.*

[*68]

The Supreme Court in Davis, further held that:

"The trial court essentially made 'prior calculation and design' an aggravating circumstance. It is an element of aggravated murder, but it is not an aggravating circumstance listed in *R.C. 2929.04(A)*. We find that the trial court improperly weighed nonstatutory aggravating

circumstances against the mitigating factors it found to be present herein.

"The court of appeals also found that the trial court improperly considered nonstatutory aggravating circumstances in the weighing process, but held that such error did not require the sentence to be set aside. We disagree. The court of appeals relied upon its statutory duty to independently review the death sentence pursuant to *R.C. 2929.05* as the basis for its decision. In other words, the court of appeals found independent review to be a 'cure-all' for the error committed by the trial court.

"The trial court improperly weighed the aggravating circumstances it found the appellant guilty of committing against the mitigating factors it also found to be present. We cannot accept independent review as a cure in this particular action because we cannot know if the result of the weighing [*69] process by the three-judge panel would have been different had the impermissible aggravating circumstances not been present. Because of this and because of the magnitude of the consequences of such a decision, we are compelled to remand this case to the trial court for a new sentencing trial at which the items enumerated as (1), (2), (3), and (5) in the trial court's opinion shall not be considered as aggravating circumstances in the weighing process. Item four can be considered because it is found in the statute and was proven beyond a reasonable doubt.

"We reach this result because the General Assembly has set specific standards in the statutory framework it created to guide a sentencing court's discretion 'by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.' (Emphasis added.) *Proffitt v. Florida (1976), 428 U.S. 242. 258.*" *State v. Davis, supra, at 372.*

Thus, during the penalty phase, when a nonstatutory aggravating circumstance is weighed against a mitigating factor, the trial court errs.

## E. HARMLESS ERROR

In this case, the [*70] trial court improperly weighed the nonstatutory aggravating factor of the nature and circumstances of the offense against the mitigating factors. However, the record reveals that the trial court found no mitigating factors existed. This lack of mitigating factors rendered the consideration of the nonstatutory aggravating circumstance as harmless error. In fact, the nonexistence of mitigating factors and the existence of a statutory aggravating circumstance pursuant to *R.C. 2929.04(A)(7)* mandated that the trial court find that the aggravated circumstances outweighed the nonexistent mitigating factors beyond a reasonable doubt and that the trial court was not required to give reasons why the aggravating circumstance outweighed the mitigating factors.

"In his seventh proposition of law, appellant contends the trial court did not adequately explain why the aggravating circumstances of defendant's offenses outweighed the mitigating factors presented at sentencing, thereby precluding appellate review, and requiring reversal of his sentence of death.

" *R.C. 2929.03(F)* requires the trial court, when it imposes a sentence of death, to state in a separate opinion its specific findings as to [*71] the existence of any mitigating factors, the aggravating circumstances which defendant was found to have committed, and the reasons why these aggravating circumstances were sufficient to outweigh the mitigating factors. *State v. Maurer, supra,* at paragraph three of the syllabus.

"The trial court used essentially the same analysis in complying with this statute as this court used, for example, in *State v. Mapes (1985), 19 Ohio St. 3d 108, 117-118, 19 OBR 318, 326-327, 484 N.E.2d 140, 148-149; State*

*v. Martin (1985), 19 Ohio St. 3d 122, 131-132, 19 OBR 330, 337-338, 483 N.E.2d 1157, 1165-1167;* and *State v. Glenn (1986), 28 Ohio St. 3d 451, 460-462, 28 OBR 501, 508-510, 504 N.E.2d 701, 710-712.* That is, after describing the aggravating circumstances present, the trial court then enumerated all the mitigating factors of *R.C. 2929.04(B)* and considered each factor's applicability in light of the evidence presented. Finding no mitigating factors were sufficiently demonstrated, the trial court could do no more than say so. We find the trial court's opinion to be in compliance with *R.C. 2929.03(F)."* *State v. Beuke (1988), 38 Ohio St. 3d 29, at 36.*

This **[*72]** finding of harmless error, however, requires that the trial court be cautioned for future compliance with the mandates of *R.C. 2929.03* and R.C. 2924.04. As stated in *State v. Davis, supra,* the trial court must only weigh statutory aggravating circumstances against any mitigating factors found to be present. Had any mitigating factor been found by the trial court herein, the usage of the nonstatutory aggravating factor regardless of the existence of a statutory aggravating circumstance would have required that the trial court's sentence of death be vacated and that the matter be remanded for a new sentencing hearing.

## F. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. VIII: THE IMPROPER CONSIDERATION OF NONSTATUTORY AGGRAVATING FACTS

Having found that the usage of the nature and circumstances of the offense as an aggravating factor was harmless error and that the appellant was not prejudiced by said harmless error, we further find that the attempts of the prosecutor to introduce nonstatutory aggravating circumstances at the penalty hearing was harmless error beyond a reasonable doubt.

The appellant's second claim of prosecutorial misconduct as originally delineated in the ninth **[*73]** assignment of error and the appellant's eighth assignment of error which dealt with the consideration of nonstatutory aggravating factors are not well taken.

## XVIII. ASSIGNMENT OF ERROR NO. IX

The appellant's ninth assignment of error:

"PROSECUTORIAL MISCONDUCT DURING THE PENALTY PHASE DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AND AGAINST CRUEL AND UNUSUAL PUNISHMENT."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. IX: PROSECUTORIAL MISCONDUCT BY REASON OF 'CARRYOVER' FROM GUILT PHASE TO PENALTY PHASE

The appellant in Assignment of Error No. IX argues that the misconduct of the prosecutor during the guilt phase carried over into the penalty phase.

The appellant's argument of a prosecutorial misconduct 'carryover' from the guilt phase to the penalty phase must fail. A review of the appellant's third and fourth assignments of error, which dealt with alleged prosecutorial misconduct during the guilt phase, showed that the appellant was not prejudiced by any of the prosecutor's misconduct. It is thus axiomatic that a carryover of prejudicial misconduct cannot occur from the guilt phase to the penalty phase. Therefore, the appellant's claim of carryover is not well **[*74]** taken.

In addition to the claim of prosecutorial misconduct 'carryover' into the penalty phase, the appellant has raised three additional claims of prosecutorial misconduct which occurred during the penalty phase: 1) the attempt to introduce inadmissible evidence of appellant's other acts or criminal history; 2) argument of nonstatutory aggravating circumstances, and 3) denigration of appellant's counsel.

