1 of 1 DOCUMENT

STATE OF OHIO, Plaintiff-Appellee, v. MICHAEL BIES, Defendant-Appellant.

APPEAL No. C-920841

COURT OF APPEALS OF OHIO, FIRST APPELLATE DISTRICT, HAMILTON COUNTY

*1994 Ohio App. LEXIS 1304*

March 30, 1994, Entered

**NOTICE:** [*1] THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

**PRIOR HISTORY:** Criminal Appeal From: Hamilton County Court of Common Pleas. TRIAL NO. B-925607

**DISPOSITION:** Judgment Appealed From is: Affirmed Independent Review: Aggravating Circumstances Outweigh Mitigating Factors Appropriateness: Sentence of Death is Appropriate.

**COUNSEL:** Joseph T. Deters, Prosecuting Attorney, No. 0012084, and William E. Breyer, Esq., No. 0002138, 411 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee.

Timothy J. Deardorff, Esq., No. 0006308, and Loren S. Haas, Esq., No. 0001848, 169 East McMillan Street, Cincinnati, Ohio 45219, for Defendant-Appellant.

**JUDGES:** KLUSMEIER, P.J., GORMAN and M.B. BETTMAN, JJ.

**OPINIONBY:** PER CURIAM

**OPINION:** DECISION.

PER CURIAM.

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, and the briefs and arguments of counsel.

Defendant-appellant Michael Bies was charged with aggravated murder, attempted rape and kidnapping. The aggravated murder charge contained the [*2] following three death-penalty specifications: (1) that the offense was committed to escape detection, (2) that the offense was committed during the commission of an attempted rape, and (3) that the offense occurred during the commission of a kidnapping. Following a jury trial, Bies was convicted as charged and sentenced to death. n1

---

n1 The trial court also sentenced Bies to incarceration for eight to fifteen years on the charge of attempted rape, and for ten to twenty-five years on the charge of

EXHIBIT B

kidnapping, such sentences to run consecutively.

On appeal, Bies seeks a reversal of his convictions and sentence of death, advancing twelve assignments of error. We find no prejudicial error in these assignments of error and, therefore, affirm the judgment of the trial court. We further hold that the aggravating circumstances of the murder outweigh the mitigating factors beyond a reasonable doubt, and that the sentence of death is appropriate.

Bies and Daryll "Junior" Gumm came to Cincinnati from Hazard, Kentucky, [*3] on May 11, 1992. They spent the afternoon in a park in the area of Eighth and State Streets drinking beer and smoking cigarettes. As evening approached, they decided that they would like to have sex with a child.

Aaron Raines, a small ten-year-old, was playing in the park at approximately seven o'clock that evening. Raines had some physical disabilities as the result of a car accident the previous year. He also had a partial cast on his foot because he had dropped weights on his toe earlier in the spring.

Gumm, who apparently knew Raines, approached the child and offered him money to help Gumm and Bies collect scrap metal in an abandoned building near the park. However, Gumm and Bies intended to get "blow jobs" from Raines once inside the building.

Bies, Gumm and Raines entered one abandoned building and proceeded to the second floor. They then crossed over a door that had been laid from one window on the second floor of the building to a window on the second floor of another abandoned building. Testimony from Raines's brother indicated that, because of Raines's physical handicaps, Raines would not have voluntarily attempted to cross over into the second building on a door suspended [*4] between two second-floor windows.

According to Bies, Gumm attempted to "have sex" with Raines in the second building. When Raines refused, Gumm struck Raines. Raines began to cry. Gumm then carried Raines down into the basement of the building while covering Raines's mouth with his hand.

When they got into the basement, Bies and Gumm beat Raines with a pipe, a chunk of concrete and a board. They then kicked Raines with sufficient force to leave imprints of gymshoe tread patterns on the boy's body.

Bies and Gumm left the building and returned to the first building, where they performed oral sex on each other. They then left the area and went their separate ways.

