# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL BIES,

:

    Petitioner,                                          Case No. 1:00-cv-682

:                                   Chief Judge Susan J. Dlott

    -vs-                                              Magistrate Judge Michael R. Merz

MARGARET BAGLEY, Warden,

:

    Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court on Petitioner Michael Bies' Objections (Doc. No. 171) to the Magistrate Judge's Report and Recommendations recommending that the habeas corpus petition be denied (Doc. No. 167). Respondent has filed a Response opposing Bies' Objections (Doc. No. 172). The General Order of Reference for the Dayton location of court permits a Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

**Grounds One, Two, and Three: Involuntary Statements, Involuntary Waiver of Rights, and Improper Admission of Involuntary Statements**

In his first, second, and third grounds for relief, Bies contended that his statements to police during interrogation should not have been admitted into evidence at his trial because they were not voluntarily made. He argued that his mental retardation and functional illiteracy made him particularly vulnerable to the interrogating officers' interrogating techniques, that he does not have

the intellectual ability to knowingly and voluntarily waive his *Miranda* rights, and that his statements made without having been advised of his *Miranda* rights should not have been admitted into evidence. No further analysis is needed on these grounds for relief beyond what appears in the original Report and Recommendations.

**Ground Four: *Brady* Claim**

Bies claimed in his fourth ground for relief that the prosecutors in his case withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The Magistrate Judge recommended that the claim be denied because "[m]uch of the material [Bies] claims should have been disclosed consists of inadmissible hearsay, inadmissible polygraph test results, supposition, and conjecture, and he has not indicated how any of that information would have led to material evidence that could have been presented at his trial." (Doc. No. 167 at PAGEID 1720.)

Bies points out that in his co-defendant Darryl Gumm's case, a nearly identical *Brady* claim was presented in habeas corpus. In that case also, the undersigned Magistrate Judge recommended that the *Brady* claim, which relates to much of the same information withheld in this case, be dismissed. The District Judge assigned to Gumm's case disagreed. Judge Rice held in pertinent part:

> Petitioner objects to the Magistrate Judge's finding concerning the materiality of the undisclosed evidence. He notes that the prosecution has a duty to turn over all favorable exculpatory evidence. Petitioner argues that even if the evidence itself was not admissible at trial, it could prompt defense counsel to pursue other investigative leads and could ultimately lead to other admissible evidence. *See United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) ("information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes.").

The Court sustains Petitioner's objection on this claim. The Court agrees with the Magistrate Judge that much of the undisclosed evidence was itself inadmissible, but that does not necessarily mean that it would not lead to admissible evidence or that it was not subject to disclosure.

* * *

In Petitioner's case, the State had tips and investigative files on several other suspects, but failed to turn them over to defense counsel. The Court is particularly troubled by the prosecutor's failure to turn over tips, interview notes and other evidence concerning suspect Roger Cordray. The police had received Crime-Stoppers tips that Cordray slept in the vacant building where Aaron's body was found, and often drank in the building next door. Christine Robertson told the police that Cordray's coat was supposedly found in the building where Aaron's body was found and Cordray had threatened her not to say anything about it. There were rumors in the neighborhood that Cordray had killed Aaron. However, more significantly, the police had statements from Anthony and Theresa Steele, who said that Cordray had confessed to them that he had killed Aaron. Interview notes from Petitioner's sister indicate that two other individuals — Donna Jones and Paul Worthington — also heard Cordray say that he had killed Aaron. In addition, police interviewed Roberta Shinkle, who told them that William O'Malley beat Cordray, because Cordray said that he and a friend had killed Aaron.

The police located Cordray, questioned him, fingerprinted him, and took pictures of his shoes. Cordray denied any involvement in the murder and the police officers found him to be credible. The tread on his shoes did not match imprints from the crime scene. His palm print bore some similarities to prints found at the scene, but no positive match could be made.

Even if the police considered the evidence of Cordray's alleged confessions to be unreliable, it was still favorable to Petitioner and should have been disclosed. If this information had been turned over by the prosecutor, defense counsel could have conducted their own investigation and may have called Anthony and Theresa Steele, Donna Jones, and Paul Worthington to testify at trial. ...

Cordray's alleged confession obviously subjected him to criminal liability. In the Court's view, there were sufficient "corroborating

circumstances" to support the trustworthiness of his confession. Perhaps most significantly, he apparently confessed to at least four separate individuals and was allegedly beaten up because of his involvement in Aaron's murder. In addition, he was known to hang around the vacant building where Aaron's body was found, and he allegedly threatened Christine Robertson not to tell anyone that his coat was also found in that building. Cordray's palm print revealed some similarities to prints found at the scene of the crime, and Anthony Steele also testified that he noticed that Cordray's hand and knuckles were scraped up.