1989 Ohio App. LEXIS 969, *

We must now address these three additional claims of prosecutorial misconduct which appellant claims occurred during the penalty phase.

## B. THE FIRST ADDITIONAL ARGUMENT: INADMISSIBLE EVIDENCE

Ordinarily, evidence that the defendant has committed other similar offenses in character which are not related to the offense being tried, will not be admissible at trial.

"Generally, evidence of the bad character of a witness is inadmissible. *Evid. R. 404(B)* provides:

"'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' [*75]  See, also, R.C. 2945.59.

"In *State v. Mann (1985), 19 Ohio St. 3d 34, 19 OBR 28, 482 N.E.2d 592,* paragraph one of the syllabus, this court held:

"'Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts.' (Emphasis added.) See, also, *State v. Adams (1978), 53 Ohio St. 2d 223, 7 O.O. 3d 393, 374 N.E.2d 137,* vacated in part on other grounds (1978), *439 U.S. 811; State v. Lytle (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E.2d 623,* vacated in part on other grounds (1978), *438 U.S. 910;* and *State v. Curry (1975), 43 Ohio St. 2d 66, 72 O.O. 2d 37, 330 N.E.2d 720.*

"In the case at bar, the details of the crimes for which appellant was convicted and the other criminal acts about which the state questioned appellant were inadmissible evidence because

they were acts independent of the offense for which appellant was tried below, and because the state had no purpose in inquiring about them other than to show appellant's violent nature [*76]  and penchant for crime.

"Although the state clearly overstepped the bounds of proper judicial inquiry in cross-examining appellant, we are unable to agree that the error was materially prejudicial to appellant. After a thorough review of the record, we do not doubt that the remaining, properly introduced evidence overwhelmingly establishes appellant's guilt. See Delaware v. Van Arsdall, supra; and State v. Williams, supra. Because this error was harmless beynd a reasonable doubt, we find appellant's contention not to be well-taken." *State v. Williams, supra, at 350.* (Footnotes omitted).

In response to the appellant's motion for discovery with regard to the penalty phase, the prosecutor provided the appellant with a record of his prior criminal history and pending offenses. During the mitigation hearing, the prosecutor attempted to introduce into evidence the prior criminal history of the appellant and the offenses which were pending against the appellant. Allegedly, the prosecutor attempted to introduce this evidence at the mitigation hearing in order to insure that the three judge panel was aware that all of the appellant's other criminal activity involved [*77]  the elderly. Upon refusal of the panel to allow introduction of the appellant's criminal history, the prosecutor attempted to proffer the appellant's criminal history into the record. Again, however, the trial court refused to accept the proffer.

A review of the record demonstrates that the trial court was well aware of the appellant's pending criminal offenses by way of the bifurcation of the counts for trial as relating to case numbers CR-211002 and CR-21126. In addition, the refusal of the trial court to admit into evidence at the mitigation hearing or by way of proffer the appellant's criminal history fails to support the appellant's claim of material preju-

1989 Ohio App. LEXIS 969, *

dice. Thus, the appellant's claim of prosecutorial misconduct with regard to other acts or the criminal history of the appellant is not well taken.

## C. THE SECOND ADDITIONAL ARGUMENT: NONSTATUTORY CIRCUMSTANCES

The appellant, in his second claim of prosecutorial misconduct during the penalty phase, argues that the prosecutor attempted to introduce nonstatutory aggravating factors for the three judge panel's consideration during the penalty phase. A review of this claim of prosecutorial misconduct, however, will be made in conjunction [*78] with review of the appellant's eighth assignment of error below: the trial court's improper consideration of non-statutory aggravating factors.

## D. THE THIRD ADDITIONAL ARGUMENT: DENIGRATION OF COUNSEL

The appellant, in his third claim of prosecutorial misconduct during the penalty phase, argues that the prosecutor accused the appellant's counsel of fabricating evidence in support of mitigation

This alleged denigration involved the following statement made by the prosecutor during the penalty hearing.

"Now, as came out in the hearing I do know Dr. Eisenberg and we have attended the same seminar. I have difficulty with the manner in which they pursue what is purported to be an objective determination of an individual's emotional and mental state for this Court's consideration. The Public Defender's Office earmarks those cases where an individual has been indicted for specifications calling for the death penalty and follows those cases and, at the outset, they start, as Dr. Eisenberg desribed, they start a systematic effort to avoid the death penalty. They call it the mitigation strategy, and it has been fairly recognized that this is done with

the utter disregard to the facts. There [*79] is little attempt to make any effort to talk to those people who may have seen the defendant in circumstances outside the environment of the courthouse or the professional office. As was done in this case, there was no effort made by Dr. Eisenberg to do those things and yet even he admitted, after his discussion with the defendant, that if he wanted to, at the time the crime was committed, he could have conformed his conduct to the requirements of law." (Tr. 1071).

## E. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. IX: RE VARIOUS ACTS OF PROSECUTORIAL MISCONDUCT DURING THE PENALTY PHASE

The activities and statements of the prosecutor fail to rise to a level of error as alleged by the appellant. In addition, the appellant fails to demonstrate how he was prejudiced by this statement. Cf. State v. Williams, supra.

## XIX. ASSIGNMENT OF ERROR NO. X

"THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF 'OTHER ACTS' AND THEREBY DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. X: EVIDENCE OF APPELLANT'S "OTHER ACTS"

Appellant's Assignment of Error No. X raises the issue of whether the trial court erred in admitting evidence of the [*80] appellant's "other acts" at trial. The appellant argues that the testimony of Diedra Coleman with regard to the identity of the appellant as the driver of John McGrath's automobile on July 14, 1986 was prejudicial. This claimed prejudice involved the description of the alleged robbery of Mrs. Turks' home by the appellant and the operation of a Ford Escort by the appellant upon

flight from the neighborhood. This assignment of error is not well taken.

## B. THE LAW RE "OTHER ACTS": *EVID. R. 404(B)*

As dealt with in the appellant's first assignment of error, *Evid. R. 404(B)* prohibits the introduction of evidence of "other acts" of the defendant in order to prove that the defendant possessed a proclivity for criminal activity and that the defendant acted in conformity with his proclivity for criminal activity. *State v. Mann, supra.* However, *State v. Mann, supra,* provides that evidence of "other acts" may be used to establish the identity of the defendant.