Raines died as a result of the beating from multiple blunt injuries to his head, neck, chest and abdomen. His body was discovered by the police the next day. After approximately nine weeks of investigation by the police, Gumm was arrested for his participation in the killing of Raines. After talking to Gumm, the police arrested Bies in Hazard, Kentucky, for the murder, attempted rape and kidnapping of Raines.

While in Kentucky, Cincinnati police officers Gary Seal and Lucian Guy questioned Bies about his involvement [*5] in the crimes against Raines. Initially, in a taped statement, Bies denied being in Cincinnati on May 11, 1992. After informing Bies that the police knew that he had arrived in Cincinnati that day with Gumm, Bies admitted that he witnessed the assault on Raines but denied that he was an active participant in the crimes.

When Bies and police officers Seal and Guy returned to Cincinnati, Bies volunteered to return to the crime scene to refresh his memory on the details of the crimes in order to assist the police in solving the case. When they reached the basement of the second abandoned building, Bies offered detailed statements regarding the weapons used to kill Raines, including the facts that the pipe had "threading" around the

top and that the weapons used to kill Raines were similar in weight to other objects lying around the building.

When they returned to the police station, police officers Seal and Guy told Bies that they knew that he was lying about his participation in the killing of Raines because of the detail given in his statements to the police. At this point, Bies stated that Gumm lured Raines into the building, but admitted that he expected to have sex with the child. [*6] Bies further stated that Gumm attempted to have sex with the child, but that the child resisted. At this point, Bies admitted that he and Gumm took Raines to the basement and beat him.

On September 14, 1992, the guilt phase of the trial began with the selection of a jury from a special venire of seventy-five members. The state produced numerous witnesses and introduced Bies's taped statements and videotaped walk-through of the crime scene into evidence. Bies presented no testimony or evidence in his defense. After taking the evidence under submission, the jury found Bies guilty as charged on all counts and specifications.

On October 15, 1992, the mitigation phase of the trial began. Bies presented his own unsworn statement and the testimony of Dr. Donna E. Winter, a clinical psychiatrist. After receiving instructions from the trial court, the jury deliberated and recommended imposition of the penalty of death.

The trial court then journalized its sentencing opinion in which it independently reviewed the evidence and determined that the aggravating circumstances found by the jury outweighed the mitigating factors beyond a reasonable doubt. The trial court then sentenced Bies to [*7] death for the aggravated murder of Raines.

I.

In his first assignment of error on appeal to this court, Bies contends that the trial court erred in permitting the prosecution, in closing argument during the penalty phase of the trial, to appeal to the passions and prejudices of the jury to secure a sentence of death. Specifically, Bies objects to the following statements made by the prosecution:

> His mother wouldn't testify. * * * Maybe, and you can infer whatever you'd like, what [Bies's] mother has to say about him isn't something they want you to hear.

> He was disrupting class as early as kindergarten. He was expelled from public schools and placed in therapeutic schools which deal with severe behavior problems.

> I would submit that tears of sympathy are very much misdirected here.

> I submit to you, ladies and gentlemen, that Michael Bies is a parent's worst nightmare.

> You've seen the pictures. What happens to a little 10 year old 85 pound 4-1/2 foot boy with a cast on his foot? You saw what happened to him when he doesn't comply with what Michael Bies wants him to do. He takes a pipe to his head trying to force him to [*8] do this. He breaks his jaw. He breaks his teeth.

The prosecution, as well as the defense, is permitted wide latitude in closing arguments. *State v. Maurer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768, 794-795*, certiorari denied (1985), *472 U.S. 1012, 105 S.Ct. 2714, 86 L. Ed. 2d 728*. The parties may comment on the evidence and any reasonable inferences that may be drawn therefrom. *State v. Allen* (Sept. 9, 1993), Cuyahoga App. No. 62275, unreported. The prosecution may also comment on the accused's demeanor and physical appearance because the accused's face and body are considered physical evidence. *State v. Lawson (1992), 64 Ohio St.3d 336, 347, 595 N.E.2d 902, 911*, certiorari denied (1993), U.S. , 113 S.Ct. 1653.