*Gumm v. Mitchell*, 2011 U.S. Dist. LEXIS *15-21 (S.D. Ohio March 29, 2011)(Rice, J.) Judge Rice concluded that

[T]he investigatory file on Roger Cordray must be considered material evidence that was withheld by the prosecutor in violation of Brady. There is a reasonable probability that the outcome of the trial would have been different if this evidence, standing alone, had been disclosed. The other evidence at issue may not have been as likely to lead to admissible evidence. It nevertheless factors into the Court's finding that, viewed collectively, the evidence that was withheld undermines confidence in the jury's verdict. The state court's decision to the contrary involved an unreasonable application of clearly established federal law. The Court therefore sustains Petitioner's objection to the Magistrate Judge's Report and Recommendations and grants the third amended petition for a writ of habeas corpus on the Second Claim for Relief.

*Id.* at *21-22.

Judge Rice's decision in *Gumm* relies on *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991), and ABA Formal Ethics Opinion 09-454 on the prosecutor's duty to disclose. The ABA Opinion addresses what a prosecutor ought to do pretrial and does not address how a failure to act then should be evaluated in habeas corpus. In *Phillip* the Sixth Circuit held that "information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes. "

The police did not have an admission from Cordray that he killed the victim which would,

of course, have been admissible. In fact, they questioned him, he denied involvement, and they found him credible.[1] *Gumm v. Mitchell*, 2011 U.S. Dist. LEXIS 32842 *18 (S.D. Ohio Mar. 29, 2011). Instead, according to Judge Rice, the police had

1. Crime-Stoppers tips that Cordray slept in the vacant building where Aaron's body was found, and often drank in the building next door.

2. A statement from Christine Robertson that Cordray had threatened her not to say anything about the fact that his coat was supposedly found in the building next door.

3. Rumors in the neighborhood that Cordray had killed Aaron.

4. Statements from Anthony and Theresa Steele who said Cordray had confessed to them that he had killed Aaron Raines.[2]

5. Statements from Gumm's sister that Donna Jones and Paul Worthington heard Cordray say he had killed Aaron.

6. A statement from Roberta Shinkle who told police that William O'Malley beat Cordray because Cordray said he and a friend had killed Aaron.

*Id.*

The burden is on a *Brady* petitioner to show that the withheld information was, or would have led directly to, **admissible** evidence. *Phillip, supra.* But that portion of the police investigatory file related to Cordray fails that test.

---

[1] The tread on Cordray's shoes did not match imprints from the crime scene and his palm print had no points upon which it could be identified with a palm print from the scene. (Report and Recommendations, Doc. No. 167, PageID 1701.)

[2] Both Steeles admitted being under the influence of drugs or alcohol at the time the confession was made to them. (Report and Recommendations, Doc. No. 167, PageID 1702.) Anthony Steele also stated that Cordray denied having committed the murder. *Id.* at PageID 1702.

1. Crime Stopper tips are understood by the Court to be anonymous,[3] so they would not have led to admissible evidence.

2. Christine Robertson's testimony to the same effect as her statement to the police (about Cordray's coat) would have been admissible as an inculpatory act of Cordray, but it is remote from proof he was the perpetrator because (1) the building in question was abandoned and open to anyone who wished to enter and (2) Cordray knew he was under suspicion and presumably would have wanted to avoid additional police attention even if he were not guilty but had merely left a coat in a suspicious place.

(3) The rumors are obviously not admissible, but they might have led an investigator to someone who had admissible evidence.

(4) Testimony by the Steeles that Cordray confessed to them would have been admissible despite being hearsay because the statements were against Cordray's penal interest.[4]

(5) Testimony by Donna Jones and Paul Worthington that Cordray confessed to them would have been admissible on the same basis.

(6) Roberta Shinkle's testimony that William O'Malley beat Cordray would have been admissible to show the beating if she saw it or O'Malley admitted it to her. But unless Cordray made the admission to O'Malley in Shinkle's presence and the beating followed immediately, she would not have been able to testify that Cordray said he and a friend had

---

[3] The website for Cincinnati Northern Kentucky Crime Stoppers states "Crime Stoppers provides a means of communication for members of the public to anonymously provide law enforcement agencies with information on crimes or suspects." www.crimestoppers.us/ visited February 9, 2012.