## C. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. X: "OTHER ACTS"

Herein, the testimony of Diedra Coleman was soley related to the identification of the appellant as the operator of John McGrath's automobile. This testimony [*81] was not adduced at trial in order to demonstrate the proclivity of the appellant for criminal behavior. This testimony was adduced only to describe the events which occurred prior to the flight of the appellant from Diedra Coleman's neighborhood.

The appellant's tenth assignment of error is not well taken.

### XX. ASSIGNMENT OF ERROR NO. XI

The appellant's eleventh assignment of error:

"THE TRIAL COURT ERRED BY ADMITTING IRRELEVANT, PREJUDICIAL REBUTTAL TESTIMONY DURING THE PENALTY PHASE AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AND AGAINST CRUEL AND UNUSUAL PUNISHMENT."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XI: THE PRESENTATION OF CLAIMED PREJUDICIAL REBUTTAL TESTIMONY BY THE STATE DURING THE PENALTY PHASE

Assignment of Error No. XI raises the issue of whether the trial court erred in allowing the state to present rebuttal testimony during the penalty/mitigation phase of the appellant's trial.

The appellant argues that testimony from rebuttal witnesses created an appearance that testimony adduced in support of mitigation was fabricated. This assignment of error is not well taken.

## B. THE CASE LAW RE REBUTTAL EVIDENCE

The admissibility of [*82] rebuttal evidence, which is used to challenge or contradict the opposing party's case on material issues, is within the sound discretion of the trial court. *State v. Lett (1958), 106 Ohio App. 285;* State v. Fort, supra; State v. Mitchell (February 3, 1983), Cuyahoga App. No. 45014, unreported.

## C. MITIGATION TESTIMONY PRESENTED ON BEHALF OF THE APPELLANT

During the penalty phase, the appellant attempted to establish the mitigating factor of a lack of substantial capacity pursuant to *R.C. 2929.04(B)(3)*.

*R.C. 2929.04(B)(3)* provides:

"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;"

In an attempt to support the establishment of the mitigating factor of a lack of capacity, the appellant presented testimony from James Eisenberg; a psychologist who specialized in clinical and forensic psychology. The testi-

mony of James Eisenberg involved the statements that: 1) the appellant was alcohol and drug dependent; 2) the appellant engaged in the abuse of cocaine and PCP; 3) drug and alcohol [*83] dependencies are mental illnesses, and 4) according to "DMS-3," a manual of the American Psychiatric Association, drug dependency is a mental defect.

Thus, the appellant attempted to establish that the existence of a mental disease or defect grounded in drug and alcohol addiction had resulted in a lack of substantial capacity on the part of the appellant to appreciate the criminality of his conduct or to conform to the requirements of the law at the time of the murder of John McGrath.

## D. THE REBUTTAL TESTIMONY PRESENTED ON BEHALF OF THE STATE

In an attempt to rebut the testimony on behalf of the appellant's claim of a lack of substantial capacity, the prosecutor presented testimony from three rebuttal witnesses: 1) James Copeland; 2) Maria Nemac; and 3) Jeanette Zebris.

Each of these three witnesses testified that upon observation of the appellant prior to the murder of John McGrath, the appellant did not seem to be under the influence of drugs or alcohol. This testimony was permissible in that it challenged the existence of a condition of drug or alcohol addiction in the appellant. Clearly, the trial court did not abuse its discretion in allowing the admission of this rebuttal [*84] testimony during the penalty phase.

## E. OUR CONCLUSION RE ASSIGNMENT OF ERROR NO. XI: REBUTTAL EVIDENCE

The appellant's eleventh assignment of error is not well taken.

### XXI. ASSIGNMENT OF ERROR NO. XII

The appellant's twelfth assignment of error:

"APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL: 1) FAILED TO FILE A MOTION TO SUPPRESS IDENTIFICATION TESTIMONY; 2) FAILED TO OBJECT TO HEARING THE MOTION TO SUPPRESS STATEMENTS DURING THE MIDST OF TRIAL; 3) FAILED TO OBJECT TO THE ADMISSION OF IRRELEVANT, PREJUDICIAL EVIDENCE AND TO ACTS OF PROSECUTORIAL MISCONDUCT; 4) FAILED TO REQUEST THAT THE TRIAL COURT GRANT A NEW TRIAL OR REOPEN THE CASE WHEN IT WAS DISCOVERED THAT EXCULPATORY EVIDENCE HAD BEEN WITHHELD UNTIL THE PENALTY PHASE; 5) FAILED TO OBJECT TO JOINDER OF OFFENSES; AND 6) FAILED TO OBJECT TO THE ADMISSION OF THE PRESENTENCE REPORT."

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XII: NUMEROUS INSTANCES OF INEFFECTIVE ASSISTANCE OF COUNSEL

Assignment of Error No. XII again raises the issue of ineffective assistance of counsel. This assignment of error is not well taken.

## B. THE ENUMERATED INSTANCES OF INEFFECTIVE ASSISTANCE OF COUNSEL

The appellant [*85] argues that he was denied effective assistance of counsel as a result of six different failures of defense counsel during the guilt phase and the penalty phase of trial.

These six failures involved the following:

1) failure to file a motion to suppress identification testimony;

2) failure to object to the hearing of the motion to suppress appellant's statement during midst of trial;

3) failure to object to the admission of irrelevant prejudicial evidence and prosecutorial misconduct;

4) failure to request a new trial on the basis of failure of the prosecutor to disclose exculpatory evidence;

5) failure to object to the joinder of offenses for purposes of trial; and

6) failure to object to the admission of the appellant's presentence report during the penalty phase.

## C. STANDARD OF REVIEW: INEFFECTIVE ASSISTANCE OF COUNSEL

In order to demonstrate a claim of ineffective assistance of counsel, the appellant must show that his counsel deprived him of a fair trial. The appellant must specifically show that: (1) defense counsel's performance at trial was seriously flawed and deficient; and 2) the result of the trial would have been different if defense counsel had provided [*86] proper representation at trial. *Strickland v. Washington (1984), 466 U.S. 668; State v. Post, supra; State v. Brooks (1986), 25 Ohio St. 3d 144.*

A presumption that a properly licensed attorney executes his duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. *State v. Smith (1985), 17 Ohio St. 3d 98; Vaughn v. Maxwell (1965), 2 Ohio St. 2d 299.* In addition, this court must accord deference to defense counsel's strategic choices during trial and cannot examine the strategic choices of counsel through hindsight. *Strickland v. Washington, supra, at 689.*

## D. OUR PRIOR DISPOSITION OF APPELLANT'S THIRD AND FIFTH CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Of these six alleged failures of counsel, the claims of failure to object to irrelevant evidence and prosecutorial misconduct and the failure to object to the joinder of offenses have been dealt with and were not well taken in our consideration of assignments of error one, two, three, four, eight, and nine. Since this court has determined that no error existed with regard to the issues of irrelevant evidence, prosecutorial [*87] misconduct, and the joinder of offenses, no duty existed on the part of appellant's counsel to raise an objection as claimed. Thus, as we said above, the appellant's third and fifth arguments enumerated above pertaining to ineffective assistance of counsel must fail.

## E. THE FIRST CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL: DEFENSE COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS EYEWITNESS IDENTIFICATION EVIDENCE

The appellant, in his first claim of ineffective assistance of counsel, argues that defense counsel should have filed a motion to suppress the eyewitness identification testimony of Diedra Coleman. Specifically, the appellant argues that the circumstances of the identification procedure were highly suggestive and that the testimony of Diedra Coleman was not reliable.

## F. THE LAW AND ANALYSIS

In that regard the United States Supreme Court, in *Stovall v. Denno (1967), 388 U.S. 293, at 302,* held that:

"[A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *."

Subsequently, the United States Supreme Court, in *Manson v. Braithwaite (1977), 432 U.S. 98,* and *Neil v.* [*88] *Biggers (1972), 409 U.S. 188,* and developed a two-step process in determining the reliability of the eyewitness identification process. Said two-step process

initially requires that the appellant prove that the identification procedure used was unnecessarily and impermissibly suggestive. The Supreme Court held that the trial court must then balance the suggestiveness of the identification procedure against the following factors: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation.

Applying the five factors as enumerated in *Neil v. Biggers, supra* and *Manson v. Braithwaite, supra,* we can only find that the pretrial identification procedure associated with the eyewitness identification of the appellant was not so suggestive so as to create a substantial likelihood of misidentification. The pretrial identification process possessed sufficient aspects of reliabiity. In addition, Diedra Coleman had [*89] numerous opportunities to view the appellant on July 14, 1986 and the appellant's face was not concealed from view. Thus, had the appellant's counsel filed a motion to suppress the eyewitness identification of the appellant by Diedra Coleman, the motion would have been denied as a result of the "totality of the circumstances." *State v. Jackson (1971), 26 Ohio St. 2d 74.*

Having found that no grounds existed for the suppression of the identification testimony, we must further find that appellant's counsel was under no duty to file a motion to suppress the identification testimony of Diedra Coleman. Therefore, the appellant's first claim of ineffective assistance of counsel is not well taken.

## G. SECOND CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL RE THE MOTION TO SUPPRESS DEFENDANT'S STATEMENT

The appellant's second claim of ineffective assistance of counsel involves the hearing dur-

ing the midst of trial of a motion to suppress a statement made by the appellant. The appellant argues that defense counsel should have objected to the hearing during trial of the motion to suppress a statement.

## H. THE LAW AND ANALYSIS

As stated in *Strickland v. Washington, supra,* this court [*90] must grant deference to counsel's strategic choices at trial and will not apply hindsight to second guess the trial tactics of counsel. In addition, defense counsel agreed to the hearing of the motion to suppress subsequent to the start of trial and the motion to suppress was in fact ultimately granted by the trial court.

No prejudice befell the appellant and the second claim of ineffective assistance of counsel is not well taken.

## I. THE THIRD CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

This was dealt with in Assignment of Error No. III.

## J. FOURTH CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL BY REASON OF THE DEFENSE COUNSEL FAILING TO REQUEST A NEW TRIAL UPON THE PROSECUTOR'S NONDISCLOSURE OF EXCULPATORY EVIDENCE

The appellant's fourth claim of ineffective assistance of counsel involves the failure of defense counsel to request a new trial. The motion for new trial being premised upon the failure of the prosecutor to disclose exculpatory evidence which involved the fact that the appellant's fingerprints were not found in the automobile owned by John McGrath.

## K. THE LAW RE A MOTION FOR NEW TRIAL

*Crim. R. 33(A)*, which establishes the specific grounds upon which a motion for new trial [*91] can be granted, specifically states that:

"(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

"(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

"(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

"(3) Accident or surprise which ordinary prudence could not have guarded against;

"(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;

"(5) Error of law occurring at the trial;

"(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly [*92] discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."

A party, in order to prevail on a motion for new trial, must establish and show that: 1) he was reasonably diligent in trying to find the new evidence; 2) affidavits are presented to the trial court which detail the substance of the evidence that will be used if a new trial were granted; and 3) the evidence is of such weight that a different result could be reached if a new trial is granted. Cf. *State v. Kiraly (1977), 56 Ohio App. 2d 37; State v. Petro (1947), 148 Ohio St. 505; State v. Williams (1975), 43 Ohio St. 2d 88.*

In addition, the Supreme Court of Ohio, in State v. Williams, supra, paragraph two of the syllabus, with regard to the allowance of a motion for new [*93] trial, held that:

"The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the absence of a clear showing of abuse such decision will not be disturbed."

The appellant argues that "exculpatory" evidence in the form of a lack of the appellant's fingerprints in John McGrath's automobile impeached the credibility of Diedra Coleman who had observed the appellant operating John McGrath's automobile. This evidence was not disclosed until Detective Hughey testified during the penalty phase.

Evidence which attacks the credibility of a witness or impairs the reliability of a witness does not require the granting of a new trial. *State v. Barber (1982), 3 Ohio App. 3d 445,* State v. Carte (June 17, 1982), Cuyahoga App. No. 444222, unreported. Additionally, testimony and evidence with regard to a lack of the appellant's fingerprints in John McGrath's automobile is not of such weight that a different result would be reached if a new trial was granted.

Defense counsel's failure to file a motion for a new trial did not prejudice the appellant in

that the motion could not have been granted [*94] by the trial court. Therefore, there was no reason for defense counsel to file a motion for new trial and the appellant's fifth claim of ineffective assistance of counsel is not well taken.

## L. THE SIXTH CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL: DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE ADMISSION OF THE APPELLANT'S PRESENTENCE INVESTIGATION REPORT

The appellant, in his sixth claim of ineffective assistance of counsel argues that defense counsel failed to object to the admission of a presentence investigation report which contained a hearsay statement derived from John McGrath. This hearsay statement involved a description of the events which had transpired prior to July 15, 1986 and revealed that a male had broken in John McGrath's home, beat him, set him on fire and robbed him of money and a 1982 Ford Escort.

The Supreme Court of Ohio, in *State v. Glenn (1986), 28 Ohio St. 3d 451,* held that the contents of a presentence report are limited to information which is "directly relevant to the aggravating and mitigating circumstances." *State v. Glenn, supra,* paragraph two of the syllabus. The Supreme Court of Ohio further held that a presentence report may contain unsworn [*95] and hearsay information but that "the fact that such contained hearsay statements and were unsworn is not of itself a basis for finding of error." *Glenn, supra, at 459.*

The presentence report, made upon the request of appellant's counsel did indeed contain hearsay information as to the events which culminated in the death of John McGrath. However, as dealt with in the appellant's fourth assignment of error, the trial court in its finding of guilty stated that any hearsay evidence contained in the medical records of the victim were excluded in consideration of the appellant's guilt. This exclusion of hearsay evidence in

conjunction with the presumption that a trial court in a bench trial considered only relevant, material, and competent evidence requires this court to find that the trial court did not in fact consider the hearsay statement contained in the presentence report.

Therefore, based upon the original request on the part of the appellant for a presentence report, the refusal of the trial court to consider any hearsay as contained in the victim's medical records, the application of the presumption of consideration by the trial court of only relevant material and competent [*96] evidence, and the failure of the record to disclose any prejudice befalling the appellant, appellant's counsel was not required to object to the admission of the presentence report. This argument is not well taken.

## M. OUR CONCLUSION AS TO THE ENTIRE ASSIGNMENT OF ERROR XII: INEFFECTIVE ASSISTANCE OF COUNSEL

Thus, based upon the nonexistence of ineffective assistance of counsel as claimed by the appellant, the appellant's twelfth assignment of error is not well taken.

## XXII. ASSIGNMENT OF ERROR NO. XIII

The appellant's thirteenth assignment of error:

"THE TRIAL COURT ERRED BY CONVICTING APPELLANT OF A SPECIFICATION WHICH DUPLICATED AN ELEMENT OF THE PRINCIPLE OFFENSE AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AND AGAINST CRUEL AND UNUSUAL PUNISHMENT."

## A. THE ISSUE RAISED BY THE ASSIGNMENT OF ERROR NO. XIII: DUPLICATION OF AN ELEMENT OF THE

1989 Ohio App. LEXIS 969, *

PRINCIPLE OFFENSE AS A SPECIFICATION

The appellant, in his thirteenth assignment of error, argues against the constitutionality of using the same felony as an aggravating specification under R.C. 2929.04 and as a basis for the offense of felony murder pursuant to R.C. 2923.01(B). This assignment of error is not [*97] well taken.

B. THE CASE LAW

This argument has previously been found to be not well taken in *State v. Poindexter (1988), 36 Ohio St. 3d 1; State v. Steffen (1987), 31 Ohio St. 3d 111; State v. Byrd (1987), 32 Ohio St. 3d 79; State v. Barnes (1986), 25 Ohio St. 3d 203; State v. Jenkins (1984), 15 Ohio St. 3d 164; State v. Guyton (1984), 18 Ohio App. 3d 101;* and *State v. Shields (1984), 15 Ohio App 3d 112).* Also see, *State v. Henderson (1988), 39 Ohio St. 3d 24;* and *Lowenfield v. Phelps (1988), 484 U.S.   , 98 L. Ed. 2d 568.*

C. OUR CONCLUSION AS TO ASSIGNMENT OF ERROR NO. XIII: RE DUPLICATION OF AN ELEMENT OF THE PRINCIPLE OFFENSE AS A SPECIFICATION

Thus, the appellant's thirteenth assignment of error is not well taken.

XXIII. ASSIGNMENT OF ERROR XVI

The appellant's sixteenth assignment of error:

"IMPOSITION OF THE DEATH SENTENCE VIOLATES THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I § § 2, 9, 10 AND 16 OF THE OHIO CONSTITUTION.

A. THE ISSUE RAISED: THE PENALTY OF DEATH IS UNCONSTITUTIONAL

Assignment of Error No. XVI, the reassertion of ten previously [*98] raised on appeal assignments of error in capital cases, is not well taken.

The appellant, in his sixteenth assignment of error, argues that Ohio's death penalty statute is violative of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, § § 2, 9, 10 and 16 of the Ohio Constitution. The appellant raises the following ten arguments:

"A. INFLICTION OF THE DEATH SENTENCE NECESSARILY VIOLATES THE DEFENDANT'S DUE PROCESS RIGHTS.

"B. *REVISED CODE SECTIONS 2929.022, 2929.03,* AND 2929.04 VIOLATE DEFENDANT'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO TRIAL BEFORE AN IMPARTIAL JURY.

"C. *REVISED CODE SECTIONS 2929.03, 2929.04* AND 2929.04 [SIC] ARE UNCONSTITUTIONAL AS THEY FAIL TO PROVIDE ADEQUATE GUIDELINES FOR DELIBERATION, LEAVING THE JURY WITHOUT PROPER GUIDELINES IN BALANCING THE AGGRAVATING AND MITIGATING CIRCUMSTANCES.

"D. *OHIO REVISED CODE SECTIONS 2929.022, 2929.03* AND 2929.04 AND *OHIO RULE OF CRIMINAL PROCEDURE 11(C)(3)* PLACE AN UNCONSTITUTIONL (sic) BURDEN ON THE DEFENDANT'S RIGHT TO A JURY TRIAL.

"E. *OHIO REVISED CODE SECTION 2929.03* FAILS TO PROVIDE A MEANINGFUL BASIS FOR DISTINGUISHING BETWEEN LIFE AND DEATH SENTENCES.
 [*99]

"F. THE APPELLATE REVIEW PROVISION OF SECTION 2929.05 FAILS TO SPECIFICALLY REQUIRE INQUIRY AND FINDINGS REGARDING ARBITRARINESS, PASSION, OR PREJUDICE.

"G. THE OHIO DEATH PENALTY STATUTE IMPERMISSIBLY MANDATES IMPOSITION OF THE DEATH PENALTY AND PRECLUDES A MERCY OPTION IN THE ABSENCE OF MITIGATING EVIDENCE OR WHEN AGGRAVATING CIRCUMSTANCES OUTWEIGH MITIGATING FACTORS.

"H. THE OHIO DEATH PENALTY SCHEME PERMITS IMPOSITION OF THE DEATH PENALTY ON A LESS THAN ADEQUATE SHOWING OF CULPABILITY BY FAILING TO REQUIRE A CONSCIOUS DESIRE TO KILL, PREMEDITATION, OR DELIBERATION AS THE CULPABLE MENTAL STATE.

"I. THE STATUTES FAIL TO REQUIRE PROOF BEYOND ALL DOUBT AS TO GUILT AND CONVICTION BEFORE THE DEATH SENTENCE MAY BE IMPOSED.

"J. THE STANDARD FOR PROPORTIONALITY REVIEW ADOPTED BY THE OHIO SUPREME COURT FAILS TO ENSURE AGAINST EXCESSIVE AND DISPROPORTIONATE SENTENCES WHICH CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AND A DENIAL OF DUE PROCESS."

B. OUR CONCLUSION AS TO ASSIGNMENT OF ERROR NO. XVI: RE THE UNCONSTITUTIONALITY OF CAPITAL PUNISHMENT

Each of these ten arguments has been raised previously upon appeal in other capital cases and the Supreme Court of Ohio and this court. These [*100] cases have resolved the various

arguments adversely to the appellant's reasser-tive position. *State v. Beuke, supra; State v. Spisak (1988), 36 Ohio St. 3d 80; State v. Steffen, supra; State v. Jenkins, supra;* State v. Malcolm (October 29, 1987), Cuyahoga App. No. 50846, unreported, State v. Fort, supra.

The appellant's sixteenth assignment of error is not well taken.

XXIV. ASSIGNMENT OF ERROR NO. XVII

The appellant's seventeenth assignment of error:

"THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING FINES UPON APPELLANT WHICH TOTALLED FORTY-ONE THOUSAND DOLLARS WHEN APPELLANT HAD BEEN DECLARED INDIGENT."

A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XVII: THE IMPOSITION OF MONETARY FINE

Assignment of Error No. XVII raises the is-sue of whether the trial court erred in imposing a monetary fine upon an indigent defendant.

The appellant argues that the imposition of a total of $ 41,000 in fines upon the appellant as a result of his convictions constituted an abuse of discretion on the part of the trial court. Specifically, the appellant was fined in the amount of $ 10,000 for the offense of aggra-vated robbery in CR-211002, $ 10,000 for [*101] the offense of aggravated robbery in CR-211002, $ 10,000 for the offense of aggra-vated burglary in CR-211261, $ 1,000 for the offense of petty theft in CR-211261, and $ 10,000 for the offense of aggravated arson in CR-212720. This assignment of error is well taken.

B. THE CASE LAW

This court, in State v. Petty (June 9, 1987), Cuyahoga App. No. 52069, unreported, at 16, with regard to a trial court's abuse of discretion in imposing fines upon an indigent defendant, held that:

"However, the trial court imposed the maximum fine for each count for a total fine of $ 12,500. The appellant's trial counsel and appellant told the trial judge that he had no money and the trial judge said that he knew that (R. 224). The discretion that the trial judge can exercise when imposing a fine is limited. The trial court cannot impose fines for a felony which in the aggregate exceed the amount appellant 'is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense." R.C. 2929.14(C).

"The trial court abuses its discretion when an indigent defendant [*102] is fined one thousand dollars. State v. Copen, (December 21, 1981), Cuyahoga App. No. 43227, unreported (applying R.C. 2929.12(F), now R.C. 2929.14(C)). Imposition of a $ 15,000 fine payable over three years was held to be an abuse of discretion when the defendant was indigent. State v. Houston (January 17, 1980), Cuyahoga App. No. 40124, unreported. In both cases the fine was vacated."

## C. OUR CONCLUSION AS TO ASSIGNMENT OF ERROR NO. XVII: RE THE MANDATORY FINES IMPOSED

Herein, the record reveals that the appellant was found to be indigent during arraignment for three separate criminal cases CR-211002, CR-211261, CR-212720. In addition, counsel was appointed to represent the appellant during all phases of pretrial and trial. Based upon this finding of indigency and the application of State v. Petty, supra, we find that the trial court abused its discretion in imposing a total fine of $ 41,000.

The appellant's sentence is modified by vacating the imposition of all monetary fines.

## XXV. ASSIGNMENT OF ERROR NO. XVIII

The appellant's eighteenth assignment of error is that:

"THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO A TERM OF FIFTEEN TO TWENTY-FIVE YEARS [*103] FOR AN AGGRAVATED FELONY OF THE FIRST DEGREE WHEN AN AGGRAVATED FELONY SPECIFICATION WAS NOT ALLEGED IN THE INDICTMENT

## A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XVIII: IMPOSITION OF A TERM OF IMPRISONMENT OF 15 YEARS TO 25 YEARS

Assignment of Error No. XVIII raises the issue of whether the trial court erred in imposing an actual term of imprisonment of 15 years to 25 years with regard to the conviction for the offense of aggravated burglary as found in CR-211261. The appellant specifically argues that the indictment for the aggravated burglary of John McGrath's home as found in CR-211261 failed to contain an aggravated felony specification as mandated by R.C. 2941.142 which is titled "Actual incarceration upon second conviction for certain felonies; specification of prior offenses." This assignment of error is well taken.

## B. STATUTORY LAW

The offense of aggravated burglary is an aggravated felony of the first degree pursuant to R.C. 2911.11. R.C. 2929.11(B)(1), which sets forth the penalties that may be imposed upon a felony of the first degree, provides that:

"(1) For an aggravated felony of the first degree:

"(a) If the offender has not previously been convicted of [*104] or pleaded guilty to any aggravated felony of the first, second, or third degree, aggravated murder or murder, or any offense set forth in any existing or former law of this state, any other state, or the United States that is substantially equivalent to any aggravated felony of the first, second, or third degree or to aggravated murder or murder, the minimum term, which may be imposed as a term of actual incarceration, shall be five, six, seven, eight, nine, or ten years, and the maximum term shall be twenty-five years;

"(b) If the offender has previously been convicted of or pleaded guilty to any aggravated felony of the first, second, or third degree, aggravated murder or murder, or any offense set forth in any existing or former law of this state, any other state, or the United States that is substantially equivalent to any aggravated felony of the first, second, or third degree or to aggravated murder or murder, the minimum term shall be imposed as a term of actual incarceration of ten, eleven, twelve, thirteen, fourteen, or fifteen years, and the maximum term shall be twenty-five years;" (Emphasis added).

*R.C. 2929.11(F)*, which deals with the imposition of an enhanced [*105] penalty, provides that:

"(F) No person shall be sentenced for an offense pursuant to division (B)(1)(b), (2)(b), or (3)(b) of this section because the offender has previously been convicted of or pleaded guilty to any aggravated felony of the first, second, or third degree, aggravated murder or murder, or any offense set forth in any existing or former law of this state, any other state, or the United States that is substantially equivalent to any aggravated felony of the first, second, or third degree or to aggravated murder or murder unless the indictment, count in the indictment, or information charging him with the offense contains a "specification as set forth in *section 2941.142* [2941.1 4.2] of the Revised Code."

Further, R.C. 2949.142, which requires the inclusion of a prior felony specification in an indictment for purposes of penalty enhancement, provides that:

"Imposition of a term of actual incarceration upon an offender pursuant to division (B)(1)(b), (2)(b), or (3)(b) of *section 2929.11 of the Revised Code* because the offender has previously been convicted of or pleaded guilty to any aggravated felony of the first, second, or third degree, aggravated murder or murder, [*106] or any offense set forth in any existing or former law of this state, any other state, or the United States that is substantially equivalent to any aggravated felony of the first, second, or third degree or to aggravated murder or murder is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender has previously been convicted of or pleaded guilty to such an offense. Such a specification shall be stated at the end of tone body of the indictment, count, or information and shall be in substantially the following form:

"'Specification (or, Specification to the First Count). The grand jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender has previously been convicted and name the offense).'

"A certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar is sufficient to prove the prior conviction. If an indictment, count in an indictment, or information that charges a defendant with an aggravated felony contains such [*107] a specification, the defendant may "bequest that the trial judge, in a case tried by a jury, determine the existence of the specification at the sentencing hearing."

Herein, a review of the record with regard to the count of aggravated burglary of John

McGrath's home, as found in CR-211261, indicates that no prior felony specification for the appellant's prior convictions for the offenses of aggravated burglary and aggravated robbery, was contained in the first count of the indictment. The record does not reveal that the count of aggravated burglary of the home of John McGrath in CR211261 was amended to include a prior felony specification.

C. OUR CONCLUSION AS TO ASSIGNMENT OF ERROR NO. XVIII: RE THE AGGRAVATED BURGLARY SENTENCING

Therefore, the trial court erred in sentencing the appellant to a term of actual incarceration of 15 years to 25 years pursuant to *R.C. 2921.11(B)(1)*. As a result of this error, the appeal must be remanded to the trial court solely for resentencing of the appellant with regard to his conviction for the offense of the aggravated burglary of the home of John McGrath as found in CR-211261. This assignment of error is well taken.

XXVI ASSIGNMENT OF ERROR [*108] NO. XIV

The appellant's fourteenth assignment of error:

"THE SENTENCE OF DEATH VIOLATES APPELLANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT BECAUSE THE AGGRAVATING CIRCUMSTANCE OF WHICH APPELLANT WAS CONVICTED DOES NOT OUTWEIGH THE MITIGATING FACTORS."

A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XIV: THE AGGRAVATING CIRCUMSTANCE DID OUTWEIGH MITIGATING FACTORS

Assignment of Error No. XIV ( R.C. 2929.05(A)) raises the question whether aggra-

vating circumstances outweighed the mitigating factors. It is not well taken.

B. THE LAW RE WEIGHING THE AGGRAVATED CIRCUMSTANCE AND MITIGATING FACTORS AND THIS COURT'S R.C. 2929.05(A) DUTY

This assignment of error shall be considered simultaneously with the mandate of R.C. 2929.05(A) which requires this court to independently review and weigh the aggravating circumstances and the mitigating factors.

C. THE STATUTORY LAW

R.C. 2929.05(A) specifically provides that:

"(A) Whenever sentence of death is imposed pursuant to *sections 2929.03* and *2929.04 of the Revised Code*, the court of appeals and the supreme court shall upon appeal review the sentence of death at the same time that they review the other issues in the case. The court [*109] of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the court of appeals and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. They shall also review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the

offender was found guilty of committing and the mitigating factors. The court of appeals or the [*110] supreme court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case."

## D. THE RECORD

A review of the record reveals that the judgment and sentence of the trial court were supported by the evidence. The trial court rendered a written opinion which detailed the aggravating circumstance and the absence of any mitigating factors, which in turn required a finding that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and that the appellant's sentence of death was indeed appropriate. Thus, this court concludes that the trial court's findings were supported by sufficient evidence and that said findings were not against" the manifest weight of the evidence.

## E. OUR INTERMEDIATE CONCLUSION: RE WEIGHING THE AGGRAVATING CIRCUMSTANCE AND MITIGATING FACTORS

The appellant's fourteenth assignment of error re weighing the aggravating circumstance and mitigating factors is not well taken.

We now undertake the independent [*111] weighing of the aggravating circumstances and the mitigating factors as required by R.C. 2929.05(A).

## F. THIS COURT'S 2929.04(B) REVIEW AND WEIGHT OF FACTS AND OTHER EVIDENCE

The trial court, with regard to the mitigation hearing of July 29, 1987, rendered the following judgment entry:

"The herein Three Judge Panel having on the 17th day of July, 1987, found the defendant, Gregory Lott, Guilty beyond a reasonable doubt of the charge of Aggravated Felony Murder with Specification under *2903.01(B) of the Ohio Revised Code* and having at the Mitigation Trial of the 29th day of July, 1987, found beyond a reasonable doubt that no factors in mitigation existed justifying the modification of the sentence of death, pursuant to *2929.03(F) of the Ohio Revised Code*, the Panel makes the following specific findings on mitigation:

"1) Upon the evidence, testimony of witnesses, testimony of expert witnesses and upon the record at trial, the Panel finds no mitigation in the act, intentions or omissions of the defendant in the commission of the crime of aggravated murder, aggravated robbery, aggravated burglary."

In support of the mitigating factors of R.C. 2929.04(B), the appellant presented [*112] the following witnesses: Daniel Craine, Helen Shapiro, Sandra Byrd-Chappelle, James Karpawich, Charles C. May, James Eisenberg, and the appellant.

Testimony adduced at the mitigation hearing involved:

1) Daniel Craine - manager of a Fisher Foods grocery store who testified that the appellant was employed at the Noble Road Store for four to five months in 1986, the appellant was very quiet, and the appellant possessed no disciplinary problems;

2) Helen Shapiro - a teacher at the Cuyahoga County Correctional Center testified that the appellant was respectful and polite, the appellant had gained self-confidence while incarcerated and awaiting trial, and the appellant possessed poor math and English skills;

3) Sandra Byrd-Chappellee - a social service supervisor employed by the Cuyahoga County Correctional Center testified that the

1989 Ohio App. LEXIS 969, *

appellant had been involved in one altercation while incarcerated;

4) James Karpawich - a clinical psychologist and associate director of the Court Psychiatric Clinic testified that the appellant suffered from drug abuse which involved alcohol, marijuana, P.C.P., and cocaine; the appellant possessed an I.Q. of 86 which was within the low average range [*113] of intelligence, no evidence existed that in July of 1986 the appellant had used P.C.P. or marijuana; the appellant's low intelligence would not have affected his ability to discern right from wrong; and the appellant did not possess any mental disease or mental defect.

5) Charles C. May - principal of Shaw High School testified with regard to the appellant's poor high school and junior high school records;

6) James Eisenburg - a specialist in clinical and forensic psychology, testified that the appellant possessed an I.Q. of 77, the appellant was never treated for drug abuse, and the appellant had improved during his period of incarceration in the area of personal growth, conversation, and literacy; and

7) Gregory Lott - the appellant made an unsworn statement that he had abused drugs as a teenager and that he was not a bad person.

R.C. 2929.04(B) defines the mitigating factors which are to be weighed against the aggravating circumstances and provides that:

"* * * [T]he court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, [*114] and background of the offender, and all of the following factors:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

G.  OUR  CONCLUSION  AS  TO ASSIGNMENT OF ERROR NO. XIV: RE R.C. 2929.04(B) FINDING NECESSARY TO UPHOLD THIS CONVICTION

Upon review of the testimony and evidence presented at the [*115] mitigation hearing, this court finds that no mitigating factors exist on behalf of the appellant. The nonexistence of any mitigating factors requires a finding that the aggravating circumstances outweigh the mitigating factors. Cf. *State v. Beuke, supra, at 36.* Thus, we find that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt and upon independent review we uphold the sentence of death.

XXVII. ASSIGNMENT OF ERROR NO. XV

The appellant's fifteenth assignment of error:

"APPELLANT'S SENTENCE OF DEATH IS EXCESSIVE AND DISPROPORTIONATE TO SIMILAR CASES AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AND A VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW."

A. THE ISSUE RAISED BY ASSIGNMENT OF ERROR NO. XV: THE DISPROPORTIONALITY OF A SENTENCE OF DEATH IN IN THE CASE SUB JUDICE

Assignment of Error No. XV raises the issue of whether the sentence to death was disproportionate and constituted cruel and unusual punishment.

The appellant, in his fifteenth assignment of error, argues that his sentence of death is excessive and disproportionate to similar cases. This assignment of error shall be considered simultaneously with the requirement **[*116]** of R.C. 2929.05(A) which provides that this court review the proportionality of the appellant's sentence of death in light of other capital cases reviewed by this court. It is not well taken.

B. THE CASE LAW

The imposition of a sentence of death is not disproportionate or excessive to the penalty of death imposed in like or similar capital cases. Like or similar cases in which this court has upheld the sentence of death involved State v. Apanovitch (August 28, 1986), Cuyahoga App. No. 49772, unreported; State v. Jester (September 26, 1985), Cuyahoga App. No. 49065, unreported; State v. Mapes (October 25, 1984), Cuyahoga App. No. 47191, unreported; State v. Williams (October 25, 1984), Cuyahoga App. No. 47853, unreported; State v. Martin (September 27, 1984), Cuyahoga App. No. 47301, unreported.

C. OUR CONCLUSION AS TO ASSIGNMENT OF ERROR NO. XV: RE PROPORTIONALITY

We find that the sentence of death imposed upon the appellant was neither inappropriate, excessive nor disproportionate when compared to similar cases in which the penalty of death has been imposed and the appellant's fifteenth assignment of error is not well taken.

The appellant's **[*117]** convictions and sentence of death are affirmed in part as modified, reversed in part and remanded for the sole purpose of resentencing.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. Case remanded to the trial court for modification of sentence and thereupon execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to *Rule 27 of the Rules of Appellate Procedure.*

N.B. This entry is made pursuant to the third sentence of *Rule 22(D), Ohio Rules of Appellate Procedure.* This is an announcement cf decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order cf the court and time period for review will begin to run.

SUPPLEMENTAL JOURNAL ENTRY AND APPELLATE REVIEW DEATH SENTENCE

Pursuant to the requirements set forth in *R.C. 2929.05(A)*, after independently reviewing all of the facts and evidence in the record as

1989 Ohio App. LEXIS 969, *

well as the judgment [*118] and sentence of the trial court, we find that:

1. The aggravating circumstance which the appellant was found guilty of committing outweighs the mitigating factors in this case;

2. The death sentence is not excessive or disproportionate to the penalty imposed in similar cases and is, therefore, appropriate;

3. The evidence supports the findings by the trial court that appellant was guilty of aggravated murder and the aggravating circumstance charged in the indictment; and

4. The trial court properly weighed the aggravating circumstance of which the appellant was found guilty of committing and the mitigating factors.

ANN McMANAMON, C.J., AND NAHRA, J, CONCUR.