The prosecution's comments in closing argument during the penalty phase of the trial with respect to Bies's disruptive behavior in school, and the fact that Bies broke Raines's jaw and teeth, were proper comments on the evidence presented at trial. The comments of the prosecution regarding the fact that Bies's mother did not testify on her son's behalf were proper comments on the reasonable inferences that could be drawn from Bies's [*9] statement that his mother wanted to come to the trial but that she couldn't be there with him. The prosecution's comment that "tears of sympathy are very much misdirected here" was a proper comment on the demeanor of Bies during the trial as the record indicates that Bies cried while giving his unsworn statement during the mitigation phase.

With respect to the prosecutor's comment that Bies was a "parent's worst nightmare," we note that even improper comments in closing argument are not grounds for reversal of a sentence of death unless the improper comments prejudicially affected substantial rights of the defendant. *State v. Lawson, 64 Ohio St.3d at 347, 595 N.E.2d at 911*. A prosecutor's misconduct during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. *State v. Maurer, 15 Ohio St.3d at 266, 473 N.E.2d at 793*. Where it is clear beyond a reasonable doubt that the jury would have recommended the death sentence even absent the prosecutor's remarks, reversal of the sentence of death is not required. *State v. Beuke (1988), 38 Ohio St.3d 29, 33, 526 N.E.2d 274, 280*, certiorari denied (1989), *489 U.S. 1071, 109 S.Ct. 1356,* [*10] *103 L. Ed. 2d 823*. We hold that Bies incurred no prejudice as a result of the prosecutor's remark because, as will be discussed later in this decision, we find, as did the court in *Lawson*, that the aggravating circumstances clearly outweigh the mitigating factors even in the absence of this prosecutorial comments. Since the outcome of the penalty phase would have been the same even had the prosecutor refrained from making this comment, we regard any alleged error as harmless. We, therefore, overrule Bies's first assignment of error.

In his second and third assignments of error, Bies states as follows:

> THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND THE CONCOMITANT PROVISION OF THE OHIO CONSTITUTION [ART. I. SEC. 9] IN INSTRUCTING THE JURY AT THE PENALTY PHASE, SIXTEEN TIMES, THAT THEIR SENTENCING DECISION WAS MERELY A "RECOMMENDATION," THUS IMPERMISSIBLY ATTENUATING THE JURY'S

RESPONSIBILITY FOR THEIR AWESOME DECISION. [SIC]

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF THE APPELLANT BY SUBMITTING TO THE JURY A VERDICT FORM [*11] AT THE SENTENCING PHASE STATING THAT THE VERDICT OF THE JURY WAS MERELY A "RECOMMENDATION." [SIC]

As the state points out, Bies did not object at trial to the use of the term "recommendation" in the court's instructions to the jury or in the verdict form. Unless this rises to the level of plain error, this court need not consider these alleged errors. See *State v. Waddy (1992), 63 Ohio St.3d 424, 437, 588 N.E.2d 819, 830; State v. Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364*, paragraph one of the syllabus. However, we address these assignments of error here because of this court's ongoing concern over the practice of trial courts commenting on who bears the ultimate responsibility for determining the penalty in a capital case.

In support of these assignments of error, Bies, citing *Caldwell v. Mississippi (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L. Ed. 2d 231*, argues that it is "constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe, as the jury was in this case, that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Although critical of [*12] the practice of a trial court commenting on the question of who bears the ultimate responsibility for determining the penalty in a capital case, the Supreme Court of Ohio has repeatedly rejected this argument where the charge to the jury under considera-tion was an accurate and correct statement of Ohio law. See *State v. DePew (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 550*, certiorari denied (1989), *489 U.S. 1042, 109 S.Ct. 1099, 103 L. Ed. 2d 241*, and the cases cited therein. The supreme court has held that "the jury in the penalty phase of a capital prosecution may be instructed that its recommendation to the court that the death penalty be imposed is not binding and that the final decision as to whether the death penalty shall be imposed rests with the court," so long as such instruction does not result in prejudice denying the defendant a fair trial. *State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264*, paragraph six of the syllabus, certiorari denied (1985), *472 U.S. 1032, 105 S.Ct. 3514, 87 L. Ed. 2d 643*.

The trial court used the word "recommendation" repeatedly throughout its charge to the jury in the penalty phase of the trial and included the word "recommend" [*13] in the verdict form provided to the jury. The trial court then instructed the jury regarding its role in the sentencing process as follows:

> You must understand, however, that the jury's recommendation to the Court that the death penalty be imposed is just that, a recommendation, and is not binding on the Court. The final decision as to whether the death penalty shall be imposed upon the defendant rests with this Court, after the Court follows certain additional proceedings required by the laws of this State.

After criticizing trial courts for commenting on the fact that the court itself bears the ultimate responsibility for determining the penalty in a capital case, the Ohio Supreme Court has nevertheless held that a charge such as the one given by the trial court in the instant case is not inaccurate or misleading, nor is its effect upon

the jury constitutionally infirm. *State v. Landrum* (1990), 53 Ohio St.3d 107, 121-122, 559 N.E.2d 710, 727, certiorari denied (1991), 498 U.S. 1127, 111 S.Ct. 1092, 112 L. Ed. 2d 1196; *State v. Buell* (1986), 22 Ohio St.3d 124, 144, 489 N.E.2d 795, 812, certiorari denied (1986), 479 U.S. 871, 107 S.Ct. 240, 93 L. Ed. 2d 165; [*14] *State v. Jenkins*, 15 Ohio St.3d at 202, 473 N.E.2d at 299. For this reason alone, we hold the repeated use of the word "recommendation" in the charge to the jury and in the verdict form did not result in prejudice to Bies which would require that he be resentenced. However, we join the supreme court in taking a dim view of this practice.

As the Supreme Court of Ohio stated in *Buell*, 22 Ohio St.3d at 144, 489 N.E.2d at 813:

> As we stated in *Jenkins, supra,* at 202, and we now **EMPHATICALLY EMPHASIZE**, the better procedure would be to have no comment by the prosecutor or the trial judge on the question of who bears the ultimate responsibility for determining the penalty. [Emphasis ours.]

*R.C. 2929.03(D)(2)* explains the role of the jury in imposing a sentence in a capital case. The pertinent part of that statute reads as follows:

> If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender.

Consistent with *R.C. 2929.03(D)(2)* [*15] and the above-quoted language from the supreme court, we see no need for the trial court to instruct the jury on anything beyond this part of the statute with respect to the imposition of the penalty of death. The trial court's responsibilities after the jury's recommendation of a sentence are absolutely irrelevant to the jury's determination. We note in this regard that the Ohio jury instruction for sentencing hearings in death-penalty cases properly tracks and follows *R.C. 2929.03(D).* 4 Ohio Jury Instructions (1993), Section 503.016(A). While today we overrule the second and third assignments of error, we advise the courts below to heed the advice of the Ohio Supreme Court as articulated in *Buell* and to charge the jury in a death-penalty case in accordance with the Ohio jury instruction on "Recommendation of Sentence" in Section 503.16(A) instead of the instruction used in the case at bar. n2

> n2 4 Ohio Jury Instructions (1993), Section 503.016(A) provides in pertinent part as follows:
>
> > Members of the jury, you have heard the evidence and the arguments of counsel and you will now decide whether you will recommend to the court that the sentence of death shall be imposed upon the defendant and if not, whether you will recommend that the defendant be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

[*16]

In his fourth assignment of error, Bies contends that the trial court erred in its sentencing opinion by relying upon nonstatutory aggravating circumstances and by giving insufficient consideration to relevant mitigating factors. The basis of his complaint under this assignment of error is that the trial court referred to the facts and circumstances of the offense in determining that the aggravating circumstances outweighed the mitigating factors. It is true that the nature and circumstances of an offense are not a statutory aggravating circumstance and cannot be considered as such. *State v. Lott (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 304-305*, certiorari denied (1990), *498 U.S. 1017, 111 S.Ct. 591, 112 L. Ed. 2d 596; State v. Davis (1988), 38 Ohio St.3d 361, 370-372, 528 N.E.2d 925, 933-936*, certiorari denied (1989), *488 U.S. 1034, 109 S.Ct. 849, 102 L. Ed. 2d 980*. However, "a trial court * * * may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf (1987), 32 Ohio St.3d 95, 512 N.E.2d 598*, paragraph one of the [*17] syllabus, certiorari denied (1988), *484 U.S. 1079, 108 S.Ct. 1060, 98 L. Ed. 2d 1022*. See, also, *State v. Moreland (1990), 50 Ohio St.3d 58, 69, 552 N.E.2d 894, 905*, certiorari denied (1990), *498 U.S. 882, 111 S.Ct. 231, 112 L. Ed. 2d 185*. Bies's fourth assignment of error, therefore, lacks merit.

Bies next contends, in his fifth and sixth assignments of error, that his convictions for kidnapping and attempted rape were not supported by sufficient evidence and that those convictions were against the manifest weight of the evidence. A verdict in a criminal case "can not be said as a matter of law to be manifestly against the weight or sufficiency of the evidence where substantial evidence is offered by the state in support of all of the elements of the offenses charged, and if such evidence was of sufficient probative value to sustain the convictions, the reviewing court will not reverse on the sufficiency or weight of evidence." *State v. Barnes (1986), 25 Ohio St.3d 203, 209, 495 N.E.2d 922, 927*, certiorari denied (1987), *480 U.S. 926, 107 S.Ct. 1388, 94 L. Ed. 2d 701*.

Under these assignments of error, Bies maintains that there is no evidence in the record that he kidnapped [*18] Raines or that he attempted to rape Raines. Instead, he argues that the record demonstrates that Gumm lured Raines into the abandoned buildings and that Gumm attempted to have anal intercourse with Raines. However, Bies's statements to the police indicate that Bies and Gumm conspired to abduct a child and to have sexual intercourse with that child.

Under *R.C. 2923.03(F)*, a complicator to an offense "shall be prosecuted and punished as if he were a principal offender." Because the evidence at trial indicated that Bies was at least a complicator in the kidnapping and attempted rape of Raines, he was properly convicted of those crimes. His convictions were neither unsupported by sufficient evidence nor against the manifest weight of the evidence. Accordingly, Bies's fifth and sixth assignments of error are overruled.

In his seventh assignment of error, Bies maintains that the trial court erred in holding that the aggravating circumstances surrounding the aggravated murder outweighed the mitigating factors presented by the defense. As will be discussed and explained at the end of this Decision during our independent review of the appropriateness of the imposition of the death penalty, [*19] we hold that the trial court did not err in determining that the aggravating circumstances of which Bies was convicted outweighed the mitigating factors presented in his defense. This assignment of error is, therefore, overruled.

Bies's eighth assignment of error states that the trial court erred in overruling his motion to suppress his statements to the police. Under this assignment of error, Bies argues that he lacked the mental capacity to waive his rights voluntarily, and that, therefore, his statements to the police were not admissible evidence.

At the hearing on the motion to suppress Bies's statements, Bies and police officers Guy and Seal testified. The police officers stated that they read the notification-of-rights form to Bies several times, that Bies understood his rights as read to him, that Bies reviewed the form and that Bies signed the form waiving his rights. Bies testified that he did sign the form provided to him by the police officers.

In determining the voluntariness of a confession, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of [*20] interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Smith (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515*, certiorari denied (1992), U.S. , 112 S.Ct. 1211, citing *State v. Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324*, paragraph two of the syllabus. The testimony of the police officers and of Bies supports the finding by the trial court that the statements in question were voluntary. The interrogations were neither prolonged nor intense. Bies indicated that he had reached the tenth grade in school and that he was familiar with the criminal justice system. There is no indication of mistreatment, physical deprivation or threats directed toward Bies during the interrogations. Furthermore, the taped interviews indicate that Bies talked to the police voluntarily in an effort to assist them with their investigation of the crimes.

With respect to Bies's claim that he lacked the mental capacity to waive his rights voluntarily, we note that there was no evidence presented at the suppression hearing to indicate that Bies was mentally incapable of making informed decisions at the time he was [*21] questioned by the police. We, therefore, hold that the trial court's refusal to suppress Bies's statements to the police was not error. Accordingly, the eighth assignment of error is overruled.

In his ninth assignment of error, Bies contends that his conviction must be reversed because the trial court erred in failing to grant his motion for a change of venue. Bies argues that there was a reasonable likelihood of prejudice to him where many of the jurors had been exposed to pretrial publicity concerning the murder of Raines.

A trial court must change the venue of a criminal case "when it appears that a fair and impartial trial cannot be held in the court in which the action is pending." *Crim.R. 18(B)*. See, also, *R.C. 2901.12(K)*. However, absent a clear showing of abuse of discretion, a trial court's ruling on a motion for change of venue should not be disturbed by an appellate court. *State v. Mills (1992), 62 Ohio St.3d 357, 363-364, 582 N.E.2d 972, 980*, certiorari denied (1992), U.S. , 112 S.Ct. 3048; *State v. Maurer, 15 Ohio St.3d at 250, 473 N.E.2d at 780*.

The best test for a change of venue is whether an impartial jury can be seated. *State [*22] v. Maurer, 15 Ohio St.3d at 252, 473 N.E.2d at 781*, citing *State v. Osborne (1976), 49 Ohio St.2d 135, 139-141, 359 N.E.2d 78, 83-84*, vacated in part on other grounds (1978), *438 U.S. 911, 98 S.Ct. 3136*. In this case, the record on *voir dire* establishes that prospective members of the jury had been exposed to pretrial publicity, but affirmed that they would judge the defendant solely on the law and the evidence presented at trial. Therefore, this was not a case where there was a reasonable likelihood that Bies would not receive a fair trial. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for a change

of venue. See *State v. Spirko (1991), 59 Ohio St.3d 1*, 23-24, *570 N.E.2d 229*, 254, certiorari denied (1991), *116 L. Ed. 2d 254,    U.S.   , 112 S.Ct. 312*.

In his tenth assignment of error, Bies claims that the trial court improperly excluded prospective jurors during *voir dire* because of their general opposition to the death penalty. The trial court in this case did not abuse its discretion in excusing the prospective jurors whose views would have substantially impaired their ability to serve as jurors in [*23] accordance with their instructions and oaths. See *State v. Mills, 62 Ohio St.3d at 364-365, 582 N.E.2d at 981*; *State v. DePew, 38 Ohio St.3d at 280, 528 N.E.2d at 549*; *State v. Steffen (1987), 31 Ohio St.3d 111*, 120, *509 N.E.2d 383*, 393, certiorari denied (1988), *485 U.S. 916, 108 S.Ct. 1089, 99 L. Ed. 2d 250*. The tenth assignment of error is, therefore, overruled.

In his eleventh assignment of error, Bies argues that the trial court improperly denied his motion to prohibit "death qualification" of the jury, thereby infringing upon his right to be tried by a jury which reflected a fair cross-section of the community. The trial court, at *voir dire*, removed for cause those prospective jurors who stated that they could not under any circumstances vote for the imposition of the death penalty. However, "death qualification" of a jury does not violate a defendant's Sixth Amendment right to be tried by a fair cross-section of the community, nor does it violate his constitutional right to an impartial jury. *Lockhart v. McCree (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L. Ed. 2d 137*. We, therefore, find no merit in this assignment of error.

Finally, to preserve further [*24] appellate and collateral review, Bies argues in his twelfth assignment of error that the trial court erred in failing to grant his motion to dismiss because Ohio's statutory scheme for imposing the death penalty violates the protections guaranteed by the United States Constitution and the Ohio Constitution. In support of this assignment of error, Bies raises twelve issues for our consideration. n3 Each issue presented by Bies has been considered and rejected by the Ohio Supreme Court before, and is, therefore, summarily overruled on the authority of the syllabus of *State v. Poindexter (1988), 36 Ohio St.3d 1, 520 N.E.2d 568*, certiorari denied (1988), *488 U.S. 916, 109 S.Ct. 272, 102 L. Ed. 2d 261*. See *State v. Coleman (1989), 45 Ohio St.3d 298*, 308-309, *544 N.E.2d 622*, 633-634, certiorari denied (1990), *493 U.S. 1051, 110 S.Ct. 855, 107 L. Ed. 2d 849*; *State v. Steffen, 31 Ohio St.3d at 125-126, 509 N.E.2d at 396*; *State v. Buell, 22 Ohio St.3d at 138, 489 N.E.2d at 808*; *State v. Maurer, 15 Ohio St.3d at 241-242, 473 N.E.2d at 773-774*; *State v. Jenk-ins, 15 Ohio St.3d at 167-179, 473 N.E.2d at 272-281*. See, also, *State v. Hill* (Dec. 22, 1993), Hamilton [*25] App. No. C-920497, unreported. Bies's twelfth assignment of error is overruled. II.

n3 The twelve issues presented for review in Bies's twelfth assignment of error are as follows:

(1)

Whether the Death Penalty violates the prohibition under the 8th Amendment of the United States Constitution against cruel and unusual punishment.

(2)

Whether the Death Penalty in Ohio is applied in an arbitrary and capricious fashion since it permits prosecutors to exercise discretion in deciding who will be charged with capital offenses.

1994 Ohio App. LEXIS 1304, *

(3) Whether the Ohio Death Penalty scheme fails to require premeditation or deliberation as the culpable mental state for defendants in all capital cases.

(4) Whether O.R.C. 2929.03 sets forth no standard of proof to be applied in determining mitigating factors.

(5) Whether O.R.C. 2929.03 fails to give the jury a standard with which to balance the mitigating factors against the aggravating circumstances.

(6) Whether the consideration of aggravating circumstances at the guilt phase of the trial is unconstitutional.

(7) Whether the Ohio Death Penalty scheme is unconstitutional in that it does not give the sentencing authority the option to impose a life sentence, or give mercy, when it finds that the aggravating circumstances outweigh the mitigating factors.

(8) Whether the Ohio Death Penalty scheme is unconstitutional because of a bifurcated trial with the same jury which denies the defendant an impartial jury and the effective assistance of counsel.

(9) Whether the Ohio Death Penalty scheme is unconstitutional because in conjunction with Crim.R. 11(C)(3), it encourages defendants to waive their fundamental rights and enter guilty pleas.

(10) Whether the Ohio Death Penalty is unconstitutional because it is a mandatory death penalty.

(11)

Whether the Ohio Death Penalty is unconstitutional in that it fails to provide for adequate appellate review.

(12)

Whether the aggravating circumstances the accused is charged with committing, O.R.C. 2929.04(A)(3) and (7), are constitutionally invalid when used to aggravate O.R.C. 2903.01(B) aggravated murder.

[*26]

Having addressed and rejected each of Bies's twelve assignments of error, we now independently review and weigh the facts and the other evidence disclosed in the record to determine whether the aggravating circumstances outweigh the mitigating factors, if any, demonstrated in the record in accordance with R.C. 2929.05(A).

The aggravating circumstances the jury found to exist were those charged in the indictment. Specifically, the jury found that Bies committed the offense of aggravated murder to escape detection for another offense committed by him; that Bies, as the principal offender in the commission of aggravated murder or with prior calculation and design, committed the offense of aggravated murder while committing or while fleeing immediately after committing the offense of kidnapping; and that Bies, as the principal offender in the commission of aggravated murder or with prior calculation and design, committed the offense of aggravated murder while attempting to commit or while fleeing immediately after attempting to commit the offense of rape. We find these circumstances established in the record beyond a reasonable doubt.

The mitigating factors to be considered are those [*27] found in the nature and circumstances of the offense; the history, background, and character of Bies; and any other factors listed in R.C. 2929.04(B)(1) through (7) which exist in this case.

The nature and circumstances of the offense are particularly heinous and we find that they are entitled to no weight as mitigation.

As to Bies's history, background and character, the record demonstrates that his father was an alcoholic who was abusive toward Bies's mother, and that his father disappeared from his life "early on;" that he was raised in an "unstable" home situation with multiple moves and "a good deal of violence;" that he has been violent since the age of three; that he has exhibited developmental delays from birth; that he has been in special-education classes since kindergarten; that he was placed in "therapeutic schools" that deal with severe behavioral problems; that he has a history of psychiatric hospitalizations; that he has exhibited suicidal tendencies; that he does not abuse drugs or alcohol; that he has three children; and that he is divorced. We find that these factors are of minimal mitigating value. See State v. Grant (1993), 67 Ohio St.3d 465, 486, 620 N.E.2d [*28] 50, 71; State v. Green (1993), 66 Ohio St.3d 141, 152-154, 609 N.E.2d 1253, 1262-1264, certiorari denied (1993), U.S. , 114 S.Ct. 250.

Furthermore, Bies was only nineteen years old at the time he committed the offense of aggravated murder and he did not have a significant history of prior criminal convictions. See R.C. 2929.04(B)(4) and (5). Bies's relative youth and lack of prior criminal convictions are entitled to some weight in mitigation. See State v. Grant, 67 Ohio St.3d at 486, 620 N.E.2d at 71.

Finally, Bies's "psychological difficulties revolved around: (1) mild mental retardation to borderline mental retardation; (2) a chronic and severe personality disorder characterized by emotional instability, impulsivity and problems with appropriate control of anger; and (3) probable organic brain dysfunction characterized by specific learning disabilities." The mitigating factor in *R.C. 2929.04(B)(3)* is whether at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct, or to conform his conduct to the requirements of the law. None of the psychological [*29] factors presented by Bies are enough to prove the diminished-capacity requirements of this section. *State v. Richey (1992), 64 Ohio St.3d 353, 372, 595 N.E.2d 915, 931; State v. Van Hook (1988), 39 Ohio St.3d 256, 263, 530 N.E.2d 883, 890,* certiorari denied (1989), *489 U.S. 1100, 109 S.Ct. 1578, 103 L. Ed. 2d 944.* However, these factors are entitled to some weight in mitigation under *R.C. 2929.04(B)(7).*

The aggregate of these mitigating factors is in no way sufficient to outweigh the aggravating circumstances of the murder committed by Bies. Accordingly, we hold that the aggravating circumstances of the killing of Aaron Raines clearly and beyond a reasonable doubt outweigh anything that was presented in mitigation of punishment.

III.

Finally, we must determine if the sentence of death is appropriate in this case. *R.C. 2929.05(A)* provides that the court of appeals must independently determine whether the sentence of death is appropriate by considering "whether the sentence is excessive or disproportionate to the penalty imposed in similar cases." However, "the proportionality review required of the court of appeals pursuant to *R.C. 2929.05(A)* need not include criminal cases [*30] outside its geographical jurisdiction." *State v. Steffen, 31 Ohio St.3d at 123, 509 N.E.2d at 394,* citing *State v. Rogers (1985), 17 Ohio St.3d 174, 478 N.E.2d 984,* paragraph nine of the syllabus.

We have compared the facts and circumstances in this case with our previous death-penalty decisions. Based upon that review, we conclude that the sentence of death imposed upon Bies is neither excessive nor disproportionate, and that it is an appropriate sentence.

IV.

In conclusion, we hold that Bies's twelve assignments of error concerning the proceedings below are without merit. We further find that the aggravating circumstances of this case outweigh any and all mitigating factors beyond a reasonable doubt. Finally, we find that the sentence of death is appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases.

We, therefore, affirm Bies's convictions and the sentence of death imposed upon him.

KLUSMEIER, P.J., GORMAN and M.B. BETTMAN, JJ.