[4] This assumes Cordray would have been unavailable for some reason, e.g., because he pled his privilege against self-incrimination. It also assumes the trial judge would have found adequate indicia of reliability, despite the Steeles' admission of intoxication.

killed Aaron.

Thus it is possible to hypothesize that some useful admissible evidence could have been found by a diligent investigator who had this part of the police file. The difficulty with Petitioner's *Brady* claim is that he has had that portion of the file for more than ten years, since he discovered it in federal habeas, and he has failed to show that it has in fact led to any admissible evidence. Where are the affidavits from the Steeles, Jones, Worthington, and Shinkle that show what they would have testified to if called? Petitioner discovered the relevant information from the prosecutor's file in federal discovery as shown by his Motion on September 4, 2001, to stay these proceedings to allow him to exhaust in state court based on the information he had discovered in these proceedings (Doc. No. 28).

Judge Rice in *Gumm* found Roger Cordray's alleged confession(s) to be *Brady* material that *could have* led to admissible evidence that *could have* established reasonable doubt in the minds of the jurors. Under *de novo* review[5] in federal habeas corpus, however, it was incumbent upon Bies to demonstrate that those "could haves" were changed into "would haves," or at a minimum, had a reasonable probability of (1) becoming or leading to admissible evidence that (2) created a reasonable probability that the result of his trial would have been different. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). That the information "could have" led to admissible evidence and "could have" created reasonable doubt in the mind of one or more jurors does not meet that requirement. In other words, Bies should have performed during preparation of this habeas case the work he argues his trial counsel would have performed had they known about the rumors

---

[5]In the original Report and Recommendations, the Magistrate Judge determined that the state supreme court had misapplied its own procedural rule to Bies' claim, requiring *de novo* review in these habeas corpus proceedings. (Doc. 167 at PAGEID 1694-1700.)

about and alleged confession of Cordray.[6] Bies did nothing to develop the information concerning Cordray into a form that would be admissible in court.

This Court is constrained by the stringent standard of the AEDPA, which places upon a petitioner the burden of *demonstrating,* rather than suggesting, entitlement to the writ of habeas corpus. Having learned about Cordray's alleged admissions, Bies' counsel have done nothing to show what competent trial counsel would have done with that information, how they would have developed it into admissible evidence. Judge Rice's discussion of the same evidence in *Gumm* does not deal with the question dealt with here, to wit, proof in habeas that the withheld material in fact would have turned up admissible evidence.

No further analysis is needed on Bies' fourth ground for relief beyond what appears in the original Report and Recommendations.

**Ground Five: Prosecutors Knowingly Presented Perjured Testimony**

In his fifth ground for relief, Bies argued that prosecutors in his case knowingly elicited false testimony from witness Steven Clark. (Doc. No. 167 at PAGEID 1720-27.) The Magistrate Judge recommended denial of that ground, and no further analysis is needed beyond what appears in the original Report and Recommendations.

**Ground Six: Ineffective Assistance of Trial Counsel**

In his sixth ground for relief, Bies alleged his trial counsel were ineffective for a variety of reasons. The Magistrate Judge found much of Bies' claim procedurally defaulted, and the entire claim meritless as well. No further analysis is needed on this ground for relief beyond what

---

[6]Following the United States Supreme Court's holding in *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 2951 (2011), of course, the federal habeas corpus court could not consider whatever admissible evidence might have been developed until after Bies returned to the state court to present it there.

appears in the original Report and Recommendations.

**Request for a Certificate of Appealability**

In each of his six objections, Bies requests that if the objection is denied, he be granted a Certificate of Appealability to pursue an appeal to the Sixth Circuit Court of Appeals. To obtain a Certificate of Appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or because they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485, *citing Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Slack*, 529 U.S. at 484, *quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). The relevant holding in *Slack* is as

follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. at 478.

Given Judge Rice's decision in *Gumm*, the Magistrate Judge now recommends that Bies be granted a Certificate of Appealability on his fourth ground for relief, as it is clear that reasonable jurists could disagree as to whether that part of Bies' petition states a valid claim of a denial of a constitutional right. In addition, a Certificate of Appealability should be issued as to Bies' sixth ground for relief as reasonable jurists may find the Magistrate Judge's conclusions on the procedural and substantive issues debatable. As for Bies' first, second, third, and fifth grounds for relief, it is recommended that no Certificate of Appealability be issued.

February 10, 2012.

s/ Michael R. Merz<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the

portